

**MURIEL GOODE-TRUFANT**
*Corporation Counsel*

T**HE** C**ITY OF** N**EW** Y**ORK**
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

RACHEL K. MOSTON
Tel: (212) 356-2190
e-mail: rmoston@law.nyc.gov

January 26, 2026

BY ECF & EMAIL
Honorable John P. Cronan
United States District Judge
Southern District of New York
500 Pearl Street, Room 1320
New York, New York 10007

Re:    Small Property Owners of New York, Inc. et al. v. City of New York et al.,
       Docket No. 25-cv-9425

Dear Judge Cronan,

       We are attorneys in the office of Muriel Goode-Trufant, Corporation Counsel of the City of New York, counsel for Defendants the City of New York (the "City"); the New York City Rent Guidelines Board ("RGB"); Doug Apple, in his official capacity as chair and member of the RGB; and Arpit Gupta, Alex Schwartz, Reed Jordan, Alexander Armlovich, Robert Ehrlich, Christina Smyth, Genesis Aquino, and Adán Soltren, in their official capacities as members of the RGB (collectively, "City Defendants"). We write in accordance with Section 6.A of the Court's Individual Rules and Practices to notify the Court of City Defendants' anticipated motion to dismiss the complaint in the above-captioned case pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6). Counsel for all parties jointly propose filing Defendants' motions by March 18, 2026; Plaintiffs' opposing papers by May 1, 2026; and any replies by May 22, 2026.

       Plaintiffs seek to challenge certain portions of New York State's Rent Stabilization Laws ("RSL") that apply rent stabilization regulations to vacant apartments. Compl. ¶ 37. Rent stabilized apartments remaining stabilized upon vacancy has been a central feature of the RSL since inception. The justification for this is clear—the ability to increase a stabilized rent to "market rent" at vacancy creates a perverse incentive for landlords to harass stabilized tenants out of their apartments so they can charge higher rents. Accordingly, limiting the rent a landlord can charge at vacancy helps protect rent stabilized tenants and maintain the stock of low-cost, stabilized apartments. The RSL has been amended many times and withstood numerous legal

challenges in its over fifty-year history. Most recently, the Second Circuit dismissed constitutional challenges to the RSL, as amended by the 2019 Housing Stability and Tenant Protection Act, which is the version of the RSL Plaintiffs challenge now, nearly six years later. See, e.g., Cmty. Hous. Improvement Program ("CHIP") v. City of New York, 59 F.4th 540, 547 (2d. Cir. 2023) (listing failed challenges to the RSL); 74 Pinehurst LLC v. New York, 59 F.4th 557 (2d. Cir. 2023); Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York, 2024 U.S. App. LEXIS 5905 (2d. Cir. 2024). Plaintiffs argue that the State must allow landlords to hike the rent of a stabilized apartment up to "market rate" when a tenant vacates the apartment. Specifically, Plaintiffs claim that N.Y. Unconsol. Law § 8624(e) and 9 N.Y.C.R.R. §§ 2522.5(a) & 2252.8, RSL provisions that generally prevent additional rent increases on vacant apartments on top of the increases allowed for renewal leases, constitute: (1) a facial and as-applied *per se* and regulatory taking; (2) a substantive due process violation; and (3) an equal protection violation. Plaintiffs further purport to raise a challenge under the Privileges and Immunities Clause (fourth cause of action), though as Plaintiffs admit, such claim is barred.

As an initial matter, the Complaint, which seeks compensatory damages for lost rental income from the RSL's restriction on allowable rent for vacant apartments, should be dismissed against the City Defendants because the City neither enacted nor enforces the challenged provisions of the RSL. Standing requires plaintiffs to "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Sonterra Capital Master Fund, Ltd. v. UBS AG, 954 F.3d 529, 534 (2d Cir. 2020) (internal citation omitted). Plaintiffs fail to plead that their alleged injuries as to the amount of rent they can charge for vacant units were caused–or can be redressed–by City Defendants. The City's role in rent stabilization is twofold. The New York City Council is authorized to declare the existence of a housing emergency pursuant to the Emergency Tenant Protection Act, and the RGB sets the allowable percentage adjustment for rent stabilized leases. Apart from these functions, enforcement of the RSL is left to the State. Rent Stabilization Ass'n v. Higgins, 83 N.Y.2d 156, 165 (1993). Plaintiffs do not challenge any prior declaration of a housing emergency or rent adjustment determination made by the RGB. See generally, Compl. Accordingly, Plaintiffs' alleged injury regarding their inability to raise rents to market rate upon vacancy is simply not traceable to any challenged conduct of City Defendants, and the Complaint seeking damages against the City should be dismissed. Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York, 2021 U.S. Dist. LEXIS 174535, *38–41 (S.D.N.Y. 2021).

In any event, Plaintiffs' facial and as-applied *per se* taking claims (first cause of action) must be dismissed. "Regulatory actions generally will be deemed *per se* takings . . . where regulations completely deprive an owner of *'all* economically beneficial use' of her property." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 531 (2005) (citing Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1019 (1992). Plaintiffs claim that the RSL "entirely confiscates the value of the leasehold interest for" individual rent stabilized apartments. Compl. ¶ 263. Plaintiffs' claims, however, rely on the inherently flawed position that the relevant unit of property for their takings analysis is each individual rent stabilized apartment, rather than their buildings as a whole. Compl. ¶¶ 99–113; 180; 211; 250; 263. This view is counter to both longstanding and recent Supreme Court precedent finding that the relevant unit of property in challenging rent regulations is an entire building. Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 130 (1978)

2

("'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. . . . [T]his Court focuses . . . on the nature and extent of the interference with rights in the parcel as a whole . . . ."); see also CHIP, 59 F.4th at 547.

In addition, Plaintiffs' facial *per se* taking claims fail because they do not allege that the RSL has denied *all* owners of rent stabilized properties all economically viable use of their buildings. See CHIP, 59 F.4th at 548 (citing United States v. Salerno, 48 U.S. 739, 745 (1987)). Even if an apartment is the relevant unit of property, Plaintiffs fail to plead that each application of the RSL to every vacant apartment subject to the RSL is a *per se* taking. One Plaintiff admits at least three stabilized units in its property rent for lower than the legal regulated rent, meaning that at vacancy, they had legal regulated rents *above* market rate, and the Plaintiff chose to offer them at lower rents. Compl. ¶¶ 148, 153, 155. As such, the RSL does not–and cannot–deny *all* owners of buildings with rent stabilized apartments the economically viable use of each apartment. With respect to Plaintiffs' as-applied *per se* taking claim, Plaintiffs do not even allege that the RSL has denied them all economically viable use of their own buildings or each individual unit. Plaintiffs admit their buildings retain value. Id. ¶¶ 148, 153, 155, 203, 221. And Plaintiffs acknowledge that they can rent the vacant apartments that they own, just not at the market rent they wish to charge. Id. ¶¶ 134, 176, 207, 246. Thus, Plaintiffs clearly retain economically viable use of their property, thereby foreclosing their *per se* taking claims.

Plaintiffs' facial regulatory taking challenge fails as a matter of law because Plaintiffs fail to plausibly allege, as they must, that "no set of circumstances exists under which the [RSL] would be valid." 74 Pinehurst, 59 F.4th at 564 (internal citation omitted). See also CHIP, 59 F.4th at 554. It is well-settled that the RSL is not susceptible to a facial regulatory taking challenge. 74 Pinehurst, 59 F.4th at 564. Indeed, "[t]he economic impact of the RSL on the various landlords cannot be ascertained on a collective basis, as it necessarily varies among properties. Some landlords might have been harmed while others might not have been." Id. This variation necessarily means that Plaintiffs "cannot establish that the RSL can never be applied constitutionally." Id. Accordingly, Plaintiffs' facial regulatory taking challenges fail.

Plaintiffs' as-applied regulatory takings claim should also be dismissed as a matter of law. *First*, Plaintiffs' claims are not ripe for judicial review, as two Plaintiffs have failed to apply for hardship exemptions, and the application of one Plaintiff is still pending. 74 Pinehurst, 59 F.4th at 565 (dismissing as-applied regulatory taking challenges because plaintiffs had not sought hardship exemptions); 335-7 LLC v. City of New York, et al., 2023 U.S. App. LEXIS 4940, *7-8 (2d. Cir. 2023) (as-applied regulatory taking claims unripe because landlords admit that they have not attempted to apply for any of the exemptions allowed by the RSL).

*Second*, Plaintiffs argue that the regulation of rent for vacant apartments "confiscates value from the" apartment, and "that confiscation interferes with the owner's investment-backed expectations . . . ." Compl. ¶ 274. Plaintiffs, all of whom purchased their properties many years after the enactment of rent stabilization, operate in a highly regulated industry, and "[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments. . . ." Connolly v. Pension Benefit Guaranty Corp., 475 U.S. 211, 227 (1986); see also 74 Pinehurst, 59 F.4th at 567–68 ("New York landlords have taken

3

a calculated risk when they entered the rental market. . . . [T]he fact that this risk then results in a loss does not constitute a taking."); Bldg. & Realty Inst., 2024 U.S. App. LEXIS 5905, *10. Further, regulation of rent for vacant units does "not interfere with . . . [Plaintiffs'] primary expectation concerning the use of the parcel." Penn Cent., 438 U.S. at 136; see also Park Ave. Tower Assocs. v. N.Y., 746 F.2d 135, 139 (2d Cir. 1984). Plaintiffs may still rent these apartments to tenants. Plaintiffs allege that particular vacant units "cannot be profitably rented because of rent stabilization," (Compl. ¶ 264) but loss of profit alone does not constitute a taking as a matter of law. 74 Pinehurst, 59 F.4th at 566; see also Concrete Pipe & Products of California, Inc. v. Constr. Laborers Pension Trust for S. California, 508 U.S. 602, 645 (1993); Federal Home Loan Mortg. Corp. v. New York State Div. of Hous. & Community Renewal, 83 F.3d 45, 48 (2d. Cir. 1996).

        Plaintiffs' substantive due process claim (second cause of action) must also be dismissed. It is well-settled that "the Due Process clause cannot 'do the work of the Takings Clause' because 'where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" CHIP, 59 F.4th 540 at 556-57. Even if a due process challenge were available, Plaintiffs' arguments fail because the RSL survives rational basis review. Id. at 557. "It is beyond dispute" that the RSL is rationally related to a legitimate government interest of "neighborhood continuity and stability." Id. The provisions of the RSL that eliminated vacancy increases in 2019 were enacted to preserve rent stabilized units, particularly those affordable to low-and moderate-income people, and without which many New Yorkers would not be able to continue to reside in New York City. Providing Plaintiffs the relief they seek herein–namely, permitting vacant rent stabilized units to be rented at market rate–would result in the deregulation of units (contrary to the Legislature's intent) and undermine the entire rent stabilization scheme. Accordingly, the RSL serves a legitimate and rational government interest.

        Finally, Plaintiffs' equal protection claim (third cause of action) should be dismissed for similar reasons. Courts have consistently held that rent stabilization laws are rationally related to a legitimate state interest of addressing "an acute shortage of dwellings" and "prevent[ing] exactions of unjust, unreasonable and oppressive rents and rental agreements." NYC Administrative Code § 26-501; see Pennell v. City of San Jose, 485 U.S. 1, 14 (1988) (rejecting equal protection challenge to rent control statute).

        For the foregoing reasons, a motion to dismiss the case as against the City Defendants is appropriate and likely to succeed.

                            Respectfully submitted,

                            /s/ Rachel K. Moston
                            _____

                            Rachel K. Moston
                            Leah A. Reiss
                            Assistant Corporation Counsels

Cc:      All Counsel of Record (via ECF)