UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMALL PROPERTY OWNERS OF NEW YORK, INC.; RPN MANAGEMENT CO., INC.; PKM HOME LLC; and 135 W 78TH, LLC,<br><br>               Plaintiffs,<br>     -against-<br><br>THE CITY OF NEW YORK; THE NEW YORK CITY RENT GUIDELINES BOARD; RUTHANNE VISNAUSKAS, in her official capacity as Commissioner of the New York State Division of Housing and Community Renewal; THE STATE OF NEW YORK; DOUG APPLE, in his official capacity as chair and member of the New York City Rent Guidelines Board; ARPIT GUPTA, ALEX SCHWARTZ, REED JORDAN, ALEXANDER ARMLOVICH, ROBERT EHRLICH, CHRISTINA SMYTH, GENESIS AQUINO, and ADÁN SOLTREN, in their official capacities as members of the New York City Rent Guidelines Board,<br><br>               Defendants. | No. 25 Civ. 9425 (JPC) (SDA) |

## MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*
28 Liberty Street
New York, New York 10005
(212) 416-8651/8625

MICHAEL A. BERG
SHI-SHI WANG
Assistant Attorneys General

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ...............................................................................................3

    A.    Overview of the Rent Stabilization Law ...............................................................3

    B.    New York City's Continued Housing Emergency ...............................................6

    C.    The RSL Cases Upheld the RSL, Including the 2019 Amendments...................6

    D.    Plaintiffs' Claims and Demands for Relief ..........................................................7

ARGUMENT...................................................................................................................8

I.    SOVEREIGN IMMUNITY BARS THIS ACTION AGAINST THE STATE AND BARS ALL CLAIMS FOR DAMAGES AGAINST VISNAUSKAS...................8

II.    PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE.......................................................10

    A.    SPONY Lacks Standing To Sue...........................................................................10

    B.    The Plaintiff Landlords' Claims Are Unripe........................................................11

III.    PLAINTIFFS' FACIAL TAKINGS CLAIMS AND ONE OF THEIR AS-APPLIED CLAIMS ARE TIME-BARRED.....................................................................12

IV.    PLAINTIFFS DO NOT STATE A REGULATORY TAKINGS CLAIM .....................14

    A.    The Scope Of The Takings Clause....................................................................14

    B.    Controlling Case Law Establishes That The Relevant Parcel Of Property Is The Apartment Building, Not The Individual Unit .....................................................15

    C.    The Complaint Does Not State A Categorical RegulatoryTakings Claim, On Its Face Or As Applied To Plaintiffs..........................................................................18

        1.  The Complaint Does Not State a Facial Challenge ...........................................18

        2.  The Complaint Does Not State an As-Applied Takings Claim ........................20

D.      The Complaint Does Not State A *Penn Central* Claim...................................22

      1.  *Penn Central* Claims Are Not Amenable To Facial Review.........................22

      2.  The Complaint Fails To State An As-Applied *Penn Central* Claim .............23

V.      PLAINTIFFS' DUE PROCESS CLAIM FAILS AS A MATTER OF LAW..............28

A.      Plaintiffs' Due Process Claim Is Duplicative Of Their Takings Claims.........28

B.      Plaintiffs' Due Process Claim Fails On Its Merits..........................................29

VI.     THE COMPLAINT DOES NOT STATE AN EQUAL PROTECTION
CLAIM........................................................................................................................31

CONCLUSION..........................................................................................................................33

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*31 Alanson Lane, LLC v. Town of Southampton,*
    No. 23 Civ. 8938 (NJC) (LGD), 2026 WL 414716 (E.D.N.Y. Feb. 15, 2026) .......................28

*335-7 LLC v. City of N.Y.,*
    524 F. Supp. 3d 316 (S.D.N.Y. 2021)................................................................................ *passim*

*74 Pinehurst LLC v. State of N.Y.,*
    492 F. Supp. 3d 33 (E.D.N.Y. 2020) ................................................................................ *passim*

*1256 Hertel Ave. Assocs., LLC v. Calloway,*
    761 F.3d 252, 263 (2d Cir. 2014) .......................................................................................14

*2910 Georgia Ave. LLC v. D.C.,*
    234 F. Supp. 3d 281 (D.D.C. 2017) ...................................................................................18

*A.H. by E.H. v. N.Y.S. Dep't of Health,*
    147 F.4th 270 (2d Cir. 2025) ..............................................................................................10

*Alden v. Maine,*
    527 U.S. 706 (1999)...............................................................................................................8

*Allen v. Cuomo,*
    100 F.3d 253 (2d Cir. 1996).................................................................................................26

*Asociacion de Suscripcion Conjunta v. Juarbe-Jimenez,*
    659 F.3d 42 (1st Cir. 2011)..................................................................................................13

*Auracle Homes, LLC v. Lamont,*
    478 F. Supp. 3d 199 (D. Conn. 2020).................................................................................29

*Bano v. Union Carbide Corp.,*
    361 F.3d 696 (2d Cir. 2004)................................................................................................11

*Barnes v. City of N.Y.,*
    68 F.4th 123 (2d Cir. 2023) ................................................................................................12

*Billeris v. Vill. of Bayville,*
    694 F. Supp. 3d 214 (E.D.N.Y. 2023) ...........................................................................12, 14

*Black v. State of N.Y.,*
    13 F. Supp. 2d 538 (S.D.N.Y. 1998)...................................................................................31

*Bldg. & Realty Inst. of Westchester & Putnam Cnties, Inc., et al. v. N.Y.*,
   No. 19 Civ. 11285 (KMK), 2021 WL 4198332 (S.D.N.Y. Sept. 14, 2021) .................... *passim*

*Canadian St. Regis Band of Mohawk Indians v. New York*,
   Nos. 5:82-CV-0783, 5:82-CV-1114, 5:89-cv-0829 (LEK) (TWD), 2013 WL 3992830
   (N.D.N.Y. July 23, 2013) ................................................................................................4

*CCA Assocs. v. United States*,
   667 F.3d 1239 (Fed. Cir. 2011) ....................................................................................29

*Cmty. Hous. Improvement Program v. City of N.Y.*,
   492 F. Supp. 3d 33 (E.D.N.Y. 2020) .................................................................. *passim*

*Colony Cove Props., LLC v. City of Carson*,
   640 F.3d 948 (9th Cir. 2011) .......................................................................................13

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*,
   508 U.S. 602 (1993) ................................................................................................25, 27

*Conn. Parents Union v. Russell-Tucker*,
   8 F.4th 167 (2d Cir. 2021) ...........................................................................................10

*Cranley v. Nat'l Life Ins. Co. of Vt.*,
   318 F.3d 105 (2d Cir. 2003) .........................................................................................18

*EklecCo NewCo LLC v. Town of Clarkstown*,
   No. 16 Civ. 492 (NSR), 2018 WL 3023159 (S.D.N.Y. June 18, 2018) .................................13

*EklecCo NewCo LLC v. Town of Clarkstown*,
   No. 16 Civ. 6492 (NSR), 2019 WL 2210798 (S.D.N.Y. May 21, 2019) ................................13

*Elsmere Park Club Ltd. v. Town of Elsmere*,
   771 F. Supp. 646 (D. Del.1991) ...................................................................................16

*Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*,
   548 F.3d 1184 (9th Cir. 2008) .....................................................................................13

*Ex Parte Young*,
   209 U.S. 123 (1908) ........................................................................................................9

*Elmsford Apt. Assocs., LLC v. Cuomo*,
   469 F. Supp. 3d 148 (S.D.N.Y. 2020) .........................................................................14

*F.C.C. v. Beach Comm'ns, Inc.*,
   508 U.S. 307 (1993) ......................................................................................................31

*Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal*,
  87 N.Y.2d 325 (1995) ................................................................................................4, 29

*Field Day, LLC v. Cnty. of Suffolk*,
  463 F.3d 167 (2d Cir. 2006)........................................................................................23

*Francis S. v. Stone*,
  995 F. Supp. 368 (S.D.N.Y. 1998) ..............................................................................31

*G-Max Mgmt., Inc. v. N.Y.*,
  No. 19 Civ. 11285 (KMK), 2021 WL 4198332 (S.D.N.Y. Sept. 14, 2021) ................... *passim*

*Goe v. Zucker*,
  43 F.4th 19 (2d Cir. 2022) ..........................................................................................23

*Greater Chautauqua Fed. Credit Union v. Marks*,
  22 Civ. 2754 (MKV), 2023 WL 2744499 (S.D.N.Y. Mar. 31, 2023). ........................ 14-15, 26

*Greenburgh Eleven Union Free Sch. Dist. v. Thompson*,
  No. 18 CV 67 (VB), 2018 WL 6830865 (S.D.N.Y. Dec. 28, 2018)............................................4

*Greystone Hotel Co. v. City of N.Y.*,
  13 F. Supp. 2d 524 (S.D.N.Y. 1998)............................................................................24, 26, 29

*Hammer v. Town of Bedford*,
  No. 25 Civ. 2618 (CS), 2026 WL 100793 (S.D.N.Y. Jan. 13, 2026) ......................................25

*Harmon v. Markus*,
  412 F. App'x 420 (2d Cir. 2011) ............................................................................ 23-24, 28

*Heidel v. Hochul*,
  No. 20 Civ. 10462 (PKC), 2021 WL 4942823 (S.D.N.Y. Oct. 21, 2021)................................23

*Heller v. Doe by Doe*,
  509 U.S. 312 (1993)................................................................................................................31

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
  452 U.S. 264 (1981)................................................................................................................11

*Hogan v. Fischer*,
  738 F.3d 509 (2d Cir. 2013)....................................................................................................12

*Hunt v. Wash. Apple Adver. Comm'n*,
  432 U.S. 333 (1977)................................................................................................................10

*In re Charter Oak Assocs.*,
  361 F.3d 760 (2d Cir. 2004)...........................................................................................8

*In re Santiago-Monteverde*,
  747 F.3d 153 (2d Cir. 2014) ...........................................................................................3

*Jado Assocs., LLC v. Suffolk Cnty. Sewer Dist. No. 4-Smithtown Galleria*,
  No. Civ. 3011 (DRH) (ARL), 2014 WL 2944086 (E.D.N.Y. June 30, 2014).........................23

*Kentucky v. Graham*,
  473 U.S. 159 (1985)........................................................................................................9

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
  480 U.S. 470 (1987)......................................................................................................24

*Kuhnle Bros., Inc. v. Cnty. of Geauga*,
  103 F.3d 516 (6th Cir. 1997) ........................................................................................13

*Levine v. McCabe*,
  357 F. Supp. 2d 608 (E.D.N.Y. 2005) ...........................................................................31

*Lingle v. Chevron U.S.A. Inc.*,
  544 U.S. 528 (2005) ......................................................................................................14

*Loretto v. Teleprompter Manhattan CATV Corp.*,
  458 U.S. 419 (1982)......................................................................................................20

*Manocherian v. Lenox Hill Hosp.*,
  84 N.Y.2d 385, 389 (1994), *certified question answered*, 24 N.Y.3d 283 (2014) ....................3

*Meriden Tr. & Safe Deposit Co. v. F.D.I.C.*,
  62 F.3d 449 (2d Cir. 1995)............................................................................................23

*Murr v. Wisconsin*,
  582 U.S. 383 (2017)................................................................................... 15-16, 17, 20

*N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*,
  25 F. Supp. 3d 459 (S.D.N.Y. 2014).................................................................................9

*Nat'l Rifle Ass'n of Am. v. Hochul*,
  No. 20-3187-CV, 2021 WL 5313713 (2d Cir. Nov. 16, 2021).................................................9

*OM 309-311 6th St., LLC v. City of Union City*,
  No. 21 Civ. 12051, 2022 WL 855769 (D.N.J. Mar. 23, 2022)..............................................16

*Palazzolo v. Rhode Island*,
     533 U.S. 606 (2001) ...................................................................................................14

*Park Ave. Tower Assocs. v. City of N.Y.*,
     746 F.2d 135 (2d Cir. 1984)....................................................................................21, 25

*Penn Central Transp. Co. v. City of New York*,
     438 U.S. 104 (1978).......................................................................................... *passim*

*Pennell v. City of San Jose*,
     485 U.S. 1 (1988)......................................................................................................29

*Preseault v. I.C.C.*,
     494 U.S. 1 (1990).......................................................................................................29

*Regina Metro. Co., LLC v. N.Y.S. Div. of Hous. & Cmty. Renewal*,
     35 N.Y.3d 332 (2020) ...............................................................................................29

*Rent Stabilization Ass'n of the City of N.Y. v. Dinkins*,
     5 F.3d 591 (2d Cir. 1993).................................................................................10, 20, 21

*Rent Stabilization Ass'n of the City of N.Y. v. Dinkins*,
     805 F. Supp. 159 (S.D.N.Y. 1992) .............................................................................21

*Rent Stabilization Ass'n of the City of N.Y. v. Higgins*,
     83 N.Y.2d 156 (1993) ................................................................................................30

*Roberts v. Tishman Speyer Props., L.P.*,
     62 A.D.3d 71 (1st Dep't 2009) .....................................................................................8

*Rodriguez v. New York*,
     No. 17 Civ. 4126 (CM), 2017 WL 8777374 (S.D.N.Y. Nov. 28, 2017) ...................................9

*Sanitation and Recycling Indus., Inc. v. City of N.Y.*,
     107 F.3d 985 (2d Cir. 1997)........................................................................................18

*Sensational Smiles, LLC v. Mullen*,
     793 F.3d 281 (2d Cir. 2015)........................................................................................31

*Stahl York Ave. Co., LLC v. City of N.Y.*,
     162 A.D.3d 103 (1st Dep't 2018) ...............................................................................17

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*,
     560 U.S. 702 (2010)................................................................................................ 28-29

*Suitum v. Tahoe Reg'l Plan. Agency*,
    520 U.S. 725 (1997)............................................................................................................11

*Takeall by Rubinstein v. Ambach*,
    609 F. Supp. 81 (S.D.N.Y. 1985) .......................................................................................9

*The Slaughterhouse Cases*,
    83 U.S. 36 (1873)………………………………………………………………………….32

*Trotman v. Palisades Interstate Park Comm'n*,
    557 F.2d 35 (2d Cir. 1977)..................................................................................................9

*United States v. Gomez*,
    159 F.4th 172 (2d Cir. 2025) ........................................................................................ 18-19

*United States v. Salerno*,
    481 U.S. 739 (1987)..........................................................................................................18

*Vargas v. 112 Suffolk St. Apt. Corp.*,
    66 Misc. 3d 1214(A), 120 N.Y.S.3d 724 (N.Y. Civ. Ct. May 22, 2020)................................17

*W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*,
    31 F. App'x 19 (2d Cir. 2002) ...................................................................................... 19, 31-32

*Walden v. Kosinski*,
    153 F.4th 118 (2d Cir. 2025) ...............................................................................................9

*Washington v. Glucksberg*,
    521 U.S. 702 (1997)..........................................................................................................29

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989).............................................................................................................8

**Federal Constitutional Provisions, Statutes, and Regulations**

U.S. const., am. V ...................................................................................................... *passim*
U.S. const., am. XI.................................................................................................................8, 14
U.S. const., am. XIV ....................................................................................................... 14, 28-32

42 U.S.C. § 1983.......................................................................................................................7, 9, 12

Fed. R. Civ. P.
    12(b)(1) .............................................................................................................................10
    12(b)(6) .............................................................................................................................10

**State Constitutional Provisions, Statutes, and Rules**

1974 N.Y. Laws ch. 576 ...............................................................................................4

1997 N.Y. Laws ch. 116 ...............................................................................................5

2019 N.Y. Laws ch. 36 ........................................................................................... *passim*

2024 N.Y. Laws ch. 56 ..................................................................................................5

N.Y. Real Prop. Tax Law

    § 102(12) ...................................................................................................16
    § 1802(1)....................................................................................................16

N.Y. Unconsol. Law (McKinney)

    § 8603.........................................................................................................6
    § 8622.........................................................................................................8
    § 8623.........................................................................................................6
    § 8626.........................................................................................................5

**Local Laws Of The City Of New York**

N.Y.C. Admin. Code

    § 26-501 ...............................................................................................4, 24
    § 26-502 ....................................................................................................6
    § 26-510(a)-(b).............................................................................................4
    § 26-511(c)(6) .........................................................................................5, 21
    § 27-2004(50)............................................................................................21
    § 27-2005(h)..............................................................................................21
    § 27-2009.3 ...............................................................................................21
    § 27-2123(a)..............................................................................................21

**Legislative Materials**

*Rent-Regulated Housing: Hearing Before the Assemb. Standing Comm. on Hous.*, 2019
    Leg., 242d Sess. 23, 25-26 (May 2, 2019) (Statement of Lucy Joffee, Assistant
    Comm'r of Policy, N.Y.C. Housing Preservation & Development). ........................5

*Temporary State Comm'n on Living Costs and the Economy of the State of N.Y.,* Report
    on Housing and Rents § A, at 3, 14–15, 21; § E.I, at 7 (Jan. 1974).........................8

Sponsor's Mem., Bill Jacket, L. 2019, ch. 36................................................................32

**Miscellaneous Authorities**

Elyzabeth Gaumer, *Selected Initial Findings of the 2023 New York City Housing and Vacancy Survey* (Feb. 8, 2024), available at https://www.nyc.gov/assets/hpd/downloads/pdfs/about/2023-nychvs-selected-initial-findings.pdf..................................................................................4-5

New York State Division of Housing and Community Renewal ("DHCR") Operational
Bulletin 2024-2, revised Oct. 29, 2025 .....................................................................5

*New York City Council Votes to Declare Continuing Housing Emergency to Maintain
Rent Stabilization Laws* (Mar. 19, 2024), available at
https://council.nyc.gov/press/2024/03/19/2576/ ........................................................6

N.Y.C. Dep't of Fin., Automated City Register Information System (ACRIS), available at
https://a836-acris.nyc.gov/CP/............................................................................16

N.Y.C. Rent Guidelines Board, *2025 Price Index of Operating Costs*, April 17, 2025,
available at https://rentguidelinesboard.cityofnewyork.us/wp-
content/uploads/2025/04/2025-PIOC.pdf ..............................................................17

Defendants the State of New York (the "State") and Commissioner RuthAnne Visnauskas ("Commissioner Visnauskas") of the State Division of Housing and Community Renewal ("DHCR") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint, filed November 12, 2025 (ECF No. 1).

## PRELIMINARY STATEMENT

New York adopted its system of rent stabilization in 1969 to relieve an intractable housing emergency. In the decades since, the Legislature has repeatedly amended the Rent Stabilization Law (the "RSL"), sometimes to the benefit of tenants and sometimes to the benefit of landlords. Responding to a set of amendments adopted in 2019, known collectively as the Housing Stability and Tenant Protection Act ("HSTPA"), building owners and industry groups filed five separate constitutional challenges in the Southern and Eastern Districts of New York (the "RSL Cases"). In the RSL Cases, the plaintiffs alleged that rent stabilization violated their rights under the Takings, Due Process, and Equal Protection Clauses of the U.S. Constitution. The District Courts dismissed all five cases on jurisdictional grounds and on the merits, the Second Circuit affirmed, and the Supreme Court denied the plaintiffs' applications for certiorari.

Six years after the HSTPA became law, three landlords and an industry association filed this action, recycling claims that were dismissed in the RSL Cases. Their claims should be dismissed for substantially the reasons set forth by the Second Circuit in the RSL Cases.

*First*, the Eleventh Amendment bars this action in its entirety against the State, and bars all claims for monetary relief against Commissioner Visnauskas. *See* Point I. *Second*, the justiciability doctrines of standing and ripeness preclude Plaintiffs' claims. *See* Point II. *Third*, Plaintiffs' facial takings claims and one of their as-applied takings claims are time-barred. *See* Point III. *Fourth*, the Complaint fails to state either a categorical or non-categorical regulatory

takings claim. Plaintiffs' *per se* takings claim must be dismissed because the challenged

provisions do not strip their apartment buildings – or their vacant apartments – of all economic

value. Their non-categorical takings claim must be dismissed because the Complaint's

allegations do not satisfy the legal test in *Penn Central Transportation Co. v. City of New York*,

438 U.S. 104 (1978). *See* Point IV. **Fifth** and **sixth**, Plaintiffs' due process and equal protection

claims are meritless, and Plaintiffs concede that Supreme Court precedent bars their privileges

and immunities claim. *See* Points V-VI.

Any attempt by Plaintiffs to distinguish this case from the RSL Cases is groundless. To

be sure, the Complaint does not challenge the HSTPA in its entirety, as some of the RSL Cases

did. Instead, the Complaint focuses primarily on the (1) repeal of a "vacancy bonus" that

permitted owners to raise rents up to 20% when reletting a vacant apartment; and (2) reduction in

the portion of renovation costs, known as Individual Apartment Improvements ("IAIs"), that

landlords are permitted to charge tenants as a component of the rent (the "Challenged

Provisions"). But the RSL Cases expressly alleged that the Challenged Provisions violated the

Takings, Due Process, and Equal Protection Clauses. The courts dismissed those same

challenges, and their holdings and reasoning compel the same result here.

Plaintiffs' attempt to redefine the relevant unit of property as each individual apartment

affected by the Challenged Provisions is equally unavailing. Plaintiffs purchased, operate,

maintain, and pay taxes on apartment buildings – not individual units. Thus, as a practical matter,

it makes no sense to analyze the RSL's impacts on each apartment in isolation. As a legal matter,

moreover, the Supreme Court has expressly warned that alleged takings must be evaluated based

on the challenged regulation's effects on the property as a whole. A plaintiff cannot plead a

taking by singling out a small portion of its property and claiming that government action has

eliminated, or substantially impaired, the value of that component alone.

Finally, Plaintiffs' claims are just as radical and far-reaching as those rejected in the RSL Cases, and granting their requested relief would either eradicate rent stabilization or fatally undermine its goals. The Complaint seeks a declaratory judgment and permanent injunction "prohibiting the enforcement of [the RSL], insofar as it restricts allowable rent for vacant apartments." Compl. at 46, ¶¶ A, B. That would permit landlords, when renting a vacant apartment to a new tenant, to set the rent at the prevailing market rate. For example, Plaintiffs allege that one of their apartments, with a stabilized rent of about $1,200, could be leased for $4,500 to $5,100 on the open market – a fourfold increase. *See* Compl. ¶¶ 219-20. The inevitable result, as tenants move out or pass away, would be the outright elimination of tenant protections adopted by the Legislature and repeatedly upheld by the federal and state courts, or at best, the reinstatement of purported rent regulations at levels that would be out of reach for all but the most affluent tenants. The requested relief also would motivate landlords to harass tenants to vacate their apartments so they can be rented at market rents – precisely what the Legislature sought to prevent by enacting rent stabilization.

Plaintiffs' claims against State Defendants should be dismissed with prejudice.

## STATEMENT OF FACTS

### A.  *Overview of the Rent Stabilization Law*

New York adopted its system of rent stabilization "to ameliorate, over time, the intractable housing emergency in the City of New York" by "protect[ing] dwellers who could not compete in an overheated rental market, through no fault of their own." *In re Santiago-Monteverde*, 747 F.3d 153, 156 (2d Cir. 2014) (citing *Manocherian v. Lenox Hill Hosp.,* 84 N.Y.2d 385, 389 (1994)), *certified question answered*, 24 N.Y.3d 283 (2014). First adopted in

3

1969, the RSL[1] aims to prevent the most egregious forms of profiteering and speculation that the tight housing market would otherwise encourage. *See* N.Y.C. Admin. Code § 26-501 (finding the RSL necessary "to prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices"). By regulating rent increases and evictions, the RSL limits the disruption to neighborhoods that would result from dramatic rent increases and rapid turnover of tenants. *See id.*; *Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal*, 87 N.Y.2d 325, 332 (1995).

The RSL generally applies to buildings with six or more units constructed before 1974. N.Y.C. Admin. Code § 26–504. The RSL currently governs nearly one million apartments in New York City. *See* Selected Initial Findings of the 2023 New York City Housing and Vacancy Survey ("HVS").[2] "The regulations govern the initial rent, restrict rent increases, mandate lease renewal, and, upon the tenant's vacating of the premises, allow the tenancy to pass statutorily to certain members of the tenant's household, if certain conditions are met." *Santiago-Monteverde*, 747 F.3d at 156. Property owners are permitted to increase rents by a percentage determined annually by the New York City Rent Guidelines Board ("RGB"). N.Y.C. Admin. Code § 26-510(a)-(b). In setting the permissible rent increases, the RGB is required to consider, among other things, the cost of living and the economic condition of the residential real-estate industry, including the housing supply, maintenance costs, availability of financing, and vacancy rates. *Id.* § 26-510(b).

---

[1] The RSL is codified in the N.Y.C. Administrative Code §§ 26–501 to 26–520, as amended, and the Emergency Tenant Protection Act, ch. 576, § 4, 1974 N.Y. Laws 1510, 1512–23.

[2] Available here. The Court may consider HVS survey data on this motion because Plaintiffs rely on such data, *see, e.g.*, Compl. ¶ 74, making it integral to the Complaint. *See, e.g.*, *Greenburgh Eleven Union Free Sch. Dist. v. Thompson*, No. 18 CV 67 (VB), 2018 WL 6830865, at * 3 (S.D.N.Y. Dec. 28, 2018). Moreover, HVS surveys are conducted by the U.S. Census Bureau. "The Court can take judicial notice of government statistics," including census figures. *Canadian St. Regis Band of Mohawk Indians v. New York*, Nos. 5:82-CV-0783, 5:82-CV-1114, 5:89-cv-0829 (LEK) (TWD), 2013 WL 3992830, at *12 (N.D.N.Y. July 23, 2013) (collecting cases).

The RSL authorizes additional rent increases in certain circumstances, as when the owner improves the condition of the building (a Major Capital Improvement) or unit (an IAI). *See* N.Y. Unconsol. Law §§ 26-511.1, 8626; N.Y.C. Admin. Code § 26-511(c)(6), (c)(13). From 1997 to 2019, the RSL also allowed owners to increase rents up to 20% when renting the unit to a new tenant. *See* 1997 N.Y. Laws ch. 116, *repealed* 2019 N.Y. Laws ch. 36, pt. B, §§ 1–7. Owners who claim the authorized increases do not provide sufficient income may apply to DHCR for a hardship exemption. *Id.* § 26-511(c)(6), (6-a); RSC § 2522.4(b)-(c).

In 2019, New York amended the RSL by enacting the HSTPA. The HSTPA was based, in part, on the Legislature's finding that "severe disruption of the rental housing market has occurred and threatens to be exacerbated ***as a result of the present state of the law***," which "has permitted speculative and profiteering practices and has brought about the loss of vital and irreplaceable affordable housing for working persons and families." 2019 N.Y. Laws ch. 36, pt. D (emphasis added). The Legislature also heard testimony that some landlords were harassing tenants to drive them out of their apartments, and then raising the rents upon vacancy.[3] In relevant part, the HSTPA repealed the vacancy increase provisions adopted in 1997, 2019 N.Y. Laws ch. 36, pt. B, §§ 1–7, and limited rent increases based on IAIs to $15,000. 2019 N.Y. Laws ch. 36, pt. K, § 2. The HSTPA also reduced IAI rent increases to 1/168 of the total cost of the improvements and limited the duration of those increases to 30 years. *Id.* However, in October 2024, the Legislature again made IAI increases permanent and increased the cap to $30,000 or, where certain criteria are met, as much as $50,000. 2024 N.Y. Laws ch. 56, pt. FF, § 4; *see also* Compl. ¶¶ 51-52.[4]

---

[3] *See Rent-Regulated Housing: Hearing Before the Assemb. Standing Comm. on Hous.*, 2019 Leg., 242d Sess. 23, 25-26 (May 2, 2019) (Statement of Lucy Joffee, Assistant Comm'r of Policy, HPD).

[4] *See also* DHCR Operational Bulletin 2024-2, revised October 29, 2025, available here.

### B.  New York City's Continued Housing Emergency

The RSL authorizes municipalities to establish and maintain a system of rent stabilization when the vacancy rate is less than 5% and the local legislature declares a housing emergency. *See* N.Y. Unconsol. Law § 8623. The New York City Council has reassessed the need for continued rent regulation roughly every three years, relying on the HVS. *See* N.Y.C. Admin. Code § 26-502; *see also* N.Y. Unconsol. Law § 8603. The most recent HVS in 2023 found that the City's vacancy rate was **1.41%** – the lowest rate since the survey's inception in 1965. *See* n.2, *supra*, HVS at 21. The vacancy rate for rent-stabilized units was only **0.98%.** *Id.* at 22.

On March 19, 2024, the City Council voted to declare an ongoing housing emergency.[5] HVS data showed not only a lack of available housing in the City, but an "extremely limited supply" of available rental units renting for less than the median rent, $1,500 per month. *Id*. at 21, 74. Specifically, the vacancy rate for apartments renting for less than $1,100 was a mere 0.39%, while units renting for $1,100 to $1,649 had a vacancy rate of 0.91%. The HVS also reported that 54% of renters earning less than $70,000 were severely rent-burdened, meaning they paid more than half their household income toward rent. *Id.* at 55. In 2022, rent-stabilized tenants' median household income was $60,000, compared to $90,800 for market-rate renters. *Id.* There was also a higher percentage of elderly tenants and tenants with disabilities in rent-stabilized units compared to those living in market-rate units. *Id*. at 48.

### C.  The RSL Cases Upheld the RSL, Including the 2019 Amendments

After New York enacted the HSTPA, landlords and property owners' associations challenged rent stabilization in the RSL Cases, alleging violations of the U.S. Constitution's

---

[5] *See* https://council.nyc.gov/press/2024/03/19/2576/.

Takings, Due Process, and Equal Protection Clauses.[6] The District Courts dismissed the RSL

Cases, the Second Circuit affirmed, and the Supreme Court denied the plaintiffs' petitions for

*certiorari*. *Id*.[7]

Notably, the District Courts upheld the constitutionality of the two Challenged Provisions

here: (1) the repeal of the "vacancy bonus" that permitted owners to raise the rent up to 20%

when reletting a vacant apartment; and (2) the reduction in permissible rent increases based on

IAIs. *See 335-7 LLC,* 524 F. Supp. at 322 (upholding the constitutionality of the HSTPA, even

though it "eliminated … vacancy allowances [and] reduced recovery for [IAIs]"); *BRI,* 2021 WL

4198332, at *3 (rejecting constitutional challenge to HSTPA based on its "eliminat[ion] of

vacancy and longevity rental increases").

### D.  *Plaintiffs' Claims and Demands for Relief*

Plaintiffs assert four facial and as-applied claims under 42 U.S.C. § 1983: a categorical

and non-categorical regulatory taking of property, and violations of the Fourteenth Amendment's

Due Process, Equal Protection, and Privileges and Immunities clauses. Compl. ¶¶ 258-307. They

seek declaratory and injunctive relief "prohibiting the enforcement of [the RSL], insofar as it

restricts allowable rent for vacant apartments." Compl. at 46, ¶¶ A-B. Plaintiffs also seek

damages for alleged lost profits, and nominal damages. *Id.* ¶¶ C-D.

---

[6] *See Bldg. & Realty Inst. of Westchester & Putnam Cnties., Inc. v. N.Y. ["BRI"],* No. 19 Civ. 11285 (KMK), 2021 WL 4198332 (S.D.N.Y. Sept. 14, 2021), *aff'd*, No. 21-2448, 2024 WL 1061142 (2d Cir. Mar. 12, 2024), *cert. denied*, 145 S. Ct. 563 (2024); *G-Max Mgmt., Inc. v. N.Y.,* ["*G-Max"*] No. 19 Civ. 11285 (KMK), 2021 WL 4198332 (S.D.N.Y. Sept. 14, 2021), *aff'd*, No. 21-2448, 2024 WL 1061142 (2d Cir. Mar. 12, 2024), *cert. denied*, 145 S. Ct. 561 (2024); *335-7 LLC v. City of N.Y. ["335-7 LLC"]*, 524 F. Supp. 3d 316 (S.D.N.Y. 2021), *aff'd*, No. 21-823, 2023 WL 2291511 (2d Cir. Mar. 1, 2023), *cert. denied*, 146 S. Ct. 540 (Feb. 20, 2024); *Cmty. Hous. Improvement Program v. City of N.Y. ["CHIP"]*, 492 F. Supp. 3d 33 (E.D.N.Y. 2020), *aff'd*, 59 F.4th 540 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 264 (2023); *74 Pinehurst LLC v. State of N.Y. ["Pinehurst"]*, 492 F. Supp. 3d 33 (E.D.N.Y. 2020), *aff'd*, 59 F.4th 557 (2d Cir. 2023), *cert. denied*, 146 S. Ct. 540 (Feb. 20, 2024).

[7] The only exception was the district court's holding that two landlords, who "bought their properties at the dawn of the rent-stabilized era," stated an as-applied regulatory takings claim because they alleged they could not have anticipated subsequent changes in the RSL. *CHIP*, 492 F. Supp. 3d at 50. Those claims were voluntarily dismissed.

But the Complaint does not merely seek to restore the RSL to its status prior to 2019. Instead, the Complaint expressly seeks the right to increase rents to unregulated market levels when renting any vacant apartment to a new tenant. *See* Compl. ¶¶ 38, 127, 134, 176, 207, 247, 265. New York law has not permitted vacant rent-stabilized apartments to revert to market rates since 1974, when the Legislature repealed a short-lived and disastrous experiment in vacancy deregulation.[8] *See Roberts v. Tishman Speyer Props., L.P.*, 62 A.D.3d 71, 76, n.4 (1st Dep't 2009) (citing L. 1974, ch. 576, *codified in* N.Y. Unconsol. Laws § 8622)), *aff'd*, 13 N.Y.3d 270 (2009).

## ARGUMENT

### I.    SOVEREIGN IMMUNITY BARS THIS ACTION AGAINST THE STATE AND BARS ALL CLAIMS FOR DAMAGES AGAINST VISNAUSKAS

The doctrine of sovereign immunity, secured by the Eleventh Amendment to the U.S. Constitution, mandates the dismissal of this action in its entirety against the State, and of all claims for monetary relief against Commissioner Visnauskas, who is sued solely in her official capacity. *See* U.S. Const., amend. XI; *Alden v. Maine*, 527 U.S. 706, 712-13 (1999).[9]

"The Eleventh Amendment effectively places suits by private parties against states outside the ambit of Article III of the Constitution." *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004). Such suits are barred "unless the State has waived its immunity" or "Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

---

[8] In the three years when vacant rent-stabilized apartments were permitted to revert to market rents, more than 400,000 regulated units were lost, rents in deregulated units rose more than 50%, major capital investments decreased 50%, new construction did not increase, and eviction proceedings rose significantly. *See* Temporary State Comm'n on Living Costs and the Economy, Report on Hous. and Rents § A, at 3, 14–15, 21; § E.I, at 7 (Jan. 1974).

[9] Unless otherwise indicated, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted from case citations.

Plaintiffs assert each of their claims under Section 1983. Compl. ¶ 7; *id.* at 38, 41, 43, 44. "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." *Rodriguez v. New York*, No. 17 Civ. 4126 (CM), 2017 WL 8777374, at *2 (S.D.N.Y. Nov. 28, 2017) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)). Thus, Plaintiffs' claims against the State must be dismissed.

It is also well-settled that "an action against a state official in his official capacity is deemed an action against the state itself[,] which possesses sovereign immunity under the Eleventh Amendment." *Walden v. Kosinski*, 153 F.4th 118, 133 (2d Cir. 2025). Although the Supreme Court has recognized a "limited exception" for claims seeking prospective relief to enforce federal law, *id.* (citing *Ex Parte Young*, 209 U.S. 123 (1908)), it has not authorized claims **for damages** against State officials in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985)); *N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*, 25 F. Supp. 3d 459, 465 (S.D.N.Y. 2014).

The instant Complaint demands both an award of "damages reflecting lost net rental income" and "[n]ominal damages" for each alleged constitutional violation. Compl. at 46 (Prayer for Relief ¶¶ C-D). The Eleventh Amendment bars Plaintiffs' claims for damages against Commissioner Visnauskas. *See Nat'l Rifle Ass'n of Am. v. Hochul*, No. 20-3187-CV, 2021 WL 5313713, at *2 (2d Cir. Nov. 16, 2021) (holding that Eleventh Amendment barred official-capacity claims for nominal damages); *Takeall by Rubinstein v. Ambach*, 609 F. Supp. 81, 87 (S.D.N.Y. 1985) (same). Indeed, the Court need look no further than the RSL Cases for precedents holding that sovereign immunity bars Plaintiffs' claims for damages against Commissioner Visnauskas. *See Pinehurst*, 59 F.4th at 570 (affirming district court's holding that

9

"sovereign immunity barred [Plaintiffs'] takings claims against the State and DHCR, as well as the claims against Commissioner Visnauskas to the extent they sought monetary relief").

In sum, the Eleventh Amendment compels the dismissal of the Complaint in its entirety against the State, and to the extent it seeks damages against Commissioner Visnauskas, for lack of subject matter jurisdiction or failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6).

## II.    PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE

### A.    SPONY Lacks Standing To Sue

To establish Article III jurisdiction, "the plaintiff must have a personal stake in the case – in other words, standing." *A.H. by E.H. v. N.Y.S. Dep't of Health*, 147 F.4th 270, 276 (2d Cir. 2025). Plaintiff Small Property Owners of New York, Inc. ("SPONY") seeks to establish "so-called 'associational' or 'representational' standing to sue on behalf of its members." *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). *See* Compl. ¶¶ 9, 114-136.

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977). SPONY cannot satisfy the third *Hunt* factor because this action "requires the participation of individual members." *Id.* In a similar case, a landlords' association asserted a takings claim on behalf of its 25,000 members, challenging the RSL and related regulations. *Rent Stabilization Ass'n of the City of N.Y. v. Dinkins*, 5 F.3d 591, 592-93 (2d Cir. 1993). The Second Circuit affirmed the dismissal of the claims for lack of standing because they required an *"ad hoc* factual inquiry for *each* landlord who alleges that he has suffered a taking," including "determin[ing] the landlord's particular return based on a host of

individualized financial data, and ... investigat[ing] the reasons for any failure to obtain an adequate return." *Id*. at 596. Similarly, SPONY's facial and as-applied takings claims would require the participation of its members, precluding associational standing. *Id. See also Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004).

### B.    The Plaintiff Landlords' Claims Are Unripe

A property owner's challenge to a state regulatory program is not ripe for review unless and until the claimant has sought, and been denied, relief through an available administrative process. *Pinehurst,* 59 F.4th at 565–66 (holding regulatory takings unripe because claimants "failed to pursue available administrative relief"); *335-7 LLC,* 2023 WL 2291511, at *3 (holding claims unripe because "the Landlords have not applied for a [hardship] exemption, there has been no final decision and we cannot determine how the RSL might be applied to them").

Plaintiffs RPN and PKM allege they have not sought hardship exemptions from DHCR that would permit rent increases in excess of those permitted by the RGB. Compl. ¶¶ 161-167, 195-204. Plaintiff 135 W. 78 alleges it applied for a hardship exemption, but its application is still pending. *Id.* ¶¶ 228, 237-238. Plaintiffs' failure to obtain a final administrative determination on their hardship applications, or even seek one, renders their claims unripe.

By failing to exhaust their administrative remedies, Plaintiffs run afoul of the requirement that "a landowner must . . . *actually seek* such a variance to ripen his [or her] claim." *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 737 (1997) (emphasis added). *See also Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 297 (1981) (rejecting as-applied takings claim when plaintiffs had not sought variance or waiver). This requirement recognizes the fact that any as-applied takings claim—including a regulatory takings claim under *Penn Central*— necessarily turns on how a plaintiff's "singular" property is actually affected. *Suitum*, 520 U.S. at

11

738. It also reflects the fact that any such impact depends on the exercise of "the high degree of discretion characteristically possessed by land-use [authorities] in softening the strictures of the general regulations they administer," and thus cannot be determined simply from the facial features of a state or local regulatory scheme. *Id.* at 738-39.

Plaintiffs cannot evade the finality requirement by asserting in conclusory fashion that it would be futile to apply for hardship exemptions. *See* Compl. ¶¶ 160, 193, 226. Their bare allegation of futility fails because they do not allege they have been subjected to any unfair procedures. *See Pinehurst,* 59 F.4th at 565–66 (rejecting, as "insufficient," Plaintiffs' "[s]peculation" that hardship exemptions provide "economic relief in theory but practically result in few applications ... being granted."); *335-7 LLC,* 2023 WL 2291511, at *3 (rejecting futility argument and affirming dismissal of claims as unripe because "[l]andlords here have not, themselves, experienced any repetitive or otherwise unfair procedures").

Plaintiffs' failure to seek hardship exemptions, much less obtain final administrative determinations, renders their as-applied takings claims unripe.

## III.    PLAINTIFFS' FACIAL TAKINGS CLAIMS AND ONE OF THEIR AS-APPLIED CLAIMS ARE TIME-BARRED

Plaintiffs' facial takings claims are barred in their entirety by the three-year statute of limitations that governs Section 1983 claims in New York. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Billeris v. Vill. of Bayville*, 694 F. Supp. 3d 214, 227 (E.D.N.Y. 2023) (noting that three-year limitations period applies to takings claims). The same statute of limitations bars RPN's as-applied claim concerning one of its alleged vacant apartments.

Federal law determines when a Section 1983 claim accrues, i.e., when the statute of limitations begins to run. *Barnes v. City of N.Y.*, 68 F.4th 123, 127 (2d Cir. 2023). While the Second Circuit has not addressed the issue, other circuits have held that a facial challenge under

12

the Takings Clause accrues when the challenged statute or regulation was enacted or became effective. *See Asociacion de Suscripcion Conjunta v. Juarbe-Jimenez,* 659 F.3d 42, 50–51 (1st Cir. 2011); *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo,* 548 F.3d 1184, 1193, n.15 (9th Cir. 2008); *Kuhnle Bros., Inc. v. Cnty. of Geauga,* 103 F.3d 516, 521 (6th Cir. 1997).

At least one Southern District court concurred, holding that "a facial challenge to a rule based on the Fifth Amendment Takings Clause accrues upon adoption[.]" *EklecCo NewCo LLC v. Town of Clarkstown*, No. 16 Civ. 6492 (NSR), 2019 WL 2210798, at *7 (S.D.N.Y. May 21, 2019). The court explained that a facial challenge "is 'distinct from other constitutional challenges to statutes or regulations where the harm stems from the challenged statute's continued enforcement or application.'" *Id.* (quoting *EklecCo NewCo LLC v. Town of Clarkstown*, No. 16 Civ. 492 (NSR), 2018 WL 3023159, at *9 (S.D.N.Y. June 18, 2018)). There, Judge Román adopted the Ninth Circuit's holding that "in the takings context, the basis of a facial challenge is that the very enactment of the statute has reduced the value of property or has effected a transfer of a property interest. This is a single harm, measurable and compensable when the statute is passed." *Id*. (citing *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011)).

Here, Plaintiffs' facial claims accrued on June 14, 2019, when the HSTPA was enacted, and expired on June 14, 2022. This action was not filed until November 12, 2025. Thus, Plaintiffs' facial takings claims are untimely. Moreover, the Complaint challenges a provision of the RSL that prevents regulated apartments from reverting to free-market rates upon vacancy. Compl. ¶¶ 38, 127, 134, 176, 207, 247, 265. To that extent, the facial takings claims are more than half a century too late, as vacancy deregulation was repealed in 1974.

In addition, RPN Management's as-applied takings claim concerning 81 Cabrini, Unit 35,

13

is time-barred because the unit became vacant in 2019 (Compl. ¶ 144), more than three years before the action was filed. *See Billeris*, 694 F. Supp. at 227 (dismissing takings claim as time-barred).

## IV.    PLAINTIFFS DO NOT STATE A REGULATORY TAKINGS CLAIM

### A.    <u>The Scope Of The Takings Clause</u>

"The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001); U.S. Const., amends. V, XIV. "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). Plaintiffs do not attempt to plead a physical takings claim. *See* Compl. at 38-45.

By contrast, a *regulatory taking* may be found when "governmental regulation of private property 'goes too far' and is 'tantamount to a direct appropriation or ouster.'" *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014) (quoting *Lingle,* 544 U.S. at 537). Courts reviewing such claims "must remain cognizant that government regulation – by definition – involves the adjustment of rights for the public good, and that [g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Lingle*, 544 U.S. at 538-39.

A categorical or *per se* "regulatory taking occurs in 'the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted.'" *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 164 (S.D.N.Y. 2020). "Non-categorical regulatory takings, on the other hand, are those involving anything less than a total loss of value, and are evaluated pursuant to" the *Penn Central* standard. *Greater Chautauqua Fed. Credit Union v. Marks*, 22

14

Civ. 2754 (MKV), 2023 WL 2744499, at *12 (S.D.N.Y. Mar. 31, 2023). Relevant factors are "[1] the regulation's economic effect on the [property owner], [2] the extent to which the regulation interferes with reasonable investment-backed expectations, and [3] the character of the government action.'" *Id.* (quoting *Palazzolo*, 533 U.S. at 617).

Plaintiffs' categorical and a non-categorical regulatory takings claims, Compl. ¶¶ 263-64, 274, hinge on a contrived and unrealistic attempt to redefine the relevant unit of property as each apartment, viewed in isolation, rather than the apartment building as a whole. That gambit is contrary to precedent and logic. *See* Point IV.B, *infra*. For that reason and others, the Complaint fails to state either a categorical or non-categorical takings claim. *See* Points IV.C-D, *infra*.

**B.        Controlling Case Law Establishes That The Relevant Parcel
Of Property Is The Apartment Building, Not The Individual Unit**

Plaintiffs do not allege that the RSL entirely eliminates their apartment buildings' economic value. Instead, their claims focus on four vacant apartments, which Plaintiffs claim cannot be profitably renovated and rented. That approach is misguided. Supreme Court precedent clearly establishes that in evaluating a regulatory takings claim, the relevant unit – the "denominator of the fraction" – is the property as a whole – not the portion affected by the challenged regulation. *Murr v. Wisconsin*, 582 U.S. 383, 395 (2017). *Murr* cautioned against "limit[ing] the parcel in an artificial manner to the portion of property targeted by the challenged regulation," because doing so would be "circular." *Id.* at 396. In short, "'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." *Penn Central*, 438 U.S. at 130.

Thus, the RSL's economic impact must be measured by its alleged effects on each of Plaintiffs' buildings, not the vacant rent-stabilized apartments viewed in isolation. This is consistent with district court holdings applying the teachings of *Penn Central* and *Murr*.

15

Thus, Chief Judge McMahon rejected a takings challenge to a pandemic-era executive order

protecting tenants from eviction, refusing to treat each leasehold as the relevant unit of property.

*Elmsford Apt. Assocs.*, 469 F.Supp.3d at 166 (finding "no basis for treating the subset of

[Plaintiffs'] rented apartments occupied by tenants facing financial hardship as a separate

parcel"). Similarly, in other cases alleging regulatory takings, district courts held that the relevant

property was the building as a whole. *See OM 309-311 6th St., LLC v. Union City,* No. 21 Civ.

12051, 2022 WL 855769, at *1, 15 (D.N.J. Mar. 23, 2022) (holding, in challenge to rent control,

that "the relevant property is the parcel as a whole"); *Elsmere Park Club Ltd. v. Town of

Elsmere*, 771 F. Supp. 646, 653 (D. Del.1991) (rejecting owner's claim that impact of ordinance

should be measured by its effects on regulated units instead of entire building).

The need to analyze takings claims on a building-wide basis is confirmed by an analysis

of relevant factors set forth by the Supreme Court: (1) "the treatment of the land under state and

local law," (2) "the physical characteristics of the land," and (3) "the prospective value of the

regulated land." *Murr,* 582 U.S. at 397.

First, state and local law establish that the relevant parcel is the entire building. Plaintiffs

purchased each building, not the individual apartments. *See* Compl. ¶¶ 138, 182, 213. They

financed each purchase, secured by a mortgage on the building, not each individual apartment.[10]

Plaintiffs pay real estate taxes on each building, not each individual apartment. *See* N.Y. Real

Prop. Tax Law §§ 102(12), 1802(1). And as Plaintiffs acknowledge, DHCR evaluates claims of

hardship on a building-wide basis. *See* Compl. ¶¶ 77-97. Moreover, the RGB reviews rental

income and operating costs for each building as a whole, including the building-wide costs of

---

[10] *See* N.Y.C. Dep't of Fin., Automated City Register Information System (ACRIS), available here.

heating fuel, insurance coverage, administration, and labor.[11]

Thus, in relevant respects, state and local law treat each building as a single, indivisible parcel of property. Plaintiffs' contrary allegations, based on the fact that New York law "separately regulates the rent" for each unit and recognizes each one as a "leasehold," are unavailing. Compl. ¶¶ 103, 105. These considerations do not outweigh the numerous local and state laws and regulations that treat the building as the relevant parcel in the areas of property ownership, mortgage financing, property taxes, zoning and land use, insurance coverage, and costs, among others. *See supra* at 16. Thus, state courts have rejected takings claims and similar legal arguments premised on alleged economic impacts on individual apartments or portions of a parcel. *See Stahl York Ave. Co., LLC v. City of N.Y.*, 162 A.D.3d 103, 107, 111, 115-16 (1st Dep't 2018) (holding that relevant parcel was entire tax block containing two of owners' buildings, and rejecting takings claim based on challenged law's alleged impacts on vacant apartments); *Vargas v. 112 Suffolk St. Apt. Corp.,* 66 Misc. 3d 1214(A) at *6-7, 120 N.Y.S.3d 724 (N.Y. Civ. Ct. May 22, 2020) (applying *Murr* and holding, in tenant's action to compel repairs, that relevant parcel was building as a whole because it "generates building-wide rental income and incurs building-wide operations and maintenance costs").

Second, the physical characteristics of the building support defining the parcel as the entire building. The RSL Cases rejected the notion that each apartment should be considered separately because they have individual doors, locks, and walls. *See CHIP,* 492 F. Supp. at 46 (holding that economic impact "obviously needs to be calculated on an owner-by-owner basis, and those calculations will vary significantly depending on when a property was purchased, what fraction of its units are rent-stabilized, what improvements the landlord has made, and many

---

[11] *See* N.Y.C. Rent Guidelines Board, 2025 Price Index of Operating Costs, April 17, 2025, available here.

other metrics"); *335-7 LLC,* 524 F. Supp. at 336 (considering entire building, and holding that owner can "raise rents in the majority of its units to cover overhead costs"); *see also 2910 Georgia Ave. LLC v. D.C.,* 234 F. Supp. 3d 281, 295-296 (D.D.C. 2017) (holding that relevant parcel was building rather than its 22 condominiums because all units occupied "a single building on a single parcel of land").

Third, "the prospective value of the regulated land" is necessarily based on the building as a whole, as evidenced by the fact that Plaintiffs purchased each building in a single transaction. Compl. ¶¶ 138, 182, 213.

The relevant unit of property is each apartment building, not each unit.

## C.      The Complaint Does Not State A Categorical Regulatory Takings Claim On Its Face Or As Applied To Plaintiffs

Plaintiffs' facial and as-applied categorical takings claims do not withstand scrutiny. *See* Compl. ¶ 263-64; *id.* at 38 (First Claim) & 46, ¶ A.

### 1.      The Complaint Does Not State a Facial Challenge

Plaintiffs challenging the constitutionality of a statute on its face "bear a heavy burden," *Sanitation and Recycling Indus., Inc. v. City of N.Y.*, 107 F.3d 985, 992 (2d Cir. 1997), and "face[ ] an uphill battle." *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 110 (2d Cir. 2003). That hill is "'especially steep'" when plaintiffs do not allege the statute "'makes it commercially impracticable' … to continue business operations on their property." *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 165. The Supreme Court has held that a facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "Facial challenges are disfavored because they often rest on speculation, raise the risk of premature interpretation of statutes on the basis of factually barebones records, and threaten to

18

short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *United States v. Gomez*, 159 F.4th 172, 178 (2d Cir. 2025).

"Facial challenges to the RSL have regularly fallen short of this high bar." *CHIP*, 59 F.4th at 548 (2d Cir. 2023) (dismissing facial challenge to RSL) (citing cases). "Importantly, 'every regulatory-taking challenge to the RSL has been rejected by the Second Circuit.'" *BRI*, 2021 WL 4198332, at *22 (citing *CHIP*, 492 F. Supp. 3d at 44). Here, the Complaint's allegations contradict any claim that the Challenged Provisions are unconstitutional in all circumstances. Plaintiffs assert that vacant apartments "typically" require renovations, which in "some" instances are uneconomical. Compl. ¶ 2. They do not claim that all vacant apartments require repairs, or that the costs are prohibitive in all cases. *See also id.* ¶ 64 (alleging some apartments' rents, but not others, are limited by the RSL); *id.* ¶ 69 (alleging some, but not all, rent-stabilized apartments cannot be rented at a profit); *id.* ¶ 72 (alleging some, but not all, regulated rents are "set so low that it does not make sense for owners to incur [the] costs and liabilities" of renting the units); *id.* ¶ 263 (alleging "some vacant apartments … cannot be rented for a reasonable profit"). Plaintiffs' facial takings claims fail because they do not allege the Challenged Provisions can never be applied constitutionally. *See Salerno*, 481 U.S. at 745.

This conclusion, moreover, is consistent with Second Circuit precedent. In one case, the plaintiffs challenged the RSL's application to apartments constructed under New York's Mitchell-Lama housing program. *W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 31 F. App'x 19, 20 (2d Cir. 2002). The court held that regulatory takings claims require "complex factual assessments of the purposes and economic effects of government actions," and dismissed the claim for failure to plead "facts that would support such a 'complex factual assessment' of

19

the economic effects of the RSL on *all* Mitchell-Lama property owners." *Id.* at 21. Indeed, the court held that "the difficulty of such an assessment suggests that a widely applicable rent control regulation such as the RSL is not susceptible to facial constitutional analysis under the Takings Clause." *Id. See also Dinkins*, 5 F.3d at 595 (affirming dismissal of facial regulatory takings claim for failure to allege RSL was unconstitutional "in every circumstance").

The RSL Cases relied on these precedents to dismiss the plaintiffs' facial challenges. As Judge Komitee noted, "[E]very regulatory-takings challenge to the RSL has been rejected by the Second Circuit," and if such a claim ever prevails, it is unlikely to arise "in the context of a facial challenge." *CHIP*, 492 F. Supp. 3d at 44-45 (citing cases). *Accord CHIP*, 59 F.4th at 554; *Pinehurst*, 59 F.4th at 564–65; *BRI*, 2024 WL 1061142, at *3.

This longstanding and unbroken line of precedent compels the dismissal of Plaintiffs' facial regulatory takings claim.

### 2.    The Complaint Does Not State an As-Applied Takings Claim

Plaintiffs' claim that the RSL "entirely confiscates" the value of four vacant apartments is conceptually misguided, legally erroneous, and unsupported. *See* Compl. ¶¶ 263-64.

***First***, as demonstrated in Point IV.B, *supra*, the correct inquiry is whether the RSL deprives Plaintiffs' buildings, rather than any single apartment, of all economic value. By focusing on four apartments viewed in isolation, Plaintiffs ignore the Supreme Court's admonition against "limit[ing] the parcel in an artificial manner to the portion of property targeted by the challenged regulation." *Murr,* 582 U.S. at 396. Plaintiffs' "circular" reasoning should be rejected. *Id.*

***Second***, Plaintiffs claim the affected units "cannot be rented for a reasonable profit." Compl. ¶ 263. As a matter of law, however, the Takings Clause does not entitle property owners

20

to any particular return on investment. *See Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 436 (1982) (holding that "deprivation of the right to use and obtain a profit from property is not, in every case, independently sufficient to establish a taking"), *quoted in Park Ave. Tower Assocs. v. City of N.Y.*, 746 F.2d 135, 139 (2d Cir. 1984). As noted in the RSL Cases and elsewhere, the Second Circuit has "repeatedly 'rejected the notion that loss of profit—much less loss of a reasonable return—alone could constitute a taking." *Pinehurst*, 59 F.4th at 566. *See also Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 167; *BRI*, 2021 WL 4198332, at *23; *RSA v. Dinkins*, 805 F. Supp. 159, 163 (S.D.N.Y. 1992) (holding that "[a] reasonable return is not protected by law"), *aff'd*, 5 F.3d 591.

**Third**, neither the Complaint nor the applicable law supports Plaintiffs' theory that the allegedly affected apartments have no economic value. The Complaint itself alleges that these apartments retain some value as rental units. *See, e.g.*, Compl. ¶¶146 (alleging apartment's legal rent is $710 per month), 151, 187, 219. Even assuming the apartments cannot profitably be renovated and relet, tenancies benefit the building as a whole by reducing the risks that vacant apartments pose to occupied apartments, such as "inadequate firestopping, leaks, defective plumbing, mold, accumulation of refuse," and other issues. *See* N.Y.C. Admin. Code, §§ 27-2004(50), 2005(h), 27-2009.3, 27-2123(a) (allowing NYC Department of Housing Preservation and Development to inspect "conditions in unoccupied dwelling units *affecting occupied dwelling units* in multiple dwellings") (emphasis added). Moreover, the apartments retain value because the RSL places no limits on the owners' right to sell their buildings or on their personal use of vacant units. *Cf.* 2019 N.Y. Laws ch. 36, pt. I (restricting owners' right to evict tenants to occupy units for personal use). As such, Plaintiffs can occupy an unlimited number of vacant units for personal use. *See* N.Y.C. Admin. Code § 26-511(c)(6).

21

Accordingly, Plaintiffs have failed to state a *per se* regulatory takings claim, either on a facial or as-applied basis.

### D.    The Complaint Does Not State A *Penn Central* Claim

#### 1.    *Penn Central* Claims Are Not Amenable To Facial Review

Plaintiffs' attempt to state a facial *Penn Central* claim fails as a matter of law. As demonstrated above, "a widely applicable rent control regulation such as the RSL is not susceptible to facial constitutional analysis under the Takings Clause." *West 95 Housing Corp.*, 31 F. App'x at 20. *See also Dinkins*, 5 F.3d at 595; *CHIP*, 492 F. Supp. 3d at 45.

Applying this principle in the RSL Cases, the courts had no difficulty concluding that the plaintiff landlords failed to state a facial challenge under *Penn Central*. As Judge Komitee noted, a regulation's economic impact "obviously needs to be calculated on an owner-by-owner basis, and those calculations will vary significantly depending on when a property was purchased, what fraction of its units are rent-stabilized, what improvements the landlord has made, and many other metrics." *CHIP*, 492 F. Supp. 3d at 46. *Accord 335-7 LLC*, 524 F. Supp. 3d at 332-33. Similarly, determining whether government action interferes with a plaintiff's reasonable investment-backed expectations "depends on when they invested in the property and what they expected at that time." *CHIP*, 492 F. Supp. 3d at 46. *Accord 335-7 LLC*, 524 F. Supp. 3d at 333. *See also BRI*, 2021 WL 4198332, at *22 (dismissing facial *Penn Central* claim "because 'whether a taking has occurred depends ... on a variety of financial and other information unique to each landlord'" (quoting *Dinkins*, 5 F.3d at 597)).

Significantly, the RSL Cases specifically rejected property owners' regulatory takings challenges to the Challenged Provisions. *See 335-7 LLC*, 524 F. Supp. at 322 (upholding constitutionality of amendments that "eliminated … vacancy allowances [and] reduced recovery

for … individual apartment improvements"); *CHIP*, 492 F. Supp. 3d at 51 (same); *BRI*, 2021 WL 4198332, at *27, n.34 (same).

### 2.    The Complaint Fails To State An As-Applied *Penn Central* Claim

"[A]n as-applied challenge 'requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right.'" *335-7 LLC*, 524 F. Supp. 3d at 327-28 (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006)). *Accord Goe v. Zucker*, 43 F.4th 19, 30 (2d Cir. 2022). To determine whether a regulatory taking has occurred, courts "engage in essentially *ad hoc*, factual inquiries to determine in each case whether the challenged property restriction rises to the level of a taking." *Heidel v. Hochul*, No. 20 Civ. 10462 (PKC), 2021 WL 4942823, at *8 (S.D.N.Y. Oct. 21, 2021) (quoting *1256 Hertel Ave.*, 761 F.3d at 264), *aff'd sub nom. Heidel v. Governor of New York State*, No. 21-2860-CV, 2023 WL 1115926 (2d Cir. Jan. 31, 2023). "Paramount to the inquiry are the familiar factors set forth" in *Penn Central*: "the character of the governmental action, its economic impact, and its interference with reasonable investment-backed expectations." *Meriden Tr. & Safe Deposit Co. v. F.D.I.C.*, 62 F.3d 449, 454 (2d Cir. 1995).

Applying those factors, Plaintiffs have not stated an as-applied regulatory taking claim.

*First*, by any measure, the character of the government action here weighs strongly against any possible regulatory taking claim. The question is whether the RSL "'amounts to a physical invasion or instead merely affects property interests through some public program adjusting benefits and burdens of economic life to promote the common good.'" *Jado Assocs., LLC v. Suffolk Cnty. Sewer Dist. No. 4-Smithtown Galleria*, No. Civ. 3011 (DRH) (ARL), 2014 WL 2944086, at *6 (E.D.N.Y. June 30, 2014) (quoting *Lingle*, 544 U.S. at 538-39). Courts have

23

repeatedly affirmed that rent stabilization is a permissible governmental program adjusting

economic relations between owners and tenants. *See, e.g., Harmon v. Markus*, 412 F. App'x 420,

423 (2d Cir. 2011) (summary order); *Greystone Hotel Co. v. City of N.Y.*, 13 F. Supp. 2d 524,

528 (S.D.N.Y. 1998) (recognizing RSL's legitimate purposes as "coping with an acute shortage

of available housing, and preventing unjust and oppressive rents and profiteering"). In sum, the

"Legislature is entitled to impose new burdens and grant new rights in order to address societal

issues and, in enacting the HSTPA, it sought to alleviate a pressing affordable housing shortage

that it rationally deemed warranted action." *Regina Metro. Co., LLC v. N.Y.S. Div. of Hous. &*

*Cmty. Renewal*, 35 N.Y.3d 332, 385 (2020).

Moreover, "the Supreme Court has instructed that in analyzing the 'character' of the

governmental action, courts should focus on the extent to which a regulation was 'enacted solely

for the benefit of private parties' as opposed to a legislative desire to serve 'important public

interests.'" *335-7 LLC*, 2023 WL 2291511, at \*4 (quoting *Keystone Bituminous Coal Ass'n*, 480

U.S. 470, 485-86 (1987)). Thus, as the Second Circuit held in the RSL Cases:

> [T]he RSL is part of a comprehensive regulatory regime that governs
> nearly one million housing units in the City. Like the broad public
> interests at issue in *Penn Central* itself, here, the legislature has
> determined that the RSL is necessary to prevent "serious threats to the
> public health, safety, and general welfare." N.Y.C. Admin. Code § 26-
> 501.

*Pinehurst,* 59 F.4th at 568 (citing *CHIP*, 59 F. 4th at 555-56). Moreover:

> No one can seriously contend that these are not important public
> interests and courts are not in the business of second-guessing
> legislative determinations such as this one. The fact that the RSL affects
> landlords unevenly is of no moment. As the *Penn Central* Court noted,
> "[l]egislation designed to promote the general welfare commonly
> burdens some more than others."

*Id.* (quoting *Penn Central*, 438 U.S. at 133). *See also BRI*, 2024 WL 1061142, at \*5 (holding that

24

"[t]he legislature enacted the challenged regulations for the purpose of 'permit[ting] low- and moderate-income people to reside in New York City'") (citing *CHIP*, 59 F.4th at 557).

Here, as in the RSL Cases, Plaintiffs challenge provisions of the RSL that are designed to broadly adjust the economic relations between landlords and tenants for the public good. This factor weighs heavily against a finding that a taking has occurred.

*Second*, Plaintiffs have failed to allege the kind or degree of economic impacts necessary to support a regulatory taking claim. It is well-settled that a "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 645 (1993). *See also BRI*, 2021 WL 4298332, at \*23 (citing cases holding that alleged losses of 75% to 95% were insufficient). Here, Plaintiffs do not allege the Challenged Provisions will materially affect the value of their buildings, as they must to satisfy this element of their claim. *See* Point IV.B, *supra*. Instead, they allege that "[t]he rent for some rent-stabilized apartments in New York City is set so low that owners cannot profitably put those apartments on the market." Compl. ¶ 69; *id.* ¶¶ 143-44, 149, 184 & 216. But that contention is irrelevant.

It is well established that the Takings Clause does not ensure that landlords have the "right 'to use property in a profitable manner.'" *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 167 (quoting *Park Ave. Tower Assocs. v. City of N.Y.*, 746 F.2d 135, 140 (2d Cir. 1984)). On that basis, the Second Circuit rejected the regulatory takings claims in the RSL Cases, stating: "We have repeatedly rejected the notion that loss of profit ... alone could constitute a taking." *Pinehurst*, 59 F.4th at 566, *quoted in BRI*, 2024 WL 1061142, at \*4. Similarly, a recent Southern District decision reaffirmed that "the prohibition of the most profitable or beneficial use of a property will not necessitate a finding that a taking has occurred." *Hammer v. Town of Bedford*,

25

No. 25 Civ. 2618 (CS), 2026 WL 100793, at *7 (S.D.N.Y. Jan. 13, 2026) (rejecting takings challenge premised on denial of permit for residential use of detached garage on property).

In sum, a property owner has "no constitutional right to what it could have received in an unregulated market," *Greystone,* 13 F. Supp. 2d at 528. Plaintiffs' asserted inability to rent four units profitably "does not in and of itself amount to a taking." *Hamner*, 2026 WL 100793, at *7.

***Third***, the *Penn Central* standard requires courts to consider "the extent to which the regulation interferes with Plaintiffs' reasonable investment-backed expectations." *Greater Chautauqua*, 2025 WL 2771567, at *7 (citing *Palazzolo*, 533 U.S. at 617). The purpose of this requirement "'is to limit recovery to owners who could demonstrate that they bought their property in reliance on a state of affairs that did not include the challenged regulatory regime.'" *Id.* (quoting *Allen v. Cuomo*, 100 F.3d 253, 262 (2d Cir. 1996)). "'The critical time for considering investment-backed expectations is the time a property is acquired[.]'" *Id.*

Plaintiffs do not allege facts establishing that the Challenged Provisions interfere with their reasonable investment-backed expectations. Indeed, that phrase appears only once in the Complaint. *See* Compl. ¶ 274. There, Plaintiffs assert in conclusory fashion that by purportedly "confiscat[ing]" their leasehold interests in vacant apartments, the RSL "interferes with the owners' investment-backed expectation, as the purpose of owning or purchasing an apartment building is to rent the leasehold." *Id.* As shown above, that claim is fatally flawed because the relevant unit of property to be considered is the building, not each individual "leasehold." *See* Point IV.B, *supra.*

Moreover, the Complaint establishes that two of the three property-owner plaintiffs acquired title to their buildings after the Challenged Provisions were enacted. *See* Compl. ¶ 182 (alleging PKM took title in July 2025); *id.* ¶ 212 (alleging 135 W 78th took title in 2022). These

26

owners could not have reasonably acquired their buildings in reliance on provisions of the RSL that were repealed or amended in 2019. Moreover, RPN acquired its building in 1991, before the RSL was amended to provide for 20% vacancy bonuses. *Id.* ¶ 138. RPN could not reasonably have invested in reliance on a provision that did not exist at the time.

More broadly, "[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." *Concrete Pipe & Prods.*, 508 U.S. at 645. Specifically, the RSL Cases establish that investors who purchased apartment buildings in the decades since New York adopted rent stabilization have no reasonable investment-backed expectation in the provisions of the RSL remaining unchanged. The Second Circuit, observing that "the RSL has been amended in ways that, at times, favored landlords, and, at other times, tenants," held that "a reasonable investor … would have anticipated their rental properties would be subject to regulations, and that those regulations in the RSL could change yet again." *Pinehurst*, 59 F.4th at 567.

The Second Circuit's holdings in *Pinehurst* defeat any contention that the Challenged Provisions interfere with Plaintiffs' reasonable investment-backed expectations. Plaintiffs purchased their buildings decades after the RSL was adopted, and after it had been repeatedly amended in ways that sometimes "favored landlords, and, at other times, tenants." *Pinehurst*, 59 F.4th at 567. Thus, even more than the plaintiffs in the RSL Cases, they could not reasonably have anticipated that the RSL would provide for permanent vacancy bonuses and the prior level of IAI rent increases.

Finally, as discussed more fully below, *see* Points V-VI, the Complaint also suggests that the RSL is flawed because its benefits are not conditioned on tenants' income and takes into account each apartment's rental history. Compl. ¶¶ 59, 271. But Plaintiffs cannot base a

regulatory takings claim on their disagreement with legislative policy-making choices. *See Lingle*, 544 U.S. at 544 (cautioning courts not "to substitute their predictive judgments for those of elected legislatures and expert agencies"). In *Lingle*, the Supreme Court held that asking "whether a regulation of private property is *effective* in achieving some legitimate public purpose … is not a valid method of discerning whether private property has been 'taken' for purposes of the Fifth Amendment." *Id.* at 542 (italics in original). Thus, Plaintiffs' disagreement with the RSL's goals and methods cannot salvage their regulatory takings claim.

In sum, applying the *Penn Central* factors compels the conclusion that Plaintiffs have failed to state an as-applied regulatory taking claim. As such, Claim I should be dismissed.

## V.    PLAINTIFFS' DUE PROCESS CLAIM FAILS AS A MATTER OF LAW

For two reasons, the Complaint fails to state either a facial or an as-applied claim under the Due Process Clause of the Fourteenth Amendment. First, Supreme Court precedent bars using substantive due process claims as an end run around the Takings Clause. Second, courts, including the Second Circuit, have repeatedly held that the RSL passes rational basis review.

### A.    Plaintiffs' Due Process Claim Is Duplicative Of Their Takings Claims

As a threshold matter, Plaintiffs cannot maintain a substantive due process claim based on the same allegations as their takings claims. *See CHIP*, 59 F.4th at 556-57; *Pinehurst*, 59 F.4th at 569 (2d Cir. 2023); *Harmon*, 412 F. App'x at 423. The Supreme Court has held that "the Due Process Clause cannot 'do the work of the Takings Clause' because 'where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *CHIP*, 59 F.4th at 556-57 (quoting *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 720-21 (2010)

(additional citations omitted)). *Accord 31 Alanson Lane, LLC v. Town of Southampton*, No. 23 Civ. 8938 (NJC) (LGD), 2026 WL 414716, at *5 (E.D.N.Y. Feb. 15, 2026) (dismissing due process claim as duplicative of takings claim); *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 173 (same); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 226 (D. Conn. 2020) (same).

Thus, Plaintiffs' due process claim fails as a matter of law.

### B.      Plaintiffs' Due Process Claim Fails On Its Merits

Even if a substantive due process claim were available to Plaintiffs, they have failed to plead such a claim. *See CHIP*, 59 F.4th at 557. Challenges to the RSL are subject to rational-basis review, which merely requires that the challenged statute be "rationally related to legitimate government interests." *BRI*, 2024 WL 1061142, at *5 (citing *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)). *Accord Pinehurst*, 59 F.4th at 569. As the Second Circuit explained in *CHIP*, "[R]ational basis review is not a mechanism for judges to second guess legislative judgment … Rather, it is a deferential standard that allows a law to survive if *any* of its justifications is valid." *CHIP*, 59 F.4th at 557 (citing *Preseault v. I.C.C.*, 494 U.S. 1, 18 (1990)).

Courts have repeatedly held that the RSL, including the Challenged Provisions, is rationally related to legitimate state interests. Those interests include "permit[ting] low- and moderate-income people to reside in New York City when they otherwise could not afford to do so," and "ameliorat[ing] the dislocations and risk of widespread lack of suitable dwellings that accompany a housing crisis." *Fed. Home Loan Mortg. Corp.,* 87 N.Y.2d at 332. *See also Pennell v. City of San Jose*, 485 U.S. 1, 11 (1988) (holding that "preventing excessive and unreasonable rent increases" is a legitimate interest); *CCA Assocs. v. United States*, 667 F.3d 1239 (Fed. Cir. 2011) (noting that "rent stabilization laws have been almost invariably held to represent legitimate government acts") (collecting cases); *Greystone*, 13 F. Supp. 2d at 528.

Applying these principles, the courts dismissed the due process claims asserted in the RSL Cases. *See, e.g., Pinehurst*, 59 F.4th at 569. *See also CHIP*, 59 F.4th at 556 (recognizing public interest in "preventing tenant dislocation and preserving neighborhood stability"). The same result is warranted here, as Plaintiffs' allegations to the contrary are specious. They assert, for example, that "rent caps on vacant units are not helping any tenant." Compl. ¶ 2. But that ignores the fact that under the Challenged Provisions, the rent charged to a new tenant is substantially less than it would otherwise be, serving the Legislature's goals of preventing excessive rent increases and keeping housing affordable. *See* Compl. ¶¶ 219-20 (alleging that an apartment whose regulated rent is $1,200 would rent for up to $5,100 on the open market). Moreover, Plaintiffs cite no case or legal rule supporting their contention that the RSL is arbitrary merely because the legal rent for each unit reflects its unique history. Compl. ¶ 3.

Finally, courts have repeatedly held that rent control and stabilization laws, including the RSL, are rational means of achieving their permissible legislative purposes. In *Rent Stabilization Ass'n of N.Y.C., Inc. v. Higgins*, 83 N.Y.2d 156, 174 (1993), the New York Court of Appeals found "a close causal nexus between the challenged [rent] regulations and the stated purpose of preventing the eviction and resulting vulnerability to homelessness of the identified beneficiaries[.]" *See also Greystone*, 13 F. Supp. 2d at 528 (affirming New York's "legitimate state interest" in "coping with an acute shortage of available housing, and preventing unjust and oppressive rents and profiteering").

In sum, Plaintiffs' criticisms of the RSL "amount to policy and efficacy disagreements with the legislature," which are insufficient to allege a due process violation. *BRI*, 2024 WL 1061142, at *5. Accordingly, Plaintiffs' due process claim fails and should be dismissed.

## VI.    THE COMPLAINT DOES NOT STATE AN EQUAL PROTECTION CLAIM

The existence of a rational basis for the Challenged Provisions is also fatal to Plaintiffs' Equal Protection claim.

"'In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for classification.'" *Francis S. v. Stone*, 995 F. Supp. 368, 384-85 (S.D.N.Y. 1998) (quoting *F.C.C. v. Beach Comm'ns, Inc.,* 508 U.S. 307 (1993)), *aff'd*, 221 F.3d 100 (2d Cir. 2000). The Supreme Court has cautioned that "rational-basis review 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993)). Thus, "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller,* 509 U.S. at 319. *See also Levine v. McCabe*, 357 F. Supp. 2d 608, 620 (E.D.N.Y. 2005) (describing rational basis review as "highly deferential"), *aff'd*, 327 F. App'x 315 (2d Cir. 2009).

It is well settled that rational basis review "is the appropriate standard for testing the validity under the Equal Protection Clause of laws regulating housing rental rates." *Black v. State of N.Y.*, 13 F. Supp. 2d 538, 542 (S.D.N.Y. 1998) (citing cases). *See also W. 95 Hous. Corp.*, 31 F. App'x at 21 (dismissing equal protection challenge to RSL under rational basis test); *BRI*, 2021 WL 4198332, at *30 (same).

Applying that standard, courts have found "no doubt that the HSTPA," including the Challenged Provisions, passes the rational basis test. *Id.* at *31. In passing the HSTPA, the Legislature found that existing law "threaten[ed] to … exacerbate" the "severe disruption of the

31

rental housing market." 2019 N.Y. Laws ch. 36, pt. D. The Legislature also found that existing law – with its various avenues to deregulate apartments, impose vacancy bonuses, and shift capital costs to tenants – "permitted speculative and profiteering practices and … brought about the loss of vital and irreplaceable affordable housing for working persons and families." *Id.* In addition, the Legislature sought to preserve New York's rent-regulated housing stock, which "provides and maintains affordable housing for millions of low and middle income tenants." Sponsor's Mem., Bill Jacket, L. 2019, ch. 36.

The Challenged Provisions rationally address those concerns, slowing the pace of rent increases by repealing vacancy bonuses and reducing IAI rent increases. *See supra* at 5.

Plaintiffs allege the RSL "arbitrarily discriminates" because it applies primarily to buildings constructed before 1974. Compl. ¶ 290. The Second Circuit has rejected that argument, affirming the District Court's determination that the RSL was:

> enacted to combat the ill effects of a perceived housing shortage – clearly a valid governmental concern. The legislature could reasonably have concluded that the statutes' exemption from regulation of buildings built or rehabilitated after January 1, 1974, furthers that purpose because the promise of freedom from regulation encourages construction of new housing stock. Accordingly, the RSL does not violate the equal protection clause on its face.

*W. 95 Hous. Corp.*, 2001 WL 664628, at *10, *aff'd,* 31 F. App'x 19.

There is no basis in law or logic to reach a different conclusion now. As such, Plaintiffs' equal protection claim should be dismissed.[12]

---

[12] Plaintiffs concede that Supreme Court precedent bars their claim under the Privileges and Immunities Clause of the Fourteenth Amendment. Compl. ¶ 301 (citing *The Slaughterhouse Cases*, 83 U.S. 36 (1873)).

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the action against State Defendants in its entirety, with prejudice, and grant such other and further relief as it deems proper.

Dated: New York, New York
          March 18, 2026

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*

By: *Michael A. Berg*

Michael A. Berg
Shi-Shi Wang
Assistant Attorneys General
28 Liberty Street
New York, New York 10005
(212) 416-8651/8625
michael.berg@ag.ny.gov
shi-shi.wang@ag.ny.gov

33

**CERTIFICATION PURSUANT TO CIVIL RULE 7.1(c) OF THE JOINT LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE SOUTHERN AND EASTERN DISTRICTS OF NEW YORK**

The undersigned certifies that, using the Microsoft Word feature called "Word Count" and excluding the cover page, caption and signature block, the Memorandum of Law in Support of State Defendants' Motion to Dismiss the Complaint, dated March 18, 2026, contains 10,469 words, fewer than the 10,500-word limit set by the Court's order dated February 27, 2026 (ECF No. 71).

Dated:  New York, New York
        March 18, 2026

LETITIA JAMES
Attorney General
State of New York

By:  *Michael A. Berg*

Michael A. Berg
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8651
michael.berg@ag.ny.gov

34