UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMALL PROPERTY OWNERS OF NEW YORK, INC. *et al.*,<br><br>            Plaintiffs,<br><br>      v.<br><br>THE CITY OF NEW YORK *et al.*,<br><br>            Defendants. | Case No. 1:25-cv-09425-JPC |

## <u>MEMORANDUM OF LAW IN SUPPORT OF INTERVENORS' MOTION TO DISMISS</u>

Date:  March 18, 2026

Judith Goldiner
 *Attorney in Charge, Civil Law Reform Unit*
Edward Josephson
 *Director, Civil Law Reform Unit*
Pavita Krishnaswamy
 *Supervising Attorney*
Ellen Davidson
 *Staff Attorney*
THE LEGAL AID SOCIETY
49 Thomas Street, 5th Floor
New York, NY 10013
Phone: (212) 298-5221
jgoldiner@legal-aid.org
ejosephson@legal-aid.org
pkrishnaswamy@legal-aid.org
ebdavidson@legal-aid.org

Faith E. Gay
Corey Stoughton
Babak Ghafarzade
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
fgay@selendygay.com
cstoughton@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Intervenors NY Tenants &*
*Neighbors and Community Voices Heard*

**TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .....................................................................................................................2

      A.     New York's Long History of Rent Regulation .........................................................2

      B.     The Reach of the RSL .............................................................................................6

      C.     Plaintiffs' Claims ...................................................................................................8

STANDARD OF REVIEW .....................................................................................................8

ARGUMENT ...........................................................................................................................9

I.     Plaintiffs' As-Applied Claims Are Unripe ..........................................................................9

II.    Plaintiffs' Takings Claims Are Foreclosed By Prior Circuit Case Law, Which
Was Correctly Decided ....................................................................................................11

      A.     Plaintiffs' Facial and As-Applied Takings Claims Fail Because the
Relevant Parcel Is Each Building and Underlying Lot, Not Each
Individual Apartment ...........................................................................................12

      B.     Plaintiffs' Regulatory Takings Claim Fails Because the *Penn Central*
Factors Are Even Less Favorable to Plaintiffs Than in Prior Failed
Challenges ...........................................................................................................16

      C.     Plaintiffs' *Per Se* Takings Claim Fails Because They Fail to Plausibly
Plead That the RSL Completely Deprives Them of All Economically
Beneficial Use of Their Property .........................................................................19

      D.     Plaintiffs Fail to Plead a Facial Takings Challenge ...............................................21

III.   Plaintiffs' Due Process Claim Is Foreclosed By Prior Circuit Case Law, Which
Was Correctly Decided ....................................................................................................22

IV.   Plaintiffs Fail to State an Equal Protection Claim .............................................................26

V.    Plaintiffs Concede Their Claim under the Privileges or Immunities Clause Is
Barred under Well-Established Supreme Court Precedent ..................................................26

CONCLUSION ......................................................................................................................27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*74 Pinehurst LLC v. New York*,
   59 F.4th 557 (2d Cir. 2023) ....................................................................... *passim*

*335-7 LLC v. City of New York*,
   2023 WL 2291511 (2d Cir. Mar. 1, 2023)......................................................... *passim*

*520 E. 81st St. Assocs. v. Lenox Hill Hosp.*,
   38 N.Y.2d 525 (1976) ..........................................................................................4

*835 Hinesburg Rd., LLC v. City of S. Burlington*,
   2023 WL 7383146 (2d Cir. Nov. 8, 2023).............................................................9

*2910 Georgia Ave. LLC v. District of Columbia*,
   234 F. Supp. 3d 281 (D.D.C. 2017) ...............................................................13, 15

*8200 Realty Corp. v. Lindsay*,
   27 N.Y.2d 124 (1970) .......................................................................1, 3, 4, 25

*Allen v. Cuomo*,
   100 F.3d 253 (2d Cir. 1996).............................................................................17

*Andrus v. Allard*,
   444 U.S. 51 (1979)...........................................................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................................8

*Auracle Homes, LLC v. Lamont*,
   478 F. Supp. 3d 199 (D. Conn. 2020)...............................................................13

*Black v. State of N.Y.*,
   13 F. Supp. 2d 538 (S.D.N.Y. 1998)................................................................26

*Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*,
   2021 WL 4198332 (S.D.N.Y. Sept. 14, 2021)...................................................26

*Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*,
   2024 WL 1061142 (2d Cir. Mar. 12, 2024)...................................................... *passim*

*Bowles v. Willingham*,
   321 U.S. 503 (1944)...........................................................................................3

*Buffalo Teachers Fed'n v. Tobe*,
    464 F.3d 362 (2d Cir. 2006) ), *cert. denied*,
    2026 WL 189803 (U.S. Jan. 26, 2026) ................................................................16

*Burrows v. 75-25 153rd St., LLC*,
    215 A.D.3d 105 (1st Dept. 2023)........................................................................7

*Cedar Point Nursery v. Hassid*,
    594 U.S. 139 (2021)........................................................................................12

*Cmty. Hous. Improvement Program v. City of New York*,
    59 F.4th 540 (2d Cir. 2023) ................................................................ *passim*

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*,
    508 U.S. 602 (1993)....................................................................................17, 24

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*,
    915 F. Supp. 2d 574 (S.D.N.Y. 2013), *aff'd*, 945 F.3d 83 (2d Cir. 2019) ...............................11

*Curto v. Erie Cnty. Water Auth.*,
    2025 WL 48150 (2d Cir. Jan. 8, 2025) ................................................................16

*Edgar A. Levy Leasing Co. v. Siegel*,
    258 U.S. 242 (1922)..........................................................................................3

*Elmsford Apartment Assocs., LLC v. Cuomo*,
    469 F. Supp. 3d 148 (S.D.N.Y. 2020).................................................................12

*Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal*,
    83 F.3d 45 (2d Cir. 1996) ..................................................................................1

*Goe v. Zucker*,
    43 F.4th 19 (2d Cir. 2022) ...............................................................................24

*Gorieb v. Fox*,
    274 U.S. 603 (1927)........................................................................................20

*Greystone Hotel Co. v. City of New York*,
    13 F. Supp. 2d 524 (S.D.N.Y. 1998), *aff'd*,
    1999 U.S. App. LEXIS 14960 (2d Cir. June 23, 1999) ......................................1, 12

*Harmon v. Markus*,
    412 F. App'x 420 (2d Cir. 2011) ........................................................................1

*Hewlett Assocs. v. City of New York*,
    57 N.Y.2d 356 (1982) .......................................................................................4

*Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*,
  452 U.S. 264 (1981)................................................................................................9, 22

*Hudson Shore Assocs. Ltd. P'ship v. New York*,
  139 F.4th 99 (2d Cir. 2025) ....................................................................................8, 21

*Hudson Valley Prop. Owners Ass'n Inc. v. City of Kingston*,
  2025 WL 1698151 (N.Y. June 18, 2025).....................................................................5

*I.L.F.Y. Co. v. Temp. State Hous. Rent Comm'n*,
  10 N.Y.2d 263 (1961), *appeal dismissed*, 369 U.S. 795 (1962)..................................3

*Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*,
  258 F. Supp. 3d 405 (S.D.N.Y. 2017), *aff'd*,
  742 F. App'x 521 (2d Cir. 2018) ...............................................................................11

*Keystone Bituminous Coal Assn. v. DeBenedictis*,
  480 U.S. 470 (1987)................................................................................................13, 20

*Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*,
  959 F.2d 395 (2d Cir. 1992).......................................................................................26

*Kurtz v. Verizon N.Y., Inc.*,
  758 F.3d 506 (2d Cir. 2014)..........................................................................................9

*Kwan v. Yap*,
  220 A.D.3d 715 (2d Dept. 2023) ...............................................................................16

*La Guardia v. Cavanaugh*,
  53 N.Y.2d 67 (1981) ..................................................................................................4, 5

*Lingle v. Chevron U.S.A. Inc.*,
  544 U.S. 528 (2005)..................................................................................................18, 19

*Lucas v. South Carolina Coastal Comm'n*,
  505 U.S. 1003 (1992)............................................................................................ *passim*

*Marcus Brown Holding Co. v. Feldman*,
  256 U.S. 170 (1921)..................................................................................................3, 25

*Mills Pond Grp., LLC v. Town of Smithtown*,
  2025 WL 1720472 (2d Cir. June 20, 2025) ...............................................................11

*Murphy v. New Milford Zoning Comm'n*,
  402 F.3d 342 (2d Cir. 2005).........................................................................................9

*Murr v. Wisconsin*,
  582 U.S. 383 (2017)..........................................................................................13, 14, 15

iv

*Pakdel v. City and County of San Francisco*,
    594 U.S. 474 (2021)...................................................................................................9

*Park Ave. Tower Assocs. v. City of New York*,
    746 F.2d 135 (2d Cir. 1984).....................................................................................21

*Penn Cent. Transp. Co. v. New York City*,
    438 U.S. 104 (1978)......................................................................................... *passim*

*Pennell v. City of San Jose*,
    485 U.S. 1 (1988)................................................................................................23, 26

*People ex rel. Durham Realty Corp. v. La Fetra*,
    230 N.Y. 429, *writ of error dismissed*, 257 U.S. 665 (1921) .....................................3

*Principle Homecare, LLC v. McDonald*,
    158 F.4th 326 (2d Cir. 2025) ...................................................................................19

*Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*,
    2013 WL 135216 (S.D.N.Y. Jan. 10, 2013) .............................................................10

*Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Cmty. Renewal*,
    154 N.E.3d 972 (N.Y. 2020)....................................................................................15

*Rent Stabilization Ass'n of City of N.Y., Inc. v. Dinkins*,
    5 F.3d 591 (2d Cir. 1993) .....................................................................................1, 26

*Rent Stabilization Ass'n of N.Y.C., Inc. v. Higgins*,
    83 N.Y.2d 156 (1993), *cert denied*, 512 U.S. 1213 (1994) .......................................1

*Roberts v. Tishman Speyer Props.*,
    13 N.Y.3d 270 (2009) ................................................................................................5

*Sidberry v. Koch*,
    539 F. Supp. 413 (S.D.N.Y. 1982)...........................................................................26

*Silberman v. Biderman*,
    735 F. Supp. 1138 (E.D.N.Y. 1990) ..........................................................................1

*Singh v. Deloitte LLP*,
    123 F.4th 88 (2d Cir. 2024) ........................................................................................9

*Slaughterhouse Cases*,
    83 U.S. 36 (1873).....................................................................................................27

*Somerset-Wilshire Apartments, Inc. v. Lindsay*,
    304 F. Supp. 273 (S.D.N.Y. 1969)..........................................................................1, 4

v

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*,
    560 U.S. 702 (2010)..................................................................................................23

*Sunrise Detox V, LLC v. City of White Plains*,
    769 F.3d 118 (2d Cir. 2014)...............................................................................9, 11

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
    535 U.S. 302 (2002)..............................................................................13, 19, 20, 22

*Teeval Co. v. Stern*,
    301 N.Y. 346, *cert. denied*, 340 U.S. 876 (1950) ......................................................3

*Tonwal Realties, Inc. v. Beame*,
    406 F. Supp. 363 (S.D.N.Y. 1976)...............................................................................1

*United States v. Decastro*,
    682 F.3d 160 (2d Cir. 2012)......................................................................................21

*W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*,
    31 F. App'x 19 (2d Cir. 2002) ..........................................................................1, 21, 25

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)..................................................................................................21

*Washington v. Glucksberg*,
    521 U.S. 702 (1997)..................................................................................................23

*Westhab, Inc. v. City of New Rochelle*,
    2004 WL 1171400 (S.D.N.Y. May 3, 2004) .........................................................11

*Woods v. Cloyd W. Miller Co.*,
    333 U.S. 138 (1948)....................................................................................................3

**Constitutional Provisions and Statutes**

U.S. Const. Amends. V, XIV, § 1..................................................................................11

N.Y. Real Prop. Law § 339-y .......................................................................................16

N.Y. Real Prop. Tax Law § 102....................................................................................14

N.Y. Real Prop. Tax Law § 421-a .................................................................................4

N.Y. Real Prop. Tax Law § 421-g .................................................................................4

N.Y. Unconsol. Laws § 26-501 ....................................................................................18

N.Y. Unconsol. Laws § 26-510 ......................................................................................7

N.Y. Unconsol. Laws § 26-511 ..................................................................................................7

N.Y. Unconsol. Laws § 8605........................................................................................................3

N.Y. Unconsol. Laws § 8624....................................................................................................7, 8

N.Y. Unconsol. Laws § 8626........................................................................................................7

N.Y. Unconsol. Laws § 8630........................................................................................................7

**Regulations**

8 Fed. Reg. 13914 ........................................................................................................................3

8 Fed. Reg. 13915 ........................................................................................................................3

8 Fed. Reg. 13916 ........................................................................................................................3

9 N.Y.C.R.R. § 2522.8 .................................................................................................................8

**Other Authorities**

*2025 Annual Report*, Office of Rent Administration,
    New York State Division of Community Homes and Renewal ..................................................6

*Changes to NYS Housing Laws Enacted in the FY24 Budget*,
    New York State Division of Community Homes and Renewal ..................................................6

*Definitions of Property Assessment Terms*, N.Y.C. Dep't of Finance..........................................14

Hr'g On S. 6458 (June 14, 2019), N.Y. State Senate, Regular Sess.............................................24

*Office of Rent Administration (ORA)*,
    New York State Division of Community Homes and Renewal ..................................................4

*Rent-Regulated Housing: Hearing Before the New York State Assembly Standing
    Committee on Housing* (May 2, 2019).....................................................................................25

*Rent Regulation and Tenant Protection Legislation: Hearing Before the New York
    State Senate Standing Committee on Housing, Construction., and Community
    Development* (May 22, 2019) ................................................................................................25

**PRELIMINARY STATEMENT**

This case concerns New York's rent-stabilization laws and regulations (together, the "RSL"), which have regulated rents and evictions for nearly sixty years and apply to approximately one million apartments in New York City alone. Plaintiffs are the latest in a series of landlords and trade associations who, dissatisfied with the political and legislative process, have unsuccessfully sought to enlist the courts in reshaping this statutory and regulatory system by means of meritless constitutional challenges.[1]

Seeking to distinguish themselves from the prior unsuccessful litigation, Plaintiffs disclaim any "challenge to the proposition that the government can limit increases in rent to protect existing tenants from being forced out of their apartments," Compl. ¶ 4, ECF No. 1, and focus more narrowly on the RSL's provisions governing the rent that can be charged for vacant apartments. But, like the broader scheme of which they are a part, those provisions have already been upheld as a critical part of the government's efforts to protect existing tenants from being forced out of their apartments. They address market incentives for landlords to evade the RSL's constraints, and maximize their profit, by creating lucrative vacancies. The Legislature rationally concluded that the

---

[1] *E.g.*, *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York* ("*BRI*"), 2024 WL 1061142 (2d Cir. Mar. 12, 2024); *335-7 LLC v. City of New York*, 2023 WL 2291511 (2d Cir. Mar. 1, 2023); *74 Pinehurst LLC v. New York*, 59 F.4th 557 (2d Cir. 2023); *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540 (2d Cir. 2023); *Harmon v. Markus*, 412 F. App'x 420 (2d Cir. 2011); *W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 31 F. App'x 19 (2d Cir. 2002); *Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal*, 83 F.3d 45 (2d Cir. 1996); *Greystone Hotel Co. v. City of New York*, 13 F. Supp. 2d 524 (S.D.N.Y. 1998), *aff'd*, 1999 U.S. App. LEXIS 14960 (2d Cir. June 23, 1999) (summary order); *Rent Stabilization Ass'n of City of N.Y., Inc. v. Dinkins*, 5 F.3d 591 (2d Cir. 1993); *Rent Stabilization Ass'n of N.Y.C., Inc. v. Higgins*, 83 N.Y.2d 156 (1993), *cert denied*, 512 U.S. 1213 (1994); *Silberman v. Biderman*, 735 F. Supp. 1138 (E.D.N.Y. 1990); *Tonwal Realties, Inc. v. Beame*, 406 F. Supp. 363 (S.D.N.Y. 1976); *8200 Realty Corp. v. Lindsay*, 27 N.Y.2d 124, 129 (1970); *Somerset-Wilshire Apartments, Inc. v. Lindsay*, 304 F. Supp. 273 (S.D.N.Y. 1969).

effectiveness of the RSL in protecting both prospective and existing tenants depends upon managing that incentive.

Plaintiffs cannot plead their way around this reality, which provides the rational basis requiring the dismissal of Plaintiffs' due-process and equal-protection claims, just as it has done in every prior constitutional challenge to the RSL. Moreover, all of Plaintiffs' as-applied claims are unripe because they have not secured finality through the available process for seeking variances from the RSL's rent limitations, as the Second Circuit has held is required in challenges like this one. Plaintiffs' takings claims also fail for multiple reasons already adjudicated by the Second Circuit, including that (a) they fail to plead a takings claim based on the value of their property as a whole, as opposed to selected apartment leaseholds within the property; (b) they fail to plead that that the RSL has a significant economic effect on their properties as a whole, interferes with any reasonable investment-backed expectations they had when buying into the heavily regulated New York City market, or has the character of a taking; (c) they fail to allege that the RSL destroys all economically beneficial use of their properties as a whole; and (d) given their failure to plead any as-applied takings claims, Plaintiffs cannot mount a facial takings challenge against the RSL. Thus, by straightforward application of controlling Second Circuit authority, the Court should dismiss Plaintiffs' complaint for failure to state a claim.

## BACKGROUND

### A.     New York's Long History of Rent Regulation

For more than a century, New Yorkers have benefited from federal, state, and local rent regulations, which courts have repeatedly upheld against constitutional challenges. In 1920, in response to severe housing shortages and rent shocks caused by World War I, the State legislature enacted the first rent-regulation laws for New York City. *Cmty. Hous.*, 59 F.4th at 544. The laws—which capped rent increases and prevented evictions without cause for ten years—were "the

2

subject of ongoing litigation." *Id.* The U.S. Supreme Court and New York Court of Appeals re-

peatedly upheld their constitutionality.[2]

During and after World War II, tenancies in the New York City area were regulated by

federal law: first, rent regulations promulgated pursuant to the Emergency Price Control Act of

1942, which froze rents for all covered apartments—including those first rented after the effective

date of the law[3]—at 1943 levels and restricted the permissible grounds for eviction; later, the

Housing and Rent Act of 1947, which exempted new buildings from regulation but left in place

controls for existing buildings. *See Cmty. Hous.*, 59 F.4th at 545. The Supreme Court upheld both

statutes (and their attendant regulations) against takings and due-process challenges.[4] In 1950,

authority to regulate residential rents in New York passed to a state agency whose rent regulations

likewise were repeatedly upheld.[5]

Pursuant to a 1962 statute delegating rent-regulation authority to large cities, N.Y. Uncon-

sol. Laws § 8605, the New York City Council enacted the Rent Stabilization Law of 1969 (the

"1969 RSL"), which initially applied to buildings with six or more units constructed between 1947

and 1969. *See 8200 Realty Corp.*, 27 N.Y.2d at 129. Multiple courts upheld the 1969 RSL's

---

[2] *See Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242, 249–50 (1922); *Marcus Brown Holding Co. v. Feldman*, 256 U.S. 170, 198-99 (1921); *People ex rel. Durham Realty Corp. v. La Fetra*, 230 N.Y. 429, 444–46, *writ of error dismissed*, 257 U.S. 665 (1921).

[3] *See* Rent Regulation for Housing in the New York City Defense-Rental Area, 8 Fed. Reg. 13914, 13915-16 (Sec. 4(e)) (setting maximum rents for "newly constructed housing accommodations without priority rating first rented on or after November 1, 1943"); *id.* at 13919 ("This regulation shall become effective November 1, 1943.").

[4] *See Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 146 (1948); *Bowles v. Willingham*, 321 U.S. 503, 517 (1944).

[5] *See I.L.F.Y. Co. v. Temp. State Hous. Rent Comm'n*, 10 N.Y.2d 263, 268-71 (1961), *appeal dismissed*, 369 U.S. 795 (1962); *Teeval Co. v. Stern*, 301 N.Y. 346, 362, *cert. denied*, 340 U.S. 876 (1950).

constitutionality against takings, due-process, and equal-protection challenges. *See id.*at 137; *Somerset-Wilshire Apts.*, 304 F. Supp. at 275.

As part of a 1971 effort to spur housing construction, the state legislature enacted statutes providing for the deregulation of apartments upon vacancy, prohibiting New York City from subsequently regulating such apartments, and permitting owners of newly constructed buildings to opt into rent stabilization in exchange for a tax abatement. *See generally Hewlett Assocs. v. City of New York*, 57 N.Y.2d 356, 360 (1982); *La Guardia v. Cavanaugh*, 53 N.Y.2d 67, 73-74 (1981); *see also* Compl. ¶ 38. The hoped-for new construction did not materialize, however, and the state enacted the Emergency Tenant Protection Act of 1974 ("ETPA"), which "nullified and terminated" the 1971 "experiment" in vacancy-based deregulation.[6] *520 E. 81st St. Assocs. v. Lenox Hill Hosp.*, 38 N.Y.2d 525, 528 (1976); *see also* Compl. ¶ 21. The ETPA "is not a rent and eviction regulating law" but rather "an enabling act." *La Guardia*, 53 N.Y.2d at 74. Initially, it enabled New York City and municipalities in the three surrounding counties to opt into rent stabilization for buildings with six or more units constructed before 1974 through the municipal declaration of a housing emergency, meaning a rental vacancy rate below five percent. *Id.* at 75. Such a housing emergency has existed in New York City for decades, and the City Council issued its most recent emergency declaration—which Plaintiffs do not challenge—in March 2024. *See* Compl. ¶¶ 25–26.[7]

As Plaintiffs recognize, the RSL "has been repeatedly amended since 1974." Compl. ¶ 28. The State has continually and carefully adjusted the law to respond to changing conditions in local

---

[6] Owners of newer or smaller buildings in New York City that are not otherwise subject to rent stabilization may still opt in for tax benefits. *See* N.Y. Real Prop. Tax Law §§ 421-a, 421-g.

[7] Dozens of municipalities outside of New York City have also opted into rent stabilization. *See Office of Rent Administration (ORA)*, New York State Division of Community Homes and Renewal, https://hcr.ny.gov/office-rent-administration-ora (last visited Mar. 16, 2026).

4

housing markets. *See generally La Guardia*, 53 N.Y.2d at 71–76. For the first two decades, the law did not permit the deregulation of any rent-stabilized apartments. "In 1993, the law was again amended to permit the deregulation of apartments that either housed high-income tenants or became vacant." *74 Pinehurst*, 59 F.4th at 567; *see also Roberts v. Tishman Speyer Props.*, 13 N.Y.3d 270, 280–81 (2009). These deregulatory mechanisms were more tailored than the blanket "vacancy decontrol" in place from 1971 to 1974. *See* Compl. ¶ 38; *La Guardia*, 53 N.Y.2d at 73–74. Until 2019, the law permitted a "vacancy increase" to the legal rent for a new lease to a new tenant following the prior tenant's vacatur, over and above the annual rent increase otherwise allowed for all leases. *See* Compl. ¶ 38. As Plaintiffs acknowledge, the permissible amount of any additional vacancy increase went "up and down over time." *Id.*

The Housing Stability and Tenant Protection Act of 2019 ("HSTPA") "was passed in 'response to an ongoing housing shortage crisis, as evidenced by an extremely low vacancy rate' that caused tenants to 'struggle to secure safe, affordable housing' and municipalities to 'struggle to protect their regulated housing stock.'" *74 Pinehurst*, 59 F.4th at 567 (quoting Sponsor's Mem., 2019 N.Y. Laws ch. 36). The HSTPA "expanded the rent stabilization scheme originally effective only in the City of New York and Nassau, Westchester, and Rockland counties to all municipalities in the state." *Hudson Valley Prop. Owners Ass'n Inc. v. City of Kingston*, 2025 WL 1698151, at *1 (N.Y. June 18, 2025). In addition, and among other things, the HSTPA revised the amounts of permissible rent increases based on apartment or building improvements, repealed the statutory mechanisms for deregulating high-rent apartments upon vacancy or based on tenants' income, and repealed statutory bases for increasing rents upon vacancy. *See* Housing Stability and Tenant Protection Act, 2019 Sess. Law News of N.Y. Legis. Memo Ch. 36 (McKinney). The Second Circuit rejected several challenges to the HSTPA specifically (and rent stabilization generally) brought by

5

landlords and landlord groups under the Takings Clause, Due Process Clause, and Equal Protection

Clause. *See BRI*, 2024 WL 1061142; *335-7 LLC*, 2023 WL 2291511; *74 Pinehurst*, 59 F.4th 557;

*Cmty. Hous.*, 59 F.4th 540.[8] Since then, the legislature has addressed concerns voiced by landlords

by raising the allowable rent increases that landlords may impose for individual apartment im-

provements, including heightened allowable increases for vacant apartments. *See* 2024 Sess. Law

News of N.Y. Ch. 56 (S. 8306-C), pt. FF (McKinney).[9]

### B.     The Reach of the RSL

The RSL protects tenants in approximately one million apartments in New York City, or

about half the city's rental housing stock. *See Cmty. Hous.*, 59 F.4th at 555.[10] In 2016, approxi-

mately one-fifth of rent-stabilized apartments housed families living below the poverty line, and

nearly two-thirds housed families classified by the Department of Housing and Urban Develop-

ment as low-income, very low-income, or extremely low-income. *Cmty. Hous.*, 59 F.4th at 546.

"In recent years, approximately 175,000 households in rent[-]stabilized housing were unable to

afford even a $25 increase in their monthly rent." *Id.* at 547 n.21. Eliminating rent stabilization

would, as the Second Circuit has explained, "result in a dynamic whereby large swaths of essential

---

[8] Plaintiffs' counsel participated as *amicus* in support of the prior challengers' unsuccessful appeals. *E.g.*, Brief of *Amicus Curiae* Institute for Justice in Support of Appellants, *Cmty. Hous.*, 59 F.4th 540 (No. 20-3366), Dkt. No. 86 (Jan. 22, 2021).

[9] *See also Changes to NYS Housing Laws Enacted in the FY24 Budget*, New York State Division of Community Homes and Renewal, https://hcr.ny.gov/changes-nys-housing-laws-enacted-fy24-budget (last visited Mar. 16, 2026).

[10] As of December 1, 2025, there were 1,023,964 registered rent-stabilized apartment units across the five boroughs of New York City; 39,259 such units across its three surrounding counties; and 826 such units elsewhere in New York State, all of them located in Kingston, Ulster County. *See 2025 Annual Report* 5, Office of Rent Administration, New York State Division of Community Homes and Renewal, https://hcr.ny.gov/system/files/documents/2025/12/ora_2025-annual-report_final.pdf.

workers who help maintain our vibrant City, including police officers, teachers, healthcare workers, and emergency service personnel, would be unable to afford to live here." *Id.* at 547.

The law establishes a Rent Guidelines Board ("RGB") for New York City, which comprises members representing the interests of landlords, tenants, and the general public and is charged with determining the amount of permissible rent increases for rent-stabilized leases.[11] *See Cmty. Hous.*, 59 F.4th at 545 (citing N.Y. Unconsol. Laws § 26-510(a)). The RGB must, when making its decision, consider multiple factors: the economic condition of the housing market, certain costs for which landlords were responsible, the returns generated to landlords, the housing supply, and the cost of living. *Id.* (citing N.Y. Unconsol. Laws § 26-510(b)).

When offering renewal leases to existing tenants or new leases to incoming tenants seeking to fill vacant apartments subject to rent-stabilization, landlords may charge more than the previously established legal regulated rent, but that increase is regulated. *See* Compl. ¶ 41. Allowable increases include the RGB's annual guideline percentage,[12] statutory formulas for passing through to tenants the costs of improving building-wide capital or individual apartments, and hardship exemptions from rent limits if the landlord is unable to maintain a consistent average rental income or if the gross rental income does not exceed the landlord's annual operating expenses by at least five percent of the gross rent. *See* N.Y. Unconsol. Laws §§ 26-511(c), 8626(d), 8630(a)-(b); *see also* Compl. ¶¶ 49 (improvement recoveries), 77 (hardship exemptions). The RSL does not require

---

[11] The RSL also provides for the creation of an RGB for each county outside of New York City in which a municipality has opted into the RSL's protections by determining the existence of a housing emergency. *See* N.Y. Unconsol. Laws § 8624(a).

[12] Since the 2019 enactment of the HSTPA, when a landlord offers an apartment for a "preferential rent" that is lower than the RGB-set maximum, such preferential rent becomes the baseline for future RGB-permitted rent increases until that tenant vacates the unit. *See generally Burrows v. 75-25 153rd St., LLC*, 215 A.D.3d 105, 111 & n.5 (1st Dept. 2023).

7

any landlord to offer vacant apartments for rent and does not prevent an owner from selling a regulated property.

### C.    Plaintiffs' Claims

Plaintiffs are three corporate landlords and a trade association of individuals who own interests in residential rental portfolios with fewer than 200 apartments. Compl. ¶¶ 9–12, 117. They claim that the RSL is unconstitutional on its face and as applied to them because it generally requires landlords to abide by RGB-set rent limits when offering to lease vacant rent-stabilized apartments to new tenants (just as such landlords must do when offering renewal leases to existing tenants, a practice Plaintiffs do not challenge). *See* Compl. ¶ 41 (quoting N.Y. Unconsol. Laws § 8624(e) ("Rent guidelines boards shall no longer promulgate adjustments for vacancy leases.") and citing 9 N.Y.C.R.R. § 2522.8 (maximum rent for vacancy lease is calculated by adding current year's renewal percentage increase to previous rent)). Plaintiffs contend that these provisions violate the Takings, Due Process, Equal Protection, and Privileges or Immunities Clauses of the U.S. Constitution. Plaintiffs further contend that certain of the RSL's criteria for subjecting apartments to rent stabilization—their date of construction and rental history—are arbitrary and irrational and thus violate the Due Process, Equal Protection, and Privileges or Immunities Clauses. *See* Compl. ¶¶ 282–87, 290–98, 304–06.

### STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hudson Shore Assocs. Ltd. P'ship v. New York*, 139 F.4th 99, 106–07 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A court must construe a complaint "liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor," but "threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (citation modified).

**ARGUMENT**

## I.      Plaintiffs' As-Applied Claims Are Unripe

Plaintiffs' as-applied constitutional claims are premature because the RSL contains hardship remedies to abate the harms the landlord Plaintiffs complain of and, as the Second Circuit held in the prior RSL challenges, Plaintiffs "must show that they availed themselves of the remedies which were available" to state a claim. *BRI*, 2024 WL 1061142 at *4; *see also 335-7 LLC*, 2023 WL 2291511, at *3 ("[B]ecause the Landlords have not applied for [a hardship] exemption, there has been no final decision and we cannot determine how the RSL might be applied to them."); *74 Pinehurst*, 59 F.4th at 565 (similar). This conclusion is grounded in longstanding precedent. "The Supreme Court has made clear that 'a plaintiff's failure to properly pursue administrative procedures may render a claim unripe if avenues still remain for the government to clarify or change its decision,' including where the plaintiff has 'an opportunity to seek a variance.'" *74 Pinehurst*, 59 F.4th at 565 (quoting *Pakdel v. City and County of San Francisco*, 594 U.S. 474, 480 (2021)); *accord Hodel v. Va. Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 297 (1981). This "final-decision requirement" applies "to land use disputes implicating more than just Fifth Amendment takings claims." *835 Hinesburg Rd., LLC v. City of S. Burlington*, 2023 WL 7383146, at *3 (2d Cir. Nov. 8, 2023) (summary order) (quoting *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 350 (2d Cir. 2005)). The finality requirement applies to due process claims arising from the same circumstances as a taking claim, *Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506, 516 (2d Cir. 2014), and even to "a plaintiff alleging discrimination in the context of a land-use dispute … unless he can show that he suffered some injury independent of the challenged land-use decision," *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 123 (2d Cir. 2014).

9

Because all of Plaintiffs' claims arise from the same circumstances as their takings claim, and they do not allege any injuries independent of the application of the challenged regulations to their properties, the finality requirement applies, and Plaintiffs have failed to satisfy it. Plaintiffs acknowledge that "New York allows owners of stabilized apartment buildings to file hardship petitions where they may request that they be allowed to increase a building's stabilized rents," Compl. ¶ 77. Fatally, they do not plead that this remedy has actually failed them. One of the landlord plaintiffs has a hardship application pending before the state, *id.* ¶¶ 237–38, but since "there has been no final decision" on the application, the Court "cannot determine how the RSL might be applied to" that Plaintiff's building. *335-7 LLC*, 2023 WL 2291511, at *3. The other two landlord Plaintiffs have not even sought hardship exemptions, *see id.* ¶¶ 164, 198, so their takings claims are unripe for "fail[ure] to pursue available administrative relief," *74 Pinehurst*, 59 F.4th at 565, or "avail[] themselves of any opportunities to seek a variance for their properties," *BRI*, 2024 WL 1061142, at *4.

Nor do Plaintiffs' allegations establish that applying for (or awaiting a decision on) hardship exemptions would be futile. Plaintiffs suggest that hardship applications are unlikely to be granted, and that any relief is likely to be insufficient to meet their and other landlords' economic goals, *see* Compl. ¶¶ 77–97, but "[s]peculation of this sort is insufficient" to establish ripeness. *74 Pinehurst*, 59 F.4th at 565; *accord BRI*, 2024 WL 1061142, at *4; *335-7 LLC*, 2023 WL 2291511, at *3 (holding that abstract contentions "are not sufficient to avoid the finality requirement"). Regardless, resolution of those applications is necessary to accurately assess Plaintiffs' legal claims and their entitlement to the relief they demand. Merely alleging that the plaintiff "could not have established the criteria required under New York law" for a variance is insufficient. *Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester*, 2013 WL 135216, at *9 (S.D.N.Y. Jan. 10, 2013)

10

(citing *Westhab, Inc. v. City of New Rochelle,* 2004 WL 1171400 (S.D.N.Y. May 3, 2004)); *accord Mills Pond Grp., LLC v. Town of Smithtown*, 2025 WL 1720472, at *2 (2d Cir. June 20, 2025) (summary order) (cleaned up); *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 604 (S.D.N.Y. 2013), *aff'd*, 945 F.3d 83 (2d Cir. 2019); *Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 258 F. Supp. 3d 405, 417 (S.D.N.Y. 2017), *aff'd*, 742 F. App'x 521 (2d Cir. 2018).

The relief Plaintiffs demand further establishes their fatal ripeness problem. Plaintiffs' claims turn on their claim that the RSL takes an unjustifiable quantum of value from them, *see* Compl. ¶¶ 3, 263, 265, 274, and that the differences between how regulated and unregulated property are treated are so significant that they are irrational, *id*. ¶¶ 281, 296. That quantum and those differences cannot be assessed until and unless there is a final decision on what rent Plaintiffs actually are permitted to charge for their vacant units. *See Sunrise Detox*, 769 F.3d at 122 (in the land use context, holding that a plaintiff's claim is not ripe when further administrative processes could affect the scope of relief to which the plaintiff is entitled). Plaintiffs thus cannot establish futility.

## II.    Plaintiffs' Takings Claims Are Foreclosed By Prior Circuit Case Law, Which Was Correctly Decided

Plaintiffs' facial and as-applied Takings Clause challenges are iterations of claims that have already been correctly rejected on the merits by the Second Circuit. *See 74 Pinehurst*, 59 F.4th 557; *Cmty. Hous.*, 59 F.4th 540; *BRI*, 2024 WL 1061142; *335-7 LLC*, 2023 WL 2291511. Bound by the reasoning of those decisions, the Court should also dismiss this case. The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amends. V, XIV, § 1. Plaintiffs contend that the RSL's restrictions on permissible rent increases for new leases of vacant apartments, both on their face and as applied

to Plaintiffs' properties, effect either regulatory takings under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), or *per se* takings under *Lucas v. South Carolina Coastal Commission*, 505 U.S. 1003 (1992).[13] Applying binding legal principles established by the Second Circuit in the RSL context, both theories fail on both facial and as-applied bases.

A.      **Plaintiffs' Facial and As-Applied Takings Claims Fail Because the Relevant Parcel Is Each Building and Underlying Lot, Not Each Individual Apartment**

Plaintiffs' Takings Clause claims fail because both their regulatory takings claim under *Penn Central*, 438 U.S. 104, and their *per se* takings claim under *Lucas*, 505 U.S. 1003, turn on a theory that the Court should assess the RSL's impact on each apartment leasehold within the property, when the Second Circuit has consistently analyzed similar cases by assessing the RSL's impact on the entire property owned by the landlord. *See Greystone Hotel*, 1999 U.S. App. LEXIS 14960, at *4 (rejecting landlord's claim that the RSL effected a taking of the residential portion of its building because the landlord conceded it was "making an ordinary profit on the other, commercial portions of the building"); *see also 74 Pinehurst*, 59 F.4th at 566 (considering the RSL's economic impact at the building level); *Cmty. Hous.*, 59 F.4th at 554 (holding that while "the RSL may well have an appreciable economic impact on the profitability of some buildings," this is not sufficient to satisfy the economic impact factor); *335-7 LLC*, 2023 WL 2291511, at *3 (dismissing where plaintiffs failed to allege any "specific economic impact of the law on their *buildings*." (emphasis added)). District courts in this Circuit and elsewhere have reached the same conclusions. *See Elmsford Apartment Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 165 (S.D.N.Y. 2020) ("Plaintiffs provide no basis for treating the subset of their rented apartments occupied by tenants

---

[13] Plaintiffs do not contend that the RSL effects a physical taking by appropriating, seizing, or compelling the occupation of their property. *See generally Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147–48 (2021). That claim, too, has been rejected by the Second Circuit. *E.g.*, *74 Pinehurst*, 59 F.4th at 563–64.

facing financial hardship as a separate parcel ….”); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 222 (D. Conn. 2020) (similar); *2910 Georgia Ave.*, 234 F. Supp. 3d at 295 (holding that “the relevant parcel [was an] entire 22–unit condominium building, not only the individual units within that building that were affected by the challenged regulations”). Plaintiffs do not plead that the RSL operates as taking of their entire buildings, only of certain of the units within those buildings, *see* Compl. ¶¶ 142–43 (two of thirty units), ¶¶ 183–84 (one of six units), ¶¶ 215–16 (one of four units), and thus fail to state a claim.

The Second Circuit’s consistent approach is compelled by well-established Supreme Court precedent. Both of Plaintiffs’ takings theories require the Court “to compare the value that has been taken from the property with the value that remains in the property,” and in doing so “one of the critical questions is determining how to define the unit of property whose value is to furnish the denominator of the fraction.” *Murr v. Wisconsin*, 582 U.S. 383, 395 (2017) (citation modified) (quoting *Keystone Bituminous Coal Assn. v. DeBenedictis*, 480 U.S. 470, 497 (1987)). Plaintiffs assert that “[e]ach apartment unit in an apartment building corresponds to a leasehold interest that is a separate property interest distinct from the building as a whole.” Compl. ¶ 98. This is a legal conclusion entitled to no deference, and it is wrong. Takings Clause “jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated.” *Murr*, 582 U.S. at 396 (citation omitted). The Supreme Court has thus measured restrictions on the development of air, subjacent, and lateral rights against the total value of the entire site, *Penn Cent.*, 438 U.S. at 130–31, and has measured temporary moratoria on development against the value of the entire duration of the estate, *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg’l Plan. Agency*, 535 U.S. 302, 331 (2002), and has even treated adjacent lots “as a unified parcel” for purposes of the takings analysis, *Murr*, 582 U.S. at 403.

To identify the relevant parcel, courts must "give substantial weight to the treatment of the land, in particular how it is bounded or divided, under state and local law"; must also consider the "physical relationship of any distinguishable tracts, the parcel's topography, and the surrounding human and ecological environment"; and "should assess the value of the property under the challenged regulation, with special attention to the effect of burdened land on the value of other holdings." *Murr*, 582 U.S. at 397–98. "The endeavor should determine whether reasonable expectations about property ownership would lead a landowner to anticipate that his holdings would be treated as one parcel, or, instead, as separate tracts." *Id.* at 397. Application of the factors here confirms that the relevant parcel is each building and its underlying real estate, not the individual apartments currently affected by the regulations Plaintiffs chose to challenge in this case.

*First*, and most importantly under *Murr*, New York law generally treats Plaintiffs' lots and the buildings on them as single parcels. Like other owners subject to the RSL, the landlord Plaintiffs each own and operate entire buildings, each of which they purchased (along with the underlying real estate) as a unified whole, not as individual apartments. *See* Compl. ¶¶ 137–38, 181–82, 212–13. Each plot and the entire building are assessed together for tax purposes.[14] As Plaintiffs implicitly concede, they are "subject to property taxation" at the lot and building level, not the unit level. *Id.* ¶ 255. Zoning laws also apply at the building level. *See, e.g.*, Zoning Resolution § 22-00 (regulating "the uses of buildings or other structures" (italics removed)).

---

[14] *See* N.Y. Real Prop. Tax Law § 102(12) (defining "real property" as including land itself and buildings erected upon, under, or above it); *id.* § 1802(1) (classifying residential real property for four or more families as Class 2); *Definitions of Property Assessment Terms*, N.Y.C. Dep't of Finance (subclassifying Tax Class of rental buildings with 4 to 6 units as Sub-Class 2a; rental buildings with 7 to 10 units as Sub-Class 2b; cooperative or condominium buildings with 2 to 10 units as Sub-Class 2c; and rental, cooperative, or condominium buildings with 11 units or more as Class 2), https://on.nyc.gov/2AU0t3o (last visited Mar. 18, 2026).

14

*Second*, the physical characteristics and surrounding environment of Plaintiffs' properties favor treating each building (and the land beneath it) as a single parcel. Here, as in *2910 Georgia Ave. LLC v. District of Columbia*, each property at issue is "a single building on a single parcel of land," and all units within each building are "contiguous," supporting the treatment of each building and plot as a unified parcel. 234 F. Supp. 3d 281, 295–96 (D.D.C. 2017); *see also Murr*, 582 U.S. at 403 (finding contiguity of separate plots supported treating them as unified parcel). Plaintiffs state that their "[a]partment units have distinct boundaries, marked by their outer walls," Compl. ¶ 100, but, as the *2910 Georgia Ave.* court correctly held, the mere existence of "walls and doors" does not warrant treating individual apartments as separate parcels. 234 F. Supp. 3d at 296. Moreover, the Supreme Court has instructed that a property's location in a regulated area will "support its treatment as a unified parcel" because the government can be expected to go further in regulating properties in highly regulated areas. *Murr*, 582 U.S. at 398, 403. Here, Plaintiffs' buildings are located in New York City, where rent stabilization "has been in place for half a century, and most, if not all, current landlords purchased their properties knowing they would be subject to the RSL," *Cmty. Hous.*, 59 F.4th at 555; *see also Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Cmty. Renewal*, 154 N.E.3d 972, 991 (N.Y. 2020) ("[N]o party doing business in a regulated environment like the New York City rental market can expect the RSL to remain static.").

*Third*, because Plaintiffs own multifamily residential apartment buildings, not condominiums, the prospective value of Plaintiffs' buildings lies in each entire building and underlying lot, not any individual apartment.[15] The law thus recognizes building-level valuation by offering

---

[15] *Compare Kwan v. Yap*, 220 A.D.3d 715, 716–17 (2d Dept. 2023) ("The characteristics of condominium ownership are individual ownership of a unit, an undivided interest in designated common elements, and an agreement among unit owners regulating the administration and

hardship exemptions from rent limits based on revenues generated by the building as a whole. *See Compl.* ¶¶ 77–84.

Because Plaintiffs have not pled a taking of the entire relevant parcel—their buildings—Plaintiffs cannot establish any facial or as-applied takings claims, and the entirely of Count 1 should be dismissed on this basis alone.

### B.    Plaintiffs' Regulatory Takings Claim Fails Because the *Penn Central* Factors Are Even Less Favorable to Plaintiffs Than in Prior Failed Challenges.

Plaintiffs' regulatory takings claim fails for an additional reason: In rejecting earlier regulatory takings challenges to broader aspects of the RSL, the Second Circuit assessed the relevant factors under *Penn Central* in a manner that forecloses Plaintiffs' ability to state a claim here. *See Cmty. Hous.*, 59 F.4th at 556; *74 Pinehurst*, 59 F.4th at 565, 566; *BRI*, 2024 WL 1061142, at *3–4; *335-7 LLC*, 2023 WL 2291511, at *3–4. Under *Penn Central*, the Court "must weigh '(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.'" *Curto v. Erie Cnty. Water Auth.*, 2025 WL 48150, at *2 (2d Cir. Jan. 8, 2025) (summary order) (quoting *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 375 (2d Cir. 2006)), *cert. denied*, 2026 WL 189803 (U.S. Jan. 26, 2026). Those factors weigh even less in favor of finding a regulatory taking here than in the prior challenges, which were rejected.

*First*, Plaintiffs have not pled a sufficient economic impact because two of their buildings are profitable, *see* Compl. ¶¶ 166, 200, the third has a pending hardship application that could mitigate any losses, *see id.* ¶¶ 237–38, and in any event the "loss of profit ... alone [cannot] constitute a taking." *BRI*, 2024 WL 1061142, at *4 (quoting *74 Pinehurst*, 59 F.4th at 566) (ellipses

---

maintenance of property." (citation omitted)); N.Y. Real Prop. Law § 339-y(1)(a) (designating each condominium unit as a distinct "parcel" for taxation purposes).

in original). Even if they had pled economic impact, "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Id.* (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993)); *see also 74 Pinehurst*, 59 F.4th at 566 (allegation that the 2019 amendments to the RSL caused a "20 to 40 percent" decrease in the plaintiffs' buildings' values did not compel finding "that the economic impact factor tilt[ed] in their favor"). Plaintiffs' allegation that they are forced to accept "below market" and "preferential" rents for vacant apartments, Compl. ¶ 63, is no different than the "generalized allegations about being required to accept below-market and preferential rents" that the Second Circuit already held "are not sufficient" to plead the requisite economic impact, *74 Pinehurst*, 59 F.4th at 566.

*Second*, Plaintiffs have not pled that the RSL interferes with any reasonable investment-backed expectations because, under binding precedent, "any investor could reasonably expect limits on the use of rental properties, such as those as provided by the RSL." *74 Pinehurst*, 59 F.4th at 567. "Given the RSL's ever-changing requirements, no property owner could reasonably expect the continuation of any particular combination of RSL provisions." *335-7 LLC*, 2023 WL 2291511, at *1 (quoting *Cmty. Hous.*, 59 F.4th at 555). Plaintiffs acquired their properties in 1991, 2022, and 2025, *see* Compl. ¶¶ 138, 182, 213, and they cannot "demonstrate that they bought their propert[ies] in reliance on a state of affairs that did not include the challenged regulatory regime," *74 Pinehurst*, 59 F.4th at 567 (citing *Allen v. Cuomo*, 100 F.3d 253, 262 (2d Cir. 1996)). Nor has the RSL materially changed since March 2024, when the Second Circuit last found that parties in Plaintiffs' position had no reasonable investment-backed expectation in property value unaffected by the RSL. *BRI*, 2024 WL 1061142, at *3-4. Thus, as with the prior as-applied challenges, this

17

factor defeats Plaintiffs' as-applied regulatory takings claim. *See id.*; *BRI*, 2024 WL 1061142, at *4; *335-7 LLC*, 2023 WL 2291511, at *4.

*Third*, Plaintiffs cannot overcome the Second Circuit's repeated determination that the RSL does not have the character of a taking. *See 74 Pinehurst*, 59 F.4th at 568; *Cmty. Hous.*, 59 F.4th at 555; *BRI*, 2024 WL 1061142, at *4; *335-7 LLC*, 2023 WL 2291511, at *4. In each of these cases, the Second Circuit reiterated its holding that the RSL does not have the character of a taking because it "is part of a comprehensive regulatory regime that governs nearly one million units," and "the legislature has determined that the RSL is necessary to prevent 'serious threats to the public health, safety and general welfare.'" *Cmty. Hous.*, 59 F.4th at 555 (quoting N.Y. Unconsol. Laws § 26-501). "No one can seriously contend that these are not important public interests and courts are not in the business of second-guessing legislative determinations such as this one." *Id.* Given that "[t]he character of [a challenged] regulation does not change whether the challenge is as applied or facial," *74 Pinehurst*, 59 F.4th at 568, Plaintiffs cannot show that the character of the RSL supports their regulatory-taking claim.

Plaintiffs challenge the "nexus" between the RSL's restrictions on "the rent that can be charged for vacant apartments" and "the City's interest in ensuring its residents have access to housing," Compl. ¶ 273, but the Supreme Court in *Lingle* squarely held that "whether a regulation of private property is *effective* in achieving some legitimate public purpose.… is not a valid method of discerning whether private property has been 'taken' for Fifth Amendment purposes," 544 U.S. at 542. Because the aim of the *Penn Central* inquiry (like the *Lucas* inquiry detailed below) is "to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain," the inquiry "focuses directly upon the severity of the burden that government imposes upon private property

18

rights," as well as the extent to which such "burden is *distributed* among property owners." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539, 542 (2005). In *Lingle*, "the gravamen of [the respondent's] claim [was] simply that Hawaii's rent cap [for gas stations would] not actually serve the State's legitimate interest in protecting consumers against high gasoline prices." *Id.* at 544. "Whatever the merits of that claim," the Supreme Court held, "it does not sound under the Takings Clause." *Id.* Where, as here, a plaintiff seeks "an injunction against the enforcement of a regulation that it alleges to be fundamentally arbitrary and irrational," the claim should be analyzed under the Due Process Clause. *Id.* And as detailed in Part III below, the challenged regulations easily satisfy due process because they are rationally related to legitimate government interests. But that is not the proper focus of a regulatory takings claim and, therefore, Plaintiffs fail to plead that claim.

> **C.    Plaintiffs' *Per Se* Takings Claim Fails Because They Fail to Plausibly Plead That the RSL Completely Deprives Them of All Economically Beneficial Use of Their Property**

Plaintiffs' *per se* takings claims also fail for a second, independent reason: they fail to plead plausible facts sufficient to establish that the RSL inflicts the complete denial of *all* economically viable use of their property required to establish a *per se* taking. "[A] law regulating the use of private property amounts to a *per se* taking if the law 'completely deprive[s] an owner of *all* economically beneficial use of her property.'" *Principle Homecare, LLC v. McDonald*, 158 F.4th 326, 331 (2d Cir. 2025) (quoting *Lingle*, 544 U.S. at 538). This categorical rule is "limited to 'the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted,'" and the Supreme Court has made clear that it "would not apply if the diminution in value were 95% instead of 100%." *Tahoe-Sierra*, 535 U.S. at 330 (quoting *Lucas*, 505 U.S. at 1017). "Anything less than a 'complete elimination of value,' or a 'total loss,' the Court [has] acknowledged, would require the kind of analysis applied in *Penn Central*." *Id.* (quoting *Lucas*, 505 U.S. at 1019–20 n.8).

A fatal flaw in Plaintiffs' argument is their insistence that calculation of lost value must focus on either the value of "the leasehold interest for Plaintiffs' vacant apartment units that cannot be profitably rented because of rent stabilization" or even the "portion of the value of the leasehold corresponding to the difference between the legal regulated rent and the market rent." Compl. ¶¶ 264–65. But the Supreme Court has "consistently rejected such an approach to the 'denominator' question" because "defining the property interest taken in terms of the very regulation being challenged is circular." *Tahoe-Sierra*, 535 U.S. at 331. Accordingly, the Second Circuit summarily rejected a prior challenger's argument "that the RSL effects a per se categorical taking" as "completely devoid of merit." *BRI*, 2024 WL 1061142, at *3 n.2. That was so even though the *BRI* plaintiffs challenged restrictions on rent increases for renewal leases as well as vacancy leases, thus pleading an even broader set of economic impacts on their property than Plaintiffs do. Similarly, the Supreme Court has rejected application of the *per se* takings rule to a law prohibiting commercial transactions in eagle feathers, *Tahoe-Sierra, 535* U.S. at 327 (citing *Andrus v. Allard,* 444 U.S. 51, 66 (1979)); restrictions on the use of limited portions of a parcel, such as setback ordinances, *id.* (citing *Gorieb v. Fox,* 274 U.S. 603 (1927)); or a requirement that coal pillars be left in place to prevent mine subsidence, *id.* (citing *Keystone Bituminous Coal Assn. v. DeBenedictis,* 480 U.S. 470, 498 (1987)). "In each of these cases, [the Supreme Court] affirmed that 'where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking.'" *Id.* (quoting *Andrus,* 444 U.S. at 65–66).

Plaintiffs do not even attempt to allege that the RSL has rendered their property entirely worthless. Instead, they allege only that the RSL limits the amount of monthly rental *income* they believe they could otherwise earn from the small fraction of their buildings' apartment units that are currently vacant: two out of thirty units in the Cabrini Boulevard building, *see* Compl. ¶¶ 142–

43, one out of six units in the Cornelia Street building, *see id.* ¶¶ 183–84; and one out of four units in the West 78th Street building, *see id.* ¶¶ 215–16. But the Second Circuit has "repeatedly 'rejected the notion that loss of profit—much less loss of a reasonable return—alone could constitute a taking.'" *74 Pinehurst*, 59 F.4th at 566 (quoting *Park Ave. Tower Assocs. v. City of New York*, 746 F.2d 135, 139 (2d Cir. 1984)). Even if loss of profit could form the basis for a *per se* takings claim, Plaintiffs concede that two of the buildings are profitable, *see id.* ¶¶ 166, 200, and the third has a pending hardship application that could mitigate any losses, *see id.* ¶¶ 237–38. Such allegations foreclose a *per se* takings claim under *Lucas*.

### D.  Plaintiffs Fail to Plead a Facial Takings Challenge

Because Plaintiffs' as-applied takings claims are not ripe and fail on the merits under both their *Penn Central* and *Lucas* theories, their facial takings claims "also necessarily fail, as they cannot 'establish that no set of circumstances exists under which the statute would be valid.'" *74 Pinehurst*, 59 F.4th at 568 n.6 (quoting *United States v. Decastro*, 682 F.3d 160, 163 (2d Cir. 2012)); *see also Hudson Shore*, 139 F.4th at 107 (To prevail on a facial challenge, "[c]laimants must 'establish[ ] that no set of circumstances exists under which the [a]ct would be valid, *i.e.*, that the law is unconstitutional in all of its applications.'") (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).

As the Second Circuit has repeatedly explained, *the Penn Central* factors cannot be established on a facial basis. *See Cmty. Hous.*, 59 F.4th at 553–55; *74 Pinehurst*, 59 F.4th at 564–566; *BRI*, 2024 WL 1061142, at *3; *335-7 LLC*, 2023 WL 2291511, at *2; *W. 95 Hous.*, 31 F. App'x at 21. This is because "[t]he economic impact of the RSL on the various landlords cannot be ascertained on a collective basis, as it necessarily varies among properties." *74 Pinehurst*, 59 F.4th at 564. "This variation necessarily means that [a facial challenger bringing a *Penn Central* claim]

cannot establish that the RSL can never be applied constitutionally." *Id.* at 565.[16] The RSL's interference with reasonable investment-backed expectations likewise cannot be made "on a group-wide basis in a case where, as here, the challenged statute has been in place for half a century, and most, if not all, current landlords purchased their properties knowing they would be subject to the RSL." *Cmty. Hous.*, 59 F.4th at 555.

A facial *per se* takings claim under *Lucas* is similarly untenable in light of the Second Circuit's observation that the RSL's economic impact "necessarily varies among properties." *74 Pinehurst*, 59 F.4th at 564. Indeed, the Supreme Court has repeatedly rejected facial *per se* takings challenges for similar reasons. In *Hodel*, for example. the Court held that the Surface Mining Act "[did] not, on its face, prevent beneficial use of coal-bearing lands" or "categorically prohibit surface coal mining," but "merely regulate[d] the conditions under which such operations may be conducted." 452 U.S. at 268, 296 (citation modified); *see also Tahoe-Sierra*, 535 U.S. at 332 (rejecting a facial *per se* takings challenge to a moratorium on development).

### III.    Plaintiffs' Due Process Claim Is Foreclosed By Prior Circuit Case Law, Which Was Correctly Decided.

Plaintiffs' due process claim fails at multiple levels.

*First*, Plaintiffs have not stated a liberty or property interest protectable by due process. As to a liberty interest, the Second Circuit has held that "the liberties protected by due process 'do not include economic liberties.'" *Cmty. Hous.*, 59 F.4th at 557 (quoting *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 721(2010)). As to a property interest, the Second

---

[16] In any event, Plaintiffs' sole theory of economic impact—that the RSL "set[s] the rent that can be charged for some vacant apartments at levels so low that those apartments cannot be rented for a reasonable profit," Compl. ¶ 263—cannot apply to all regulated properties because Plaintiffs concede that "[a]bout a quarter of rent stabilized apartments in New York City rent for preferential rents," meaning "the stabilized rent … is *higher* than market," *id.* ¶ 62 (emphasis added).

22

Circuit has held that "the Due Process Clause cannot 'do the work of the Takings Clause' because 'where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id.* at 556 (quoting *Stop the Beach*, 560 U.S. at 720–21).

*Second*, even if Plaintiffs had a protectable interest, the Second Circuit has already held that the RSL (including its vacancy restrictions) easily passes the appliable rational-basis review. "The standard for determining whether a state price-control regulation is constitutional under the Due Process Clause is well established: Price control is unconstitutional if arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt." *Pennell v. City of San Jose*, 485 U.S. 1, 11 (1988) (cleaned up); *see also 74 Pinehurst*, 59 F.4th at 569 ("[E]ven if a due process challenge [to the RSL] were available, it would be subject to rational basis review."). "To survive under that standard, a law need only be 'rationally related to legitimate government interests.'" *74 Pinehurst*, 59 F.4th at 569 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)). This "is a deferential standard that allows a law to survive if *any* of its justifications is valid." *Cmty. Hous.*, 59 F.4th at 557.

The Second Circuit has repeatedly held that the RSL serves the legitimate purpose of "neighborhood continuity and stability" by "permit[ting] low- and moderate-income people," including police officers, teachers, healthcare workers, and emergency service personnel, "to reside in New York City when they otherwise could not afford to do so." *Id.* at 547, 557; *accord 74 Pinehurst*, 59 F.4th at 569; *BRI*, 2024 WL 1061142, at *5. Plaintiffs contend that the RSL's restrictions on vacancy rents are not rationally related to "the City's interest in ensuring its residents

have access to housing." Compl. ¶ 273.[17] They are wrong. In amending the RSL in 2019 to eliminate vacancy increases, the legislature considered ample evidence that the prior regime incentivized rent shocks and tenant displacement.[18] *See, e.g.*, Hr'g on S. 6458 (June 14, 2019), N.Y. State Senate, Regular Sess., 5481 (statement of Sen. Brian P. Kavanagh) ("We're repealing many loopholes that have undermined the basic purposes of rent stabilization. We're repealing the regulation provisions and the so-called vacancy bonus – an increase in the legal rate of 20 percent or more at each vacancy -- which some of us think is more aptly named an eviction bonus. These provisions have caused rampant speculation centered around the financial benefits to landlords of displacing their tenants and rapidly increasing rents."); *Rent Regulation and Tenant Protection Legislation: Hearing Before the New York State Senate Standing Committee on Housing, Construction., and Community Development* 24–25 (May 22, 2019) (statement of Elyzabeth Gaumer, Assistant Comm'r of Rsch. and Evaluation, N.Y.C. Dep't of Hous., Pres. & Dev.) ("As you can see, rents increase quickly as rent-stabilized units become vacant and turn over. This has two significant consequences: First, it creates an incentive for owners to turn over units in order to get to vacancy and access larger rent increases. … Second, by contributing to the large-scale decontrol of rental units across the city, it limits the benefits of rent stabilization for anyone seeking to move, including both newcomers, as well as tenants who are looking to find a new home."); *Rent-Regulated Housing: Hearing Before the New York State Assembly Standing Committee on Housing* 25 (May 2, 2019) (statement of Lucy Joffe, Assistant Comm'r of Pol'y, N.Y.C. Dept. of Hous., Pres. & Dev.) ("[C]urrent rent stabilization laws offer the largest rent increases when units are vacant. This

---

[17] While Plaintiffs assert this allegation in their Takings Clause count, the argument sounds in due process. *See supra* Part I.B.

[18] It is "fundamental" that, on a motion to dismiss, "courts may take judicial notice of legislative history." *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022).

means owners are incentivized to get tenants out of their units, allowing them to drive up rents and push rent stabilized units to the decontrol threshold."). As the Second Circuit repeatedly held in rejecting prior due-process challenges to the RSL, "rational basis review is not a mechanism for judges to second guess legislative judgment." *Cmty. Hous.*, 59 F.4th at 557; *accord 74 Pinehurst*, 59 F.4th at 569; *BRI*, 2024 WL 1061142, at *5.

Plaintiffs further allege that the RSL's restrictions on vacancy rents are arbitrary because their application generally turns on whether the building was constructed before 1974. *See* Compl. ¶¶ 284, 286. This argument has already been considered and rejected by multiple courts. The RSL's application has always turned in part on buildings' construction date. More than a century ago, the Supreme Court rejected an argument that rent regulations in New York City were unconstitutionally "discriminating" by exempting "buildings now in course of erection," reasoning "that the unknown cost of completing them and the need to encourage such structures sufficiently explain[ed]" the distinction. *Marcus Brown Holding Co.*, 256 U.S. at 198–99. Similarly, the New York Court of Appeals upheld the 1969 RSL's distinction between pre- and post-1947 buildings as both longstanding and rationally related to the legitimate state interest in "minimiz[ing] the chilling effect on new construction after the 1969 act by leaving a more open horizon for future construction." *8200 Realty Corp.*, 27 N.Y.2d at 137–38. The Second Circuit has likewise upheld the RSL's current application to pre-1974 buildings as "strik[ing] a rational balance between the legitimate state interests of promoting housing construction and preventing hardship on tenants in older buildings." *W. 95 Hous.*, 31 F. App'x at 21. The same logic applies here and forecloses Plaintiffs' due process claim.

*Third*, even if Plaintiffs had some viable due process theory, Plaintiffs additionally fail to state a facial due process claim because they effectively concede that some landlords may earn

constitutionally adequate returns despite the challenged restrictions. *Compare* Compl. ¶ 132

("*Many* of SPONY's members are barely able to make ends meet on their buildings, in part or

entirely because of the Rent Stabilization Law's caps on legal rents for vacant apartments." (em-

phasis added)), *with Dinkins*, 5 F.3d at 597 ("That 'many' landlords arbitrarily may be deprived

of a property interest is not to say that all landlords will be deprived similarly.").

## IV.     Plaintiffs Fail to State an Equal Protection Claim

Plaintiffs' equal-protection claim fails for similar reasons. A law like the RSL "that does

not burden a suspect class or a fundamental interest will not be overturned 'unless the varying

treatment of different groups or persons is so unrelated to the achievement of any combination of

legitimate purposes that we can only conclude that the legislature's actions were irrational.'" *Krae-*

*bel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 402 (2d Cir. 1992) (cleaned up) (quoting

*Pennell*, 485 U.S. at 14). As discussed in Part III, the RSL vacancy provision serves the important

purpose of maintaining stock of low-cost stabilized apartments and the distinction between pre-

and post-1974 buildings is not arbitrary and irrational, as controlling law has already determined.[19]

This authority compels dismissal of Plaintiffs' equal-protection claim.

## V.     Plaintiffs Concede Their Claim under the Privileges or Immunities Clause Is Barred under Well-Established Supreme Court Precedent

Because Plaintiffs concede that their claim that the challenged restrictions violate the Priv-

ileges or Immunities Clause "is currently barred by the Supreme Court's decision in *The*

---

[19] Other courts in this district have likewise rejected equal-protection challenges against aspects of the RSL. *E.g.*, *BRI*, 2021 WL 4198332, at *31 (challenging the HSTPA); *Black v. State of N.Y.*, 13 F. Supp. 2d 538, 542 (S.D.N.Y. 1998) (challenging tenant successorship regulations); *Sidberry v. Koch*, 539 F. Supp. 413, 419–20 (S.D.N.Y. 1982) (challenging the exemption of government-owned buildings from rent-stabilization).

*Slaughterhouse Cases*, 83 U.S. 36 (1873)," and is asserted only "[f]or preservation purposes," Compl. ¶¶ 301–02, it should be dismissed.

### <u>CONCLUSION</u>

For these reasons, the Complaint should be dismissed in its entirety.

Dated:   New York, NY
        March 18, 2026

THE LEGAL AID SOCIETY

Judith Goldiner, *Attorney in Charge,*
 *Civil Law Reform Unit*
Edward Josephson, *Director, Civil Law*
 *Reform Unit*
Pavita Krishnaswamy, *Supervising*
 *Attorney*
Ellen Davidson, *Staff Attorney*
49 Thomas Street, 5th Floor
New York, NY 10013
Phone: (212) 298-5221
jgoldiner@legal-aid.org
ejosephson@legal-aid.org
pkrishnaswamy@legal-aid.org
ebdavidson@legal-aid.org

Respectfully submitted,

SELENDY GAY PLLC

By:   /s/            *Corey Stoughton*
Faith E. Gay
Corey Stoughton
Babak Ghafarzade
1290 Avenue of the Americas
New York, NY  10104
Phone: (212) 390-9000
fgay@selendygay.com
cstoughton@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Intervenors NY Tenants &*
*Neighbors and Community Voices Heard*