

William E. Evans
+1 617 570 1309
WEvans@goodwinlaw.com

Goodwin Procter LLP
100 Northern Ave.
Boston, MA  20036

goodwinlaw.com
+1 617 570 1000

April 29, 2026

**VIA EMAIL AND ECF**

The Honorable John P. Cronan
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007
CronanNYSDChambers@nysd.uscourts.gov

Re:    *Small Property Owners of New York, Inc. v. City of New York*  (No. 1:25-cv-9425)

Dear Judge Cronan:

I represent the Chamber of Commerce of the United States of America.  Pursuant to Rule 6(A) of Your Honor's Individual Practices and Rules in Civil Cases, the Chamber respectfully submits this pre-motion letter in advance of its anticipated motion (which may be joined by one or more other organizations) for leave to submit an *amicus curiae* brief in support of Plaintiffs' forthcoming opposition to Defendants' and Intervenors' motions to dismiss.

"It is well-established that a district court has broad discretion to grant or deny an appearance as *amicus curiae* in a given case." *New York v. Nat'l Sci. Found.*, 2025 WL 1793858, at *6 (S.D.N.Y. June 30, 2025) (citation omitted) (Cronan, J.); *accord Auto. Club of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011) (court "ha[s] broad discretion" to determine that *amicus* participation will be "of aid to the court and offer insights not available from the parties").  Courts regularly exercise their discretion to permit *amicus* participation when the proposed *amicus*'s "perspective may be useful to the Court's consideration of th[e] case." *NSF*, 2025 WL 1793858, at *6.  Among other things, an *amicus* can materially aid the Court's understanding of the issues by "[e]xplaining the broader regulatory or commercial context" in which the case arises; "[p]roviding practical perspectives on the consequences of potential outcomes"; and "[s]upplying empirical data informing one or another question" at issue. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 976 F.3d 761, 763–64 (7th Cir. 2020) (granting the Chamber's motion for leave to file); *accord Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.) (an amicus brief may assist the court by "explain[ing] the impact a potential holding might have on an industry or other group" (citation omitted)).

The Chamber would provide such valuable assistance here.  As the world's largest business federation, the Chamber represents approximately 300,000 direct members and indirectly represents the interest of



The Honorable John P. Cronan
April 29, 2026
Page 2

more than three million companies and professional organizations of every size, in every sector, and from every region of the country.  An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts.  To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of concern to the nation's business community—including cases, like this one, involving important legal challenges to restrictive rent-control measures.  *E.g.*, Br. of *Amici Curiae*, *Cella v. Campbell*, No. SJC-13893 (Mass. filed Apr. 16, 2026), Dkt. No. 21; Br. of the Chamber of Commerce of the United States of America as *Amicus Curiae* Supporting Pet'rs, *G-Max Mgmt., Inc. v. New York*, No. 23-1148 (U.S. filed May 23, 2024); Br. of the Chamber of Commerce of the United States of America as *Amicus Curiae* Supporting Pet'rs, *Cmty. Hous. Improvement Program v. City of New York*, No. 22-1095 (U.S. filed June 9, 2023).

The Chamber therefore has a strong interest in the issues presented by this case.  American businesses rely on stable, fair, and predicable property rules—particularly those affecting their fundamental right to a fair return on property investment through the charging of reasonable rents.  The selective and arbitrary caps imposed by New York's Rent Stabilization Law pose a serious threat to that right.  As the Chamber's *amicus* brief will explain in detail, there is a significant consensus among economists that such rent-control measures inflict systemic harms, including reduction in rental returns and property values, frustration of tenant mobility, discouragement of apartment maintenance and improvement, and decrease in available rental housing.  Those serious and wide-ranging economic injuries directly support Plaintiffs' constitutional challenge to the Rent Stabilization law.  Plaintiffs' takings claim requires consideration of, among other things, "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).  Applying that analysis, the burdens imposed by the Rent Stabilization Law on landlords "go[] too far" in restricting traditional property rights, and the law thus amounts to an improper taking.  *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415–16 (1922).

The Chamber's participation as an *amicus* would therefore "contribute in clear and distinct ways" to the Court's consideration of the issues.  *Prairie Rivers*, 976 F.3d at 763.  Indeed, "[e]ven when," as here, the "part[ies are] very well represented, an amicus may provide important assistance to the court," *Neonatology Assocs.*, 293 F.3d at 132—especially when the case implicates economic issues affecting the entire business community.  Accordingly, judges in this District have repeatedly permitted the Chamber to participate as an *amicus* in cases of broad economic significance like this one.  *E.g.*, *DoorDash, Inc. v. City of New York*, 692 F. Supp. 3d 268, 277 (S.D.N.Y. 2023) (challenge to New York City ordinance capping commissions charged to restaurants by third-party delivery service platforms); *Singh v. Deloitte LLP*, 650 F. Supp. 3d 259 (S.D.N.Y. 2023) (duty-of-prudence claims under ERISA); *Lower E. Side People's Fed. Credit Union v. Trump*, 289 F. Supp. 3d 568, 571 (S.D.N.Y. 2018) (challenge to legality of President's appointment of Acting Director of Consumer Financial Protection Bureau).  This Court should do the same here.

Counsel for the Chamber has contacted counsel for the parties to the case respecting the filing of this letter motion and the Chamber's proposed participation as an *amicus*.  Intervenors and Plaintiffs consent



The Honorable John P. Cronan
April 29, 2026
Page 3

to the Chamber's letter motion and the Chamber's filing of an *amicus* brief.  The State Defendants do not consent to the submission of *amicus* briefs at this time, and have stated that they reserve the right to oppose the Chamber's request after reviewing this letter motion.  The City Defendants take no position on the Chamber's motion for leave to participate but have stated that they reserve the right to ask for more time to respond to arguments raised in an *amicus* brief to the extent the Chamber's motion to participate is granted by this Court.

With respect to the briefing schedule on the motion, the Chamber respectfully requests that the Court set May 8, 2026, as the deadline for the filing of its motion for leave to participate and its proposed *amicus* brief.  May 8 falls 7 days after the deadline for Plaintiffs' opposition to the motions to dismiss (May 1), and 14 days before the deadline for Defendants' and Intervenors' replies in support of their motions to dismiss (May 22).  *Cf.* Fed. R. App. P. 29(a)(6) (an amicus brief supporting appellees on appeal is due 7 days after the response brief and 14 days before the reply brief). A May 8 deadline therefore would allow the Chamber to consider the arguments and authorities raised in Plaintiffs' opposition brief and would give Defendants and Intervenors reasonable time to assess and respond to the Chamber's submission in their replies.

Respectfully,


/s/ *William E. Evans*

William E. Evans

cc      All counsel of record by ECF