UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SMALL PROPERTY OWNERS OF NEW
YORK, INC. *et al.*,

               Plaintiffs,

       v.

THE CITY OF NEW YORK *et al.*,

               Defendants.

Case No. 1:25-cv-09425-JPC

---

## INTERVENORS' REPLY IN FURTHER SUPPORT OF
## <u>THEIR MOTION TO DISMISS</u>

Date:  May 22, 2026

Judith Goldiner
 *Attorney in Charge, Civil Law Reform Unit*
Edward Josephson
 *Director, Civil Law Reform Unit*
Pavita Krishnaswamy
 *Supervising Attorney*
Ellen Davidson
 *Staff Attorney*
THE LEGAL AID SOCIETY
49 Thomas Street, 5th Floor
New York, NY 10013
Phone: (212) 298-5221
jgoldiner@legal-aid.org
ejosephson@legal-aid.org
pkrishnaswamy@legal-aid.org
ebdavidson@legal-aid.org

Faith E. Gay
Corey Stoughton
Babak Ghafarzade
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY  10104
Tel: 212-390-9000
fgay@selendygay.com
cstoughton@selendygay.com
bghafarzade@selendygay.com

*Attorneys for Intervenors NY Tenants &*
*Neighbors and Community Voices Heard*

**TABLE OF CONTENTS**

**Pages**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT.......................................................................................................................2

I.    Plaintiffs' As-Applied Claims Are Not Ripe ....................................................................2

II.   Plaintiffs' Takings Claim Fails ......................................................................................4

    A.    The Relevant Parcel Is Each Building, Not Each Leasehold...................................4

    B.    Plaintiffs' *Per Se* Takings Theory Fails.................................................................9

    C.    Plaintiffs' *Penn Central* Regulatory Takings Theory Fails ...................................10

    D.    Plaintiffs Fail to Mount a Facial Takings Claim....................................................11

III.  Plaintiffs' Due Process and Equal Protection Claims Fail...............................................12

CONCLUSION....................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*74 Pinehurst LLC v. New York*,
    59 F.4th 557 (2d Cir. 2023) ............................................................................ *passim*

*335-7 LLC v. City of New York*,
    2023 WL 2291511 (2d Cir. Mar. 1, 2023)..............................................................2

*Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*,
    2021 WL 4198332 (S.D.N.Y. Sept. 14, 2021),
    *aff'd* 2024 WL 1061142 (2d Cir. Mar. 12, 2024) ......................................................6

*Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*,
    2024 WL 1061142 (2d Cir. Mar. 12, 2024).................................................2, 3, 9, 10

*Chastleton Corp. v. Sinclair*,
    264 U.S. 543 (1924)..............................................................................................14

*City of Las Vegas v. 180 Land Co.*,
    546 P.3d 1239 (Nev. 2024)......................................................................................9

*Cmty. Hous. Improvement Program v. City of New York*,
    492 F. Supp. 3d 33 (E.D.N.Y. 2020) .....................................................................13

*Cmty. Hous. Improvement Program v. City of New York*,
    59 F.4th 540 (2d Cir. 2023) ...............................................................1, 10, 12, 13

*Dias v. City & Cnty. of Denver*,
    567 F.3d 1169 (10th Cir. 2009) .............................................................................14

*DM Arbor Ct., Ltd. v. City of Houston*,
    150 F.4th 418 (5th Cir. 2025) ..................................................................................8

*Greystone Hotel Co. v. City of New York*,
    1999 U.S. App. LEXIS 14960 (2d Cir. June 23, 1999)............................................4

*Hodel v. Irving*,
    481 U.S. 704 (1987)...............................................................................................12

*Horne v. Dep't of Agric.*,
    576 U.S. 350 (2015)...............................................................................................12

*Kaufmann's Carousel, Inc. v. City of Syracuse Indus. Dev. Agency*,
    301 A.D.2d 292 (4th Dept. 2002) ...........................................................................7

*Koontz v. St. Johns River Water Management District*,
570 U.S. 595 (2013).............................................................................................................12

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005).......................................................................................................12, 14

*Loretto v. Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982).............................................................................................................12

*Lucas v. South Carolina Coastal Council*,
505 U.S. 1003 (1992).....................................................................................................4, 9, 11

*Manocherian v. Lenox Hill Hospital*,
84 N.Y.2d 385 (1994) ............................................................................................................6

*Murr v. Wisconsin*,
582 U.S. 383 (2017)....................................................................................................4, 5, 7, 8

*OM 309-311 6th St., LLC v. City of Union City*,
2022 WL 855769 (D.N.J. Mar. 23, 2022).........................................................................5, 11

*OneSimpleLoan v. U.S. Sec'y of Educ.*,
496 F.3d 197 (2d Cir. 2007)................................................................................................12

*Pakdel v. City & Cnty. of San Francisco*,
594 U.S. 474 (2021)...............................................................................................................3

*Penn Central Transportation Co. v. City of New York*,
438 U.S. 104 (1978).................................................................................................... *passim*

*Pennsylvania Coal Co. v. Mahon*,
260 U.S. 393 (1922)..........................................................................................................8, 12

*Seawall Assocs. v. City of New York*,
74 N.Y.2d 92 (1989) ............................................................................................................12

*Stop the Beach Renourishment, Inc. v. Florida Department of
Environmental Protection*,
560 U.S. 702 (2010)..............................................................................................................12

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
535 U.S. 302 (2002)....................................................................................................4, 5, 7, 9

*Villager Pond, Inc. v. Town of Darien*,
56 F.3d 375 (2d Cir. 1995)..................................................................................................13

*Vulcan Materials Co. v. City of Tehuacana*,
369 F.3d 882 (5th Cir. 2004) ................................................................................................7

*W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*,
   31 F. App'x 19 (2d Cir. 2002) ......................................................................................14

**Constitutional Provisions and Statutes**

N.Y. Unconsol. Laws § 8625.........................................................................................7, 15

N.Y. Gen. Bus. Law § 352-eeee ........................................................................................6

**Regulations**

9 N.Y.C.R.R. § 2522.4......................................................................................................3

9 N.Y.C.R.R. § 2522.5......................................................................................................9

9 N.Y.C.R.R. § 2522.7......................................................................................................3

**Local Laws of the City of New York**

N.Y.C. Admin. Code § 26-504 ......................................................................................7, 15

**PRELIMINARY STATEMENT**

Plaintiffs cannot distinguish their lawsuit from past failed constitutional challenges to New York's rent-stabilization laws and regulations (together, the "RSL"). The Complaint's narrower focus on vacant apartments does not change the law: Plaintiffs' as-applied claims are unripe for failure to fully pursue available relief from the rent limits they challenge; their takings claims fail because binding precedent holds that the relevant property is Plaintiffs' buildings as a whole, not individual leaseholds within those buildings, they cannot plead a total loss, and the *Penn Central* analysis is not distinct from the analysis in past RSL challenges; and their reframing of already-rejected due process and equal protection challenges to the rationality of the RSL's provisions fails to break new ground.

Foreclosed by existing law, Plaintiffs' challenge reduces to a policy argument: they decry the RSL for not being a "typical stabilization regime," compare it disfavorably to California's, and denounce it as "radical." Pls.' Resp. in Opp. to Defs.' Mot. To Dismiss ("Opp.") 1-2, 17, Dkt. 88. They petition the Court to supplant the Legislature's judgment that limiting the rent that can be charged for vacancy leases helps address New York's severe housing shortage with their own view that allowing landlords freedom to charge higher rent is a better approach. *Id.* But as this Court is well aware, its role is to apply the law, not to make policy. *Cmty. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 554 (2d Cir. 2023) ("[L]egislative judgments may take [economics] into account," but courts "are bound to follow [legal] standard[s]."). The Court should follow the law and dismiss Plaintiffs' Complaint for the same reasons the earlier challenges to the RSL failed.

## ARGUMENT

### I.    Plaintiffs' As-Applied Claims Are Not Ripe

Plaintiffs' failure to plead finality as to any applications for available hardship exemptions leaves their as-applied claims unripe. *74 Pinehurst LLC v. New York*, 59 F.4th 557, 565 (2d Cir. 2023) (RSL challenge unripe where the plaintiff "failed to pursue" hardship exemptions). As Plaintiffs concede, two have not applied at all and the third has not even received an initial decision from a Rent Administrator, let alone a final agency decision through a Petition for Administrative Review. Opp. 49-51.[1] Plaintiffs' assertion that their allegations are "nothing like" prior unripe challenges, Opp. 52, thus amounts to wishful thinking. The operative fact is the same: Plaintiffs did not plead a final decision.

The Court need not entertain Plaintiffs' arguments for ignoring their failure to plead finality because the Second Circuit has already rejected them. *See 335-7 LLC v. City of New York*, 2023 WL 2291511, at *3 (2d Cir. Mar. 1, 2023) (rejecting the argument "that the exemption process is characterized by 'futility and delay'"); *accord 74 Pinehurst*, 59 F.4th at 565; *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2024 WL 1061142, at *3-4 (2d Cir. Mar. 12, 2024) ("*BRI*") (rejecting argument that "hardship increases are one-offs that do not remedy the underlying restrictions").

Regardless, Plaintiffs' arguments fail. Plaintiffs are wrong that the relevant state agency, the Division of Housing and Community Renewal ("DHCR"), "has no discretion" in determining whether to grant or deny a hardship application. *See* Opp. 50. The Second Circuit held otherwise. *74 Pinehurst*, 59 F.4th at 565 ("The Rent Guidelines Board has discretion to grant hardship

---

[1] Plaintiffs' reference to the denial of Rabinovitch's prior applications on "technical grounds," Opp. 51, is a red herring; his failure to follow the correct application procedures does not make the process futile.

exemptions … based on various criteria"). A landlord may apply for an "alternative hardship" increase above the maximum rent increases allowed "based on a finding by the DHCR that such guidelines increases are not sufficient to enable the owner to maintain an annual gross rent income collectible" that exceeds the building's "annual operating expenses" by at least five percent. 9 N.Y.C.R.R. § 2522.4(d). Plaintiffs ignore that the regulations define "operating expenses" as various "reasonable and necessary administrative costs applicable to the operation and maintenance of the property," *id.* § 2522.4(d)(1)(ii), and require DHCR, when "issuing any order adjusting or establishing any legal regulated rent," to "take into consideration all factors bearing upon the equities involved," *id.* § 2522.7. Thus, as in prior cases, Plaintiffs may not plead mere speculation to "circumvent the requirement that parties pursue available administrative relief." *BRI*, 2024 WL 1061142, at *4.

That includes Plaintiffs' unsupported speculation that, regardless of what DHCR finally decides, their as-applied constitutional claims will survive in some form. Opp. 51. If any Plaintiff is granted an exemption sufficient to allow them to put their apartments on the market, that Plaintiff would lack standing for any of their asserted claims. Moreover, even if the persistence of some harm was inevitable (which it is not), that is legally irrelevant, as the cases Plaintiffs themselves cite establish. The finality requirement exists not merely because the agency might cure the harm but also because the Court must be able to measure the actual extent of the harm. *Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474, 479 (2021) ("because a plaintiff who asserts a regulatory taking must prove that the government regulation has gone too far, the court must first know how far the regulation goes.") (citation omitted). Plaintiffs' as-applied claims should therefore be dismissed as unripe.

3

## II.    Plaintiffs' Takings Claim Fails

Plaintiffs purport to challenge a narrower segment of the RSL than past litigation, but they bring the same legal claims: *per se* takings under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), and regulatory takings under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). Plaintiffs' deployment of policy arguments and nonprecedential cases should not distract from the simple reality that the Second Circuit has already dismissed those claims, and the same legal principles compel dismissal here.

### A.    The Relevant Parcel Is Each Building, Not Each Leasehold

As Plaintiffs concede, *see* Opp. 19, the takings analysis requires a comparison of "the value that has been taken from the property with the value that remains in the property." *Murr v. Wisconsin*, 582 U.S. 383, 395 (2017) (citation omitted). Plaintiffs' argument that the relevant parcel (the "denominator" in the value comparison) is each vacancy lease, Opp. 19,[2] cannot be squared with the Supreme Court's takings jurisprudence, which "does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 327 (2002) (quoting *Penn Cent.*, 438 U.S. at 130). Instead, courts "must focus on 'the parcel as a whole.'" *Id.* (quoting *Penn Cent.*, 438 U.S. at 130-31); *see also, e.g.*, *74 Pinehurst*, 59 F.4th at 566 (considering the RSL's economic impact at the building level); *Greystone Hotel Co. v. City of New York*, 1999 U.S. App. LEXIS 14960 at *4 (2d Cir. June 23, 1999) (summary order) (rejecting

---

[2] Plaintiffs shift their description of the denominator depending on what suits their analysis, characterizing it sometimes as the "individual apartment's leasehold," Opp. 19, and elsewhere as the "value of separate and distinct units," Opp. 23. Those are importantly different concepts: the leasehold is the value of the rental contract, whereas the units' value includes both rental and residual value. The selection of one over the other would fundamentally alter the takings analysis, and Plaintiffs' inconsistency is another reason not to deviate from the building-level denominator framework established in Second Circuit precedent.

4

landlord's claim that the RSL effected a taking of the residential portion of its building because the landlord conceded it was "making an ordinary profit on the other, commercial portions of the building"). The Court should not relitigate this settled issue.

Indeed, Plaintiffs' primary argument for distinguishing this precedent has also been rejected by the Supreme Court. Plaintiffs claim that because the scope of their regulatory challenge is narrower (rent caps on vacant apartment leaseholds with durations of one- or two-years), the takings denominator should also be narrowed (to only those apartments, or their associated leaseholds). Opp. 16. But the Supreme Court has explicitly rejected this maneuver, reasoning that "defining the property interest taken in terms of the very regulation being challenged is circular." *Murr*, 582 U.S. at 396 (quoting *Tahoe-Sierra*, 535 U.S. at 331).[3]

Even if the Court were to overlook precedent in favor of first principles, Plaintiffs' application of *Murr* is wrong. *See* Intervenors' Br. 13-16. The denominator inquiry asks "whether reasonable expectations about property ownership would lead a landowner to anticipate that his holdings would be treated as one parcel, or, instead, as separate tracts." *Murr*, 582 U.S. at 397. Plaintiffs purchased and now operate entire multi-unit buildings that were subject to heavy regulation at the building level (including the RSL) at the time of purchase. *See* Compl. ¶¶ 137-38, 181-82, 212-13. As the Court explained in *Murr*, "[a] reasonable restriction that predates a landowner's acquisition ... can be one of the objective factors that most landowners would reasonably consider in forming fair expectations about their property," and "the reasonable expectations of an acquirer of land must acknowledge legitimate restrictions affecting his or her subsequent use and dispensation of the property." 582 U.S. at 397-98.

---

[3] Plaintiffs' reliance on *OM 309-311 6th St., LLC v. City of Union City*, 2022 WL 855769 (D.N.J. Mar. 23, 2022) (cited at Opp. 24), is misplaced because the decision squarely concluded that the relevant parcel was the entire building. *Id.* at *5.

Under state and local law, ownership of Plaintiffs' multi-unit rental buildings is determined at the building level, not at the individual apartment or leasehold level. Plaintiffs cannot sell a rental unit outright; that would require converting Plaintiffs' buildings into condominiums. *See generally* N.Y. Gen. Bus. Law § 352-eeee (regulating the conversion of rental buildings to condominium ownership). Plaintiffs can "sell the leasehold[s]"—*i.e.*, charge rent to tenants, Opp. 20, but that is irrelevant. Plaintiffs can also sell air rights, but that does not convert airspace into the relevant parcel for a takings claim. *See Penn Cent.*, 438 U.S. at 130. As this court has recognized, a leasehold (like air rights) is one of several sticks in the bundle of property rights that comes with ownership of Plaintiffs' multi-unit parcels; rather than being a parcel itself, it is a temporary contractual transfer of *limited* property rights in exchange for economic benefit, and is merely one of many available uses of the total property to the owner. *See Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2021 WL 4198332, at *17-*18 (S.D.N.Y. Sept. 14, 2021) (rejecting physical takings claim based on rights retained by property owners who lease apartments), *aff'd* 2024 WL 1061142 (2d Cir. 2024).[4] Plaintiffs cannot plead their way around the existence of other possible uses for their apartments and their inherent economic value by alleging "that apartments derive economic 'value' only through their leasehold interest, which produces income." Opp. 29 (citing Compl. ¶ 111). Plaintiffs' reliance on cases in which *lessees* brought takings claims where the denominator was a leasehold is misplaced because the entirety of a lessee's property

---

[4] Plaintiffs cite several nonprecedential state cases regarding the application of state and local law in this context, Opp. 21, but cases about other states have no bearing on how New York law treats property. And in *Manocherian v. Lenox Hill Hospital*, the New York Court of Appeals explained that it was "not decid[ing] … on a stand-alone basis" whether a law resulted in a regulatory taking of "reversionary property interests" because "we do not consider it dispositive by itself in this case." 84 N.Y.2d 385, 398 (1994).

interest is their lease. Opp. 20-21 (citing *Kaufmann's Carousel, Inc. v. City of Syracuse Indus. Dev. Agency*, 301 A.D.2d 292, 294 (4th Dept. 2002)).[5]

Plaintiffs and *amici* argue that individual apartments are the denominator because the RSL applies "on a unit-by-unit basis." NAR Br. 12-15; *see* Opp. 19-22. But that is materially incomplete: the RSL's applicability is based on *building* characteristics, primarily age and size. *See* N.Y. Unconsol. Laws § 8625 and N.Y.C. Admin. Code § 26-504; Compl. ¶ 291. While certain provisions apply to individual units within those properties, using that regulatory effect to define the denominator is exactly the "circular" argument the Supreme Court rejected in *Murr*, 582 U.S. at 396 (quoting *Tahoe-Sierra*, 535 U.S. at 331).

Plaintiffs and *amici* further argue that the physical characteristics of the individual units indicate vacancy leaseholds, Opp. 22-23, or apartments, NAR Br. 13-14, are the denominator, in part because renters consider individual unit characteristics when deciding to rent a particular apartment. But it is the owners' considerations that matter. *See Murr*, 582 U.S. at 398, 403 (anchoring analysis on "landowner's property" and expectations). Regardless, the physical characteristics as Plaintiffs define them cut both ways, at best: Characteristics informing renters' expectations include building location and building-wide amenities like laundry, heating and cooling systems, security, doormen, etc.

Plaintiffs argue that the third *Murr* factor—"the value of the property under the challenged regulation, with special attention to the effect of burdened land on the value of other holdings,"

---

[5] This distinction between the interests of a building owner and a lessee also distinguishes *Vulcan Materials Co. v. City of Tehuacana*, 369 F.3d 882, 889-92 (5th Cir. 2004), on which *amici* rely. *See* Mot. to File Amicus Brief by National Association of Realtors *et al.*, Ex. 2, ("NAR Br."), 9, Dkt 85. The plaintiff in that case was a lessee of rights to mine limestone, and the relevant denominator was the entirety of the plaintiff's lease rights within city limits, which an ordinance that "effectively prohibits all mining of limestone" rendered "valueless." *Id.*

582 U.S. at 398—favors their denominator argument because "restricting or eliminating the value of one apartment's leasehold" allegedly has a detrimental effect on unregulated units in the same building. Opp. 23. But Plaintiffs ignore that the purpose of this factor is to determine whether there is "a special relationship" between otherwise distinct parcels such that they should be aggregated for purposes of the takings analysis. *Murr*, 582 U.S. at 399. Here, as explained, each individual apartment is not a distinct unit from the owner's perspective, and even if they were, Plaintiffs effectively concede there is a "special relationship" among apartments in a building by arguing that the value of one affects the value of others. *See* Opp. 23.

Finally, Plaintiffs catastrophize about the "ramifications" of rejecting their takings argument, suggesting the government could regulate rent down to zero with no consequence. Opp. 18-19. But that assertion ignores both the democratic process and the nuance of the Takings Clause, which examines regulations based on "a careful inquiry informed by the specifics of the case." *Murr*, 582 U.S. at 394; *see also Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922) ("[T]he question depends upon the particular facts."). Acknowledging that Plaintiffs' multi-unit buildings are the proper denominator in this case would not foreclose the possibility of any takings claim affecting landlords' property interests, as the Fifth Circuit's decision in *DM Arbor Ct., Ltd. v. City of Houston*, 150 F.4th 418 (5th Cir. 2025), on which both Plaintiffs and *amici* rely, illustrates. Opp. 28, 30; NAR Br. 9, 10; Mot. to File Amicus Brief by Chamber of Commerce of the United States of America *et al.*, Ex. A, ("CC Br."), 13, Dkt 95. In that case, the court held that a takings claim was pled where Houston denied the owner of a multi-unit rental complex permission to conduct repairs after a natural disaster unless the owner also agreed to various property upgrades, the cost of which was alleged to be prohibitive relative to the *entire economic value of the property*. 150 F.4th at 426. By contrast, Plaintiffs concede their buildings remain profitable, Compl. ¶¶ 166, 200,

and none contends the vacancy rent cap has precluded reasonable sale of their building. Plaintiffs' Complaint is a plea to the judiciary to remove a legislative hindrance to maximizing profit, not to prevent the government from destroying the value of their property without compensation.

### B.    Plaintiffs' *Per Se* Takings Theory Fails

Plaintiffs concede their *per se* takings claim depends on establishing the individual leasehold as the takings denominator. Opp. 27. Thus, for the reasons stated in Part II.A, their *per se* takings claim fails. Further, the Second Circuit has already deemed Plaintiffs' *per se* takings claim "completely devoid of merit." *BRI*, 2024 WL 1061142, at *3 n.2. This is, in part, because Plaintiffs cannot articulate their claim without reducing the value of their property to the rental income they derive from individual units, a proposition that cannot be squared with controlling case law holding that deprivation of profit is not a taking. *74 Pinehurst*, 59 F.4th at 566. Plaintiffs and *amici* ignore this precedent, instead attempting to distinguish this case based on their incorrect denominator, grasping at non-precedential cases, and improperly trying to plead legal conclusions about what constitutes "value." *See, e.g.*, NAR Br. 9-10 (citing *City of Las Vegas v. 180 Land Co.*, 546 P.3d 1239 (Nev. 2024)).

Even if this Court were to consider leaseholds the denominator, Plaintiffs fail to state a *per se* takings claim for an additional reason: their narrow challenge to the RSL's vacancy-lease rent controls cannot plead a "total loss." *Lucas*, 505 U.S. at 1019-20 n.8. Plaintiffs repeatedly emphasize that they challenge *only* the RSL's restraint on their ability to raise rents between vacancies, arguing that it acts as a drag on their ability to recoup the costs of necessary repairs. Opp. 4, 5, 6, 28. But the RSL's vacancy rent cap is a temporary restriction, applying only during the period between one tenant leaving and a new one arriving; thereafter, Plaintiffs are no longer regulated by this provision. 9 N.Y.C.R.R. § 2522.5(a). That is not a *per se* taking. *See Tahoe-Sierra*, 535 U.S. at 332 ("[A] permanent deprivation of the owner's use of the entire area is a taking … whereas

9

a temporary restriction that merely causes a diminution in value is not."). In other words, the very maneuver Plaintiffs deploy to try to distinguish their claim from prior cases—the narrowness of their challenge—steers them into another fatal pleading deficiency. Indeed, Plaintiffs' own pleading makes clear that deprivation of profit is as much a function of regulations requiring improvements between vacancies as it is the RSL provisions they challenge. Compl. ¶ 47. That complex relationship between the various regulations that affect landlords' capacity to extract profitable rents in a highly regulated sector is another reason why Plaintiffs' theory does not fit within takings jurisprudence.

### C.    Plaintiffs' *Penn Central* Regulatory Takings Theory Fails

Binding precedent and straightforward application of *Penn Central* preclude Plaintiffs' as-applied regulatory takings claim. Plaintiffs recite the same allegations already rejected as insufficient by the Second Circuit. *Compare* Compl. ¶ 63, *with 74 Pinehurst*, 59 F.4th at 566 ("loss of profit—much less loss of a reasonable return—alone [cannot] constitute a taking.") (citation omitted); *see also BRI*, 2024 WL 1061142, at *4 (no reasonable investment-backed expectation in property value unaffected by the RSL); *Cmty. Hous.*, 59 F.4th at 555 (similar; RSL does not have the character of a taking).

Plaintiffs distort the *Penn Central* factors, arguing that the vacancy rental cap precludes Plaintiffs from "generat[ing] a future stream of rental income," an injury distinct from previous challenges, Opp. 31; that their reasonable expectations involved renting out each apartment for profit, *id.* at 32; and that the character of the rent caps is distinct from historical limits on price controls—an unsubstantiated assertion contradicted by the actual history they cite, *id.* at 33.[6] Each

---

[6] Plaintiffs argue that "reciprocity of advantage" is also a *Penn Central* factor, Opp. 32, but the Second Circuit rejected that argument because it is grounded solely in a *dissenting* opinion, *Cmty. Hous.*, 59 F.4th at 556.

factor turns on the takings denominator issue. As explained in Part II.A, the correct denominator is the value of the Plaintiffs' entire property, which is fatal to Plaintiffs' claim. But even if this Court deems vacancy leaseholds the denominator, the precedent outlined above forecloses each argument for the reasons stated in Intervenors' opening brief, and the *Penn Central* factors thus require dismissal.[7] *See* Intervenors' Br. 16-19.

### D.      Plaintiffs Fail to Mount a Facial Takings Claim

Plaintiffs ignore binding precedent holding the *Penn Central* factors cannot mount a facial attack on the RSL, *see* Intervenors' Br. 21, and appear to concede that they fail to state a facial claim under *Lucas*. Opp. 34. Additionally, Plaintiffs' facial claim "necessarily" falls with their as-applied takings claims since Plaintiffs "cannot establish that no set of circumstances exists under which the statute would be valid." *74 Pinehurst*, 59 F.4th at 568 n.6 (citation omitted). In both Plaintiffs' briefing and pleadings they concede that under the RSL, some apartments rent at prices that "may even exceed market rates." Opp. 45; *see also* Compl. ¶¶ 61-62. It cannot be the case that the RSL renders a facial taking of the value of all vacant apartments if some are renting at market rate or even higher. Accordingly, Plaintiffs fail to plead any facial takings claim.

Beyond these points, Plaintiffs argue that the "character" of the vacancy restrictions is "so extraordinary that it is dispositive" as to whether they effect a facial regulatory taking. Opp. 34. But *Penn Central* does not treat the "character" prong as dispositive, instead mandating an "ad hoc" consideration of economic impact on investment-backed expectations, the benefits flowing

---

[7] Plaintiffs again rely (at Opp. 31) on the out-of-circuit decision in *OM 309*, but the *Penn Central* claim in that case survived dismissal based on exceptional allegations that the government was illegally forcing landlords to accept rents below the regulated maximums. *OM 309*, 2022 WL 855769, at *15. Plaintiffs here allege no such failure "to follow the law." *Id.*

11

from a regulation, and its character. *Penn Central*, 438 U.S. at 124.[8] Plaintiffs resort to citing physical taking or incursion cases—*see* Opp. 34, 38-40 (citing *Horne v. Dep't of Agric.*, 576 U.S. 350, 360 (2015) (government taking of raisin crop); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 421 (1982) (physical occupation); *Seawall Assocs. v. City of New York*, 74 N.Y.2d 92, 102 (1989) (physical occupation)—which are irrelevant, as *Penn Central* applies only to takings claims outside the "narrow categories" of "permanent physical invasion" and *per se* takings, *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (citation omitted).[9]

Finally, Plaintiffs ask the Court to abandon *Penn Central* and adopt a novel "history and tradition" test for determining extraordinary character. Opp. 35. But lower courts "are not at liberty to depart from binding Supreme Court precedent." *OneSimpleLoan v. U.S. Sec'y of Educ.*, 496 F.3d 197, 208 (2d Cir. 2007).

### III.   Plaintiffs' Due Process and Equal Protection Claims Fail

Plaintiffs' argument that their due-process claim is independent of their takings claim fails. *See* Opp. 41-43. Regardless whether the Court is inclined to follow Justice Scalia's plurality opinion in *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 560 U.S. 702, 720-21 (2010), the Second Circuit's adoption of that rule is binding. *See Cmty. Hous.*, 59 F.4th at 557; *74 Pinehurst*, 59 F.4th at 569. Plaintiffs argue that those cases "must be read to rest on a conclusion that the claimants' takings and due-process claims were premised on

---

[8] Extraordinary character can certainly tip the balance of *Penn Central* factors. *See Hodel v. Irving*, 481 U.S. 704, 716 (1987). But Plaintiffs cannot make that argument here, because "[t]he economic impact of the RSL ... cannot be ascertained on a collective basis, as it necessarily varies among properties." *74 Pinehurst*, 59 F.4th at 564.

[9] Plaintiffs also rely on two inapposite cases: *Koontz v. St. Johns River Water Management District*, where petitioner only advanced a *per se* takings argument, 570 U.S. 595, 614-15 (2013), and *Mahon*, which long predates *Penn Central* and modern takings jurisprudence. 260 U.S. at 412.

12

the same theory," Opp. 42, but that is wishful thinking. As here, plaintiffs in those cases argued that the RSL's rent restrictions were not rationally related to the law's aims and instead contained provisions that had no rational basis. *See Cmty. Hous. Improvement Program v. City of New York*, 492 F. Supp. 3d 33, 51 (E.D.N.Y. 2020) (consolidated opinion). That claim bears the same relationship to a claim that the RSL takes private property without just compensation as Plaintiffs' due process claim does. Plaintiffs do not cite a single case permitting an analogous due process claim to proceed alongside a takings challenge to the same regulation. In *Villager Pond, Inc. v. Town of Darien*, cited at Opp. 43, the Second Circuit did not address the intersection between due process and takings because it was not raised, and the takings claim was dismissed on other grounds. 56 F.3d 375, 380-81 (2d Cir. 1995). In any event, *Villager Pond* predated the Second Circuit's rulings cited above.

Regardless, the Second Circuit held that the RSL (including its vacancy rent caps) is rationally related to the legitimate purpose of promoting "neighborhood continuity and stability" by "permit[ting] low- and moderate-income people to reside in New York City when they otherwise could not afford to do so." *Cmty. Hous.*, 59 F.4th. at 547, 557. Plaintiffs claim those rulings overlooked a due process problem specific to the vacancy rent caps, Opp. 44, but that is false: the mechanism the RSL uses to set rent caps (including vacancy rent caps) was challenged in both *Community Housing* and *Pinehurst* and was found rationally related to the statute's legitimate purpose. *See Cmty. Hous.*, 492 F. Supp. 3d at 52. The fact that the Second Circuit did not do a provision-by-provision analysis does not change that conclusion. Nor does the fact that Plaintiffs have offered some additional criticism of the method the RSL employs to achieve its stated goals change the Second Circuit's binding legal conclusion that Defendants' policy decision to place rent caps on certain New York City apartments, vacant or otherwise, bears a rational relationship

13

to their stated goals. Plaintiffs do not explain how a factual record would alter the established precedent foreclosing their claims.

Even if the Court were to ignore this binding precedent, a fresh analysis leads to the same result. Plaintiffs' brief reads like a strict scrutiny argument, but this is a rational basis review. *See Lingle*, 544 U.S. at 545. It is not relevant under rational basis review that there may be other ways to prevent landlord harassment, that the RSL's uniformly-applied percentage-based formula could be amended to reduce disparities between apartments with historically variable base rents, or that the government could rationally choose to change the total units covered by the RSL. *See* Opp. 45. The purpose of the RSL is not to ensure that all apartments are treated the same but to create a stable supply of affordable housing for lower-income New Yorkers.

Plaintiffs' equal protection claim similarly fails because the RSL's distinction between pre- and post-1974 buildings has already been ruled rational. *W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 31 F. App'x 19 (2d Cir. 2002). Plaintiffs suggest that the passage of time requires the legislature to update the law, relying on *Chastleton Corp. v. Sinclair*, 264 U.S. 543 (1924) and *Dias v. City & Cnty. of Denver*, 567 F.3d 1169 (10th Cir. 2009). But in *Chastleton*, unlike here, the plaintiffs claimed that a necessary predicate to the challenged law's operation (a declared state of emergency) no longer existed. 264 U.S. at 546. Here, Plaintiffs do not challenge the predicate emergency, they concede it was declared in 2024. Compl. ¶ 294. And in *Dias*, the challenge to a law banning pitbulls was based on a change in the science underpinning the theory of its rationality. 567 F.3d at 1183-84. Neither case establishes a general requirement for states to update their laws, and none of their reasoning applies to the Legislature's decision to leave in place the RSL's division between apartments built before and after its original enactment date. That division is not an expired predicate, it is a line-drawing exercise to balance the supply of regulated

14

and unregulated property, and it still serves that function, regardless of whether a different line could now be drawn. Finally, Plaintiffs repeatedly emphasize their narrow challenge is limited only to vacancy rent cap provisions, Opp. 3, 8, 33, but their equal protection claim sweeps beyond that to the RSL's more broadly applicable provisions governing what buildings are subject to the RSL in the first place, N.Y. Unconsol. Law § 8625(a)(5); N.Y.C. Admin. Code § 26-504(b), and thus eviscerates Plaintiffs' effort to persuade the Court that they present a more modest claim distinguishable from the cases the Second Circuit has already adjudicated.

## CONCLUSION

For these reasons, the Complaint should be dismissed in its entirety.

Dated:    New York, NY
          May 22, 2026

Respectfully submitted,

SELENDY GAY PLLC

By:    /s/            *Corey Stoughton*

Faith E. Gay
Corey Stoughton
Babak Ghafarzade
1290 Avenue of the Americas
New York, NY  10104
Phone: (212) 390-9000
fgay@selendygay.com
cstoughton@selendygay.com
bghafarzade@selendygay.com

THE LEGAL AID SOCIETY

Judith Goldiner, *Attorney in Charge,
  Civil Law Reform Unit*
Edward Josephson, *Director, Civil Law
  Reform Unit*
Pavita Krishnaswamy, *Supervising
  Attorney*
Ellen Davidson, *Staff Attorney*
49 Thomas Street, 5th Floor
New York, NY 10013
Phone: (212) 298-5221
jgoldiner@legal-aid.org
ejosephson@legal-aid.org
pkrishnaswamy@legal-aid.org
ebdavidson@legal-aid.org

*Attorneys for Intervenors NY Tenants &
Neighbors and Community Voices Heard*

15

## CERTIFICATE OF COMPLIANCE

This brief complies with the word-count limitation of Rule 7.1(c) of the Joint Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and The Honorable John P. Cronan's Individual Rules and Practices in Civil Cases 2(b), as modified to 4,800 words by this Court's Order, dated May 20, 2026 (ECF No. 101). As determined by the word-count function of Microsoft Word, this document, excluding the parts exempted by Rule 7.1(c), contains 4,797 words.

Dated:   New York, New York
          May 22, 2026

/s/            *Corey Stoughton*

Corey Stoughton
1290 Avenue of the Americas
New York, NY 10104
Phone: (212) 390-9000
cstoughton@selendygay.com

*Attorney for Intervenors NY Tenants & Neighbors
and Community Voices Heard*