Index No. 25-cv-09425 (JPC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SMALL PROPERTY OWNERS OF NEW
YORK, INC. et al.,

Plaintiffs,

-against-

CITY OF NEW YORK et al.,

Defendants.

**CITY DEFENDANTS' MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO
DISMISS THE COMPLAINT**

***STEVEN BANKS***
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Rachel K. Moston*
*Leah A. Reiss*
*Tel:  (212) 356-2190*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................II

PRELIMINARY STATEMENT ............................................................................................ 1

POINT I

CITY DEFENDANTS HAVE NOT CAUSED PLAINTIFFS' ALLEGED INJURIES ........................................................ 2

POINT II

PLAINTIFFS' TAKINGS CLAIMS FAIL ................................................ 4

A.  Plaintiffs Fail to Satisfy the Standard for a Facial Takings Challenge .................................................................... 4

B.  Plaintiffs Do Not Allege a Cognizable Property Interest as the Denominator ..................................................... 6

C.  Plaintiffs' As-Applied Challenges are Not Ripe ................................. 9

D.  Plaintiffs Fail to State an As-Applied *Per Se* Taking Claim ............................................................................ 10

E.  Plaintiffs Fail to State An As-Applied *Penn Central* Claim ............................................................................ 12

POINT III

PLAINTIFFS FAIL TO STATE SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION CLAIMS ............................................................................ 14

A.  Plaintiffs' Substantive Due Process Claim Fails .............................. 14

B.  Plaintiffs' Equal Protection Claim Fails ............................................ 15

CONCLUSION ..................................................................................................................... 16

WORD COUNT CERTIFICATION ................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

*335-7 LLC v. City of New York*,
  2023 U.S. App. LEXIS 4940 (2d. Cir. 2023) ...................................................................10, 14

*74 Pinehurst LLC v. New York et al.*,
  59 F.4th 557 (2d Cir. 2023) ....................................................................................4, 10, 13, 15

*Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*,
  2024 U.S. App. LEXIS 5905 (2d Cir. 2024) ...............................................................4, 10, 14

*Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*,
  Nos. 19-cv-11285, 20-cv-634, 2021 U.S. Dist. LEXIS 174535
  (S.D.N.Y. 2021) ..................................................................................................................3

*Cedar Point Nursery v. Hassid*,
  594 U.S. 139 (2021)............................................................................................................5

*Cmty. Hous. Improvement Program v. City of New Yor, et al.*,
  59 F.4th 540 (2d Cir. 2023) ..................................................................................4, 5, 13, 14, 15

*Devines v. Maier*,
  665 F.2d 138 (7th Cir. 1981) ..............................................................................................6

*DM Arbor Ct., Ltd. v. City of Houston*,
  150 F.4th 418 (5th Cir. 2025) ............................................................................................11

*Fed. Home Loan Mortg. Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal*,
  83 F.3d 45 (2d Cir. 1996)............................................................................................... 12-13

*Great Atlantic & Pacific Tea Co. v. State*,
  22 N.Y.2d 75 (N.Y. 1968) ..................................................................................................6

*Horne v. Dep't of Agric.*,
  576 U.S. 351 (2015)............................................................................................................5

*Matter of Kaufmann's Carousel v. City of Syracuse Indus. Dev. Agency*,
  301 A.D.2d 292 (N.Y. App. Div. 2002) ............................................................................6

*Lingle v. Chevron U.S.A. Inc.*,
  544 U.S. 528 (2005)............................................................................................................5

*Loretto v. Teleprompter Manhattan CATV Corp.*,
  458 U.S. 419 (1982)............................................................................................................5

*Lucas v. South Carolina Coastal Council*,
  505 U.S. 1003 (1992)......................................................................................................5, 11

**Cases**                                                                                              **Pages**

*Manocherian v. Lenox Hill Hosp.*,
    84 N.Y.2d 385 (N.Y. 1994) ....................................................................................7, 11

*Murr v. Wisconsin*,
    582 U.S. 383 (2017)............................................................................................8, 9

*Muskin v. State Dep't of Assessments & Tax'n*,
    422 Md. 544 (M.D. 2011)........................................................................................7

*In re New York*,
    55 N.Y.2d 353 (N.Y. 1982) ....................................................................................6

*Park Ave. Tower Assocs. v. New York*,
    746 F.2d 135 (2d Cir. 1984).....................................................................................13

*Penn Cent. Transp. Co. v. New York City*,
    438 U.S. 104 (1978)..........................................................................................12, 13

*Pennell v. City of San Jose*,
    485 U.S. 1 (1988)..................................................................................................14

*Rent Stabilization Ass'n v. Higgins*,
    83 N.Y.2d 156 (1993) .............................................................................................3

*S. Nassau Bldg. Corp. v. Town Bd.*,
    64 F. Supp. 3d 261 (E.D.N.Y. 2022) .......................................................................8

*Seawall Assocs. v. New York*,
    74 N.Y.2d 92 (N.Y. 1989) .....................................................................................11

*Sherman v. Town of Chester*,
    752 F.3d 554 (2d Cir. 2014)....................................................................................12

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*,
    535 U.S. 302 (2002)...........................................................................................5, 11

*United States v. Petty Motor Co.*,
    327 U.S. 372 (1946)................................................................................................6

**Cases**                                                                                                       **Pages**

*United States v. Right to Use & Occupy 3.38 Acres of Land*,
    484 F.2d 1140 (4th Cir. 1973) ...................................................................................6

**Statutes**

9 N.Y.C.R.R. § 2522.5.............................................................................................3, 4, 14

9 N.Y.C.R.R. § 2522.5(a) .......................................................................................3, 4, 14

Fed. R. Civ. P. 19(a)(1).................................................................................................4

N.Y.C. Admin. Code § 26-510(a)..................................................................................3

N.Y.C. Admin. Code § 26-510(j) ..................................................................................3

N.Y. Unconsol. Law § 8624(e)............................................................................... 3-4, 14

**Other Authorities**

74 N.Y. Jur. 2d Landlord and Tenant § 126 ...................................................................6

74 N.Y. Jur. 2d Landlord and Tenant § 129 ...................................................................6

iv

Defendants, the City of New York ("City"), the New York City Rent Guidelines Board ("RGB"), Chantella Mitchell, in her official capacity as RGB chair/member, Arpit Gupta, Lauren Melodia, Brandon Mancilla, Sina Sinai, Maksim Wynn, Christina Smyth, Sagar Sharma, and Adán Soltren, in their official capacities as RGB members, ("City Defendants") by their attorney, Steven Banks, Corporation Counsel of the City of New York, submit this Reply Memorandum of Law in Further Support of their Motion to Dismiss.

## PRELIMINARY STATEMENT

The arguments asserted by Plaintiffs in their Memorandum of Law in Opposition to Defendants' Motions to Dismiss, dated May 1, 2026 ("Pls.' Opp."), do not support their claims in the Complaint ("Compl."). Plaintiffs seek to strike down three provisions of New York State's Rent Stabilization Law ("RSL") that restrict the rent that can be charged at vacancy for rent-stabilized units. The RSL, amended regularly by the State legislature in response to changing housing conditions and policy goals, regulates rent increases for nearly one million NYC apartments and protects approximately two and a half million City residents.

The remedy Plaintiffs seek is the ability to raise rents on every stabilized unit to market rate upon vacancy. This has never been permitted by the RSL, except for a brief period in the early 1970s. Although Plaintiffs claim their request is not radical, they are wrong. As every occupied rent stabilized unit will at some point become vacant, Plaintiffs' proposed remedy will increase rents to market rate in nearly one million rent stabilized apartments City-wide, thereby upending rent stabilization and resulting in the loss of affordable apartments for lower-income New Yorkers. Plaintiffs' request for relief is unfounded, unprecedented, and contrary to decades of legislative action.

As set forth in City Defendants' moving papers, Plaintiffs' constitutional challenges to the RSL fail. Not only are these claims foreclosed by the line of Second Circuit

decisions rejecting challenges to the RSL in its current form, but Plaintiffs' claims fail as a matter of law.  Plaintiffs cannot escape the Second Circuit's holdings by attempting to narrowly frame their challenge as merely governing *vacant* – as opposed to occupied – apartments.  This is a distinction without a difference.  It is well-settled that the provisions of the RSL are interconnected, working together as part of a larger regulatory scheme to advance the legislature's goals of, *inter alia*, preventing tenant harassment and dislocation, as well as enabling residents to remain in their homes and communities.  Restricting vacancy increases limits incentives for landlords to harass tenants out of apartments to access higher rents and keeps stabilized apartments affordable to lower-income New Yorkers.

Plaintiffs ask this Court to strike down these RSL provisions as a *per se* and regulatory taking, and a substantive due process and equal protection violation.  Plaintiffs' claims against the City must be dismissed.  Additionally, Plaintiffs lack standing to sue City Defendants because the City does not enforce the challenged RSL provisions and, therefore, has not caused Plaintiffs' alleged injuries.  Accordingly, Plaintiffs' claims fail.

## POINT I

### CITY DEFENDANTS HAVE NOT CAUSED PLAINTIFFS' ALLEGED INJURIES.

Plaintiffs maintain they have standing to sue City Defendants and intimate that the City is a necessary party because the City separately restricts rent adjustments for vacant units and enforces the challenged RSL provisions.  *See* Pls.' Opp. 59-60.  Plaintiffs' arguments evidence a fundamental misunderstanding of the City's role under the RSL.

First, Plaintiffs complain that the City "has obtained any benefit from property taken from their enforcement" of the challenged laws, which are three RSL provisions, as amended by the Housing Stability and Tenant Protection Act ("HSTPA") in 2019, that, collectively, prohibit

2

a landlord from charging a vacancy increase.  *Id.*, at 60; Compl. ¶¶ 1, 37-41.  But the City does *not* enforce these provisions of law.  *Rent Stabilization Ass'n v. Higgins*, 83 N.Y.2d 156, 165 (1993); *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York ["BRI"]*, Nos. 19-cv-11285, 20-cv-634, 2021 U.S. Dist. LEXIS 174535, *38-39 (S.D.N.Y. 2021)

As set forth in City Defendants' moving papers, the City's role under the RSL is limited to: (1) the City Council's determination of emergency every three years; and (2) the RGB's annual determination regarding permissible percentage rent adjustments.  To achieve standing, Plaintiffs would need to challenge either of these actions, which they have not.  The Complaint does not challenge the City Council's most recent declaration of a housing emergency in 2023 or any RGB rent adjustment.  *See* Compl.  Indeed, Plaintiffs' relief sought is limited to a declaration that the three provisions of *state* law regarding the 2019 repeal of vacancy increases – N.Y. Unconsol. Law § 8624(e); 9 N.Y.C.R.R. § 2522.5(a); and *id.* § 2522.5 – are unconstitutional. Compl. ¶¶ 1, 269, Wherefore Clause.  There is no City-specific action or law challenged therein.

Second, contrary to Plaintiffs' contention, the City's rent-stabilization laws do not "independently limit" an owners' ability to collect rent increases on a vacant unit.  Pls.' Opp. 59. In fact, the RSL prohibits the RGB from acting independently by authorizing separate vacancy increases. 2019 N.Y. Laws ch. 36, part C.  The City's rent-stabilization laws in the New York City Administrative Code ("Admin. Code") are entirely consistent with state law and do not provide an independent source of authority for the RGB to limit (or raise) increases for vacant units, as Plaintiffs erroneously contend.  *See* Admin. Code §§ 26-510(a) and 26-510(j).

Even if that were the case, Plaintiffs only challenge the constitutionality of state laws – not the Admin. Code.  *See generally,* Compl.; Wherefore clause.  As such, the City cannot provide Plaintiffs the relief they seek.  The City cannot halt enforcement of N.Y. Unconsol. Law

3

§ 8624(e); 9 N.Y.C.R.R. § 2522.5(a); and *id.* § 2522.5 or redress any injuries that flow from these provisions.

Finally, contrary to Plaintiffs' suggestion, the City's participation in the litigation is not necessary to ensure "complete relief." Pls.' Opp. 60. A party is necessary under Rule 19(a)(1) where its absence would preclude the court from according "complete relief … among those already parties." Fed. R. Civ. P. 19(a)(1). Here, Plaintiffs seek a declaration that three provisions of state law are unconstitutional and illegal, an injunction, and an award of just compensation. The City's absence would not preclude the Court from according that relief, and Plaintiffs have not shown otherwise. Accordingly, the claims against City Defendants should be dismissed.

**POINT II**

**<u>PLAINTIFFS' TAKINGS CLAIMS FAIL.</u>**

**A.    Plaintiffs Fail to Satisfy the Standard for a Facial Takings Challenge**

Plaintiffs have not plausibly alleged either a facial *per se* or facial regulatory taking because they have not – and cannot – satisfy the well-settled Second Circuit standard for reviewing facial takings challenges to the RSL, which requires Plaintiffs to establish "'that no set of circumstances exists under which the [challenged] Act would be valid'" and that "'the statute 'is unconstitutional in all of its applications.'" *Cmty. Hous. Improvement Program v. City of New York et al. ["CHIP"]*, 59 F.4th 540, 548 (2d Cir. 2023) (internal citations omitted); *74 Pinehurst LLC v. New York et al. ["74 Pinehurst"]*, 59 F.4th 557, 564 (2d Cir. 2023); *BRI*, 2024 U.S. App. LEXIS 5905, *4 (2d Cir. 2024).

Rather than engage with this standard, Plaintiffs raise a host of unrelated claims and nonsensical legal theories. Plaintiffs allege that the challenged RSL provisions effect "a taking in every case – even where vacant apartments retain some rental value." Pls.' Opp. 34. But

4

Plaintiffs' concession that at least some vacant apartments retain rental value directly undercuts their argument; Plaintiffs cannot establish that the challenged provisions deprive *all* owners of vacant rent-stabilized units "all economically beneficial use" of the property. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992))

Plaintiffs' facial regulatory taking claim fares no better. Plaintiffs do not dispute that the Second Circuit has repeatedly rejected facial regulatory takings challenges to the RSL. *CHIP*, 59 F.4th at 549. Rather, Plaintiffs urge this Court to adopt wholly irrelevant standards for evaluating Plaintiffs' claims. First, Plaintiffs contend that this Court need not consider all three *Penn Central* factors because the "character" of the challenged regulations is "so extraordinary that it is dispositive." Pls.' Opp. 34 (internal citations omitted). In support, Plaintiffs cite to cases involving land-use exactions and physical takings challenges, such as *Loretto v. Teleprompter Manhattan CATV Corp.*, *Horne v. Dep't of Agric.*, and *Cedar Point Nursery v. Hassid*. Pls.' Opp. 34-35. These cases are not controlling here because Plaintiffs do not allege a physical taking – only a *per se* and regulatory taking. *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 323 (2002) ("[It is] inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking[.]'").

Additionally, Plaintiffs urge this Court to apply a purported "history and tradition" test to evaluate their facial regulatory takings claim. Pls.' Opp. 35-40. But this it not – and has never been – the standard applied by the Second Circuit. The standard is clear: Plaintiffs must establish that the challenged RSL provisions effect a taking in all circumstances. Plaintiffs do not even attempt to satisfy this standard. Accordingly, there is no basis for this Court to depart from

controlling Second Circuit precedent and find the challenged RSL provisions facially unconstitutional.

**B.       Plaintiffs Do Not Allege a Cognizable Property Interest as the Denominator**

Plaintiffs clarify that the property they seek to identify as the denominator for their takings claims is not a defined parcel of land, a building, or even an individual apartment, but rather "an individual apartment's leasehold." Pls.' Opp. 19.  This is contrary to how state property law and caselaw treat takings challenges.  Property owners do not hold leasehold interests in their properties.  A leasehold is a property interest held by a *lessee*.  74 N.Y. Jur. 2d Landlord and Tenant § 129 ("The lessor and the lessee have separate estates, and each, if injured, may have redress: the lessor for injury to the reversion, the lessee for the injury inflicted in diminishing his or her enjoyment of the premises. However, neither can recover for damages to the estate of the other.").

Plaintiffs are not lessees and have cited no cases for the notion that a property owner can recover for a taking of a leasehold interest.  Plaintiffs' cited cases involve *tenants* challenging or seeking compensation for the condemnation/physical taking of their leaseholds.  *See* Pls.' Opp. 20-21 (citing *Matter of Kaufmann's Carousel v. City of Syracuse Indus. Dev. Agency*, 301 A.D.2d 292, 293-94 (N.Y. App. Div. 2002) (tenants challenged condemnation of leasehold interests in portions of a shopping mall); *In re New York*, 55 N.Y.2d 353, 356 (N.Y. 1982); (claimant leasing city-owned property sought compensation when the city condemned the land); *United States v. Petty Motor Co.*, 327 U.S. 372, 374-75 (1946) (assessing compensation owed to tenants of property condemned for public use); *Great Atlantic & Pacific Tea Co. v. State*, 22 N.Y.2d 75, 85-87 (N.Y. 1968) (same); *United States v. Right to Use & Occupy 3.38 Acres of Land*, 484 F.2d 1140 (4th Cir 1973) (same); *see also* 74 N.Y. Jur. 2d Landlord and Tenant § 126.  The single case Plaintiffs cite involving a regulatory taking of a leasehold interest only contemplated compensation to *tenants* displaced due to housing code enforcement.  *Devines v. Maier*, 665 F.2d 138, 142 (7th Cir. 1981).

In addition, Plaintiffs' attempt to divide their interests into separate leasehold and reversion interests for the relevant apartments is nonsensical. Here, there are no lessees occupying the vacant apartments. Therefore, the owner's relevant fee interest is not in a leasehold (as one does not currently exist), but is necessarily in the property as a whole. While an owner may use a portion of their property to create a leasehold that will become the property interest of a lessee, this does not provide the owner with an interest in a leasehold or negate how state law treats the property as a whole when it comes to the owner.

Even if Plaintiffs claim they are being deprived of a reversionary interest in the vacant apartments, such arguments are unavailing. Cases Plaintiffs cite involving a so-called reversionary interest do not inform the outcome here. *Manocherian v. Lenox Hill Hosp.* involved a challenge to a New York law requiring owners of stabilized properties to offer renewal leases to Lenox Hill Hospital for apartments occupied by their employees, while the hospital had total control over the length of the sub-tenancies. 84 N.Y.2d 385, 388-90 (N.Y. 1994). The court found that the law did "not substantially advanc[e] a closely and legitimately connected State interest." *Id.* at 389 (citations omitted). The court did not decide the case based on an analysis of the owners' reversionary interest because it "[did] not consider it dispositive," and the holding explicitly did not "affect or diminish the general validity of those broad, long-standing protections and enactments" of rent stabilization as a whole. *Id.* at 398-99. And *Muskin v. State Dep't of Assessments & Tax'n*, which involved Maryland's ground rent system, was decided pursuant to Maryland law and bears no resemblance to the regulatory system at issue here. 422 Md. 544 (M.D. 2011). Accordingly, it is clear that Plaintiffs are attempting to assert a novel and unsupported theory of the denominator as a leasehold interest that this Court should not adopt.

Indeed, this case presents exactly the type of instance where "the effect of the challenged regulation must be assessed and understood by the effect on the *entire property held by the owner*, rather than just some part of the property that, considered just on its own, has been diminished in value." *Murr v. Wisconsin*, 582 U.S. 383, 395 (2017) (emphasis added). Pursuant to *Murr v. Wisconsin*, it is clear that the denominator for a takings analysis should not be narrowed in the manner urged by Plaintiffs. *Murr* concerns the merger of two adjacent lots under common ownership where regulation limited the use or disposal of one lot. *Id.* at 388-91. The factors that follow highlight that this inquiry uses, as its baseline, the idea of a lot of land as the default denominator of property for a regulatory taking analysis. The first factor, "the treatment of the land, in particular how it is bounded or divided, under state and local law," clearly favors the building as the denominator – not a leasehold or even an individual apartment. *Id.* at 397. While apartments are divisible for the purpose of renting them to *tenants*, Plaintiffs own their buildings in full as unified pieces of property. Each building is treated as a whole parcel for purposes of taxation, zoning, and sale – activities that are pertinent to Plaintiffs' interests, despite their glib assertion to the contrary. Pls.' Opp. 21-22. It is also relevant that, unlike the property owner in *S. Nassau Bldg. Corp. v. Town Bd.*, none of the Plaintiffs would have any reason to expect that they could increase rents on the units at issue to market rate at vacancy at the time they purchased their properties. 64 F. Supp. 3d 261, 273 (E.D.N.Y. 2022).

The second *Murr* factor, "the physical characteristics of the landowner's property," looks to "the physical relationship of any distinguishable tracts, the parcel's topography, and the surrounding human and ecological environment." *Id.* at 398. Each unit in a building shares these types of physical characteristics with the other units, regardless of the fact that a unit may be closed off to other portions of the building. The third *Murr* factor, "the value of the property under the

8

challenged regulation, with special attention to the effect of burdened land on the value of other holdings," speaks directly to the unsuitability of Plaintiffs' desired denominator to this analysis. *Id.* This factor assesses how disparate property parcels impact each other to weigh the impacts of a regulation. Defendants are not seeking to base the taking analysis generally on all of Plaintiffs' holdings – just the individual buildings where the units are located.

Plaintiffs assert that "[t]here is no reason why an evaluation of Defendants' varied price controls on each unit should consider the value of the entire building, rather than the value of separate and distinct units." Pls.' Opp. 23. This argument is a blatant misrepresentation of how the RSL works. The RSL does not set price controls, nor did it set initial rents for stabilized units. Rents were stabilized at the rents charged when the buildings entered rent stabilization. Each stabilized apartment's legal rent represents a history of years of choices by private actors and legislative changes that necessarily resulted in varying rents across the City's nearly one million stabilized apartments. And Plaintiffs themselves acknowledge this reality. Compl. ¶ 58. Neither do the RSL's provisions vary from unit to unit – they are consistently applied across the stabilized housing stock.

Accordingly, Plaintiffs' argument that an apartment's leasehold is the appropriate denominator for their taking claims fails. Adopting Plaintiffs' narrow construction of their property interest runs contrary to caselaw, which "decline[s] to limit the parcel in an artificial manner to the portion of property targeted by the challenged regulation." *Murr*, 582 U.S. at 396.

## C.    Plaintiffs' As-Applied Challenges are Not Ripe

Plaintiffs maintain that their as-applied challenges are ripe for review, despite that Plaintiffs RPN and PKM have not filed for hardship exemptions with DHCR, and that Plaintiff 135 W 78th has a pending hardship application. Compl. ¶¶ 164-67, 198-200, 237-38. First, Plaintiffs RPN and PKM summarily allege their buildings do not meet any hardship criteria so

9

applying would be futile.  Pls.' Opp. 50.  Second, Plaintiffs allege that even if their applications are granted, their "as-applied claims are viable, regardless of any potential hardship increase." *Id.*, 51.

Plaintiffs cannot evade the finality requirement by merely alleging futility and claiming they would not receive sufficient relief.  Rejecting similar claims made by other property owners, the Second Circuit clarified that "'[s]peculation of this sort is insufficient' to circumvent the requirement that parties pursue available administrative relief." *BRI*, 2024 U.S. LEXIS 5905, at *9 (quoting *74 Pinehurst*, 59 F.4th at 565).  Plaintiffs' specific complaints about the hardship process are neither unique nor distinguishable from the plaintiffs in *74 Pinehurst*, *BRI*, and *335-7 LLC v. City of New York ["335-7"]*, 2023 U.S. App. LEXIS 4940 (2d. Cir. 2023).  Indeed, a review of the pleadings and briefing in those matters indicates the property owners all claimed they could not obtain sufficient relief under the hardship formulas and that applying for hardship would be futile.  Dismissing these challenges outright, the Second Circuit noted that "a claim that a regulation effects an as-applied taking cannot be properly adjudicated until there is 'no question … about how the regulations at issue apply to the particular [property] in question[.]" *74 Pinehurst*, 59 F.4th at 555 (internal citations omitted).

Whether DHCR grants a hardship-based rent increase is plainly relevant to Plaintiffs' objections that the RSL deprives the four vacant units of all economic value.  Plaintiffs must obtain a final decision from DHCR before they can challenge the RSL as it applies to them.

## D.    Plaintiffs Fail to State an As-Applied *Per Se* Taking Claim

Even if Plaintiffs' claims are considered ripe, their *per se* taking claim nevertheless fails.  First,  Plaintiffs fail to engage with an analysis that uses their *buildings* as the relevant denominator of property – a tacit acknowledgement that, should this Court proceed with the building as the denominator, Plaintiffs cannot plead a taking.  Plaintiffs highlight a case they claim

supports that the challenged RSL provisions effectuate a *per se* taking of their four vacant apartments, but that actually underscores the City's position. In *DM Arbor Ct., Ltd. v. City of Houston*, the Fifth Circuit deemed a city's denial of a permit to repair damages to an apartment complex, which rendered the complex effectively unusable, to be a *per se* taking. 150 F.4th 418, 420 (5th Cir. 2025). The apartment complex consisted of 15 buildings, with 232 total units, and the court analyzed the entire complex as one property. *Id.* at 421, 426. Plaintiffs do not plead that the vacant units at issue here have rendered their entire properties economically valueless.

And Plaintiffs still cannot show that the challenged RSL provisions constitute a *per se* taking of the four vacant apartments in question. "Anything less than a 'complete elimination of value,' or a 'total loss,'" does not amount to a *per se* taking. *Tahoe-Sierra*, 535 U.S. at 330 (quoting *Lucas*, 505 U.S. at 1019-20, n.8). Here Plaintiffs can still rent out their units – applying whatever rent increases are permitted by the RGB, and Plaintiffs may also recover Individual Apartment Improvements ("IAIs") and hardship exemptions should they apply and qualify. Even if they need to make a financial investment to render the units habitable (though one wonders why they were not habitable during their most recent tenancies), the challenged provisions do not prohibit Plaintiffs from renting their properties. What they do is prevent Plaintiffs from increasing the rents without restriction, preventing them from realizing as much economic gain as they might otherwise access under free market conditions. Plaintiffs RPN or PKM may use a unit for personal use, and Plaintiffs may, subject to practical and legal limits, combine units (further undermining the argument that the denominator should be the unit). Plaintiffs can also decide not to rent the units. Thus, unlike in *Manocherian* or *Seawall Assocs. v. New York*, 74 N.Y.2d 92 (N.Y. 1989), where courts found regulatory takings, Plaintiffs retain the right to exclude others from their properties.

11

Ultimately, though Plaintiffs assert that the interest taken pursuant to the challenged RSL provisions is the ability "to make productive use of [each apartment's] leasehold" (Pls.' Opp. 30), what Plaintiffs actually allege as the "property interest" being taken is the ability to raise rents to market rate, despite that this has been prohibited since 1974. Further, Plaintiffs fail to plead that the challenged RSL provisions work the alleged taking. Plaintiffs acknowledge that the challenged provisions do not, by themselves, limit the dollar amount which Plaintiffs may charge to a future tenant. The challenged provisions set forth that the rent charged for a vacancy lease must be the same as that charged for a renewal lease for the same apartment. Plaintiffs acknowledge that the rent they may charge is substantially impacted by, *inter alia*, the allowable rent increase set by RGB and the cap on expenses that may be recouped via IAIs, neither of which Plaintiffs challenge. Pls.' Opp. 27. Plaintiffs have singled out the portion of rent stabilization – the continuance of stabilized rents at vacancy – that could provide them with the biggest windfall if eliminated. Accordingly, while allowing Plaintiffs to rapidly escalate the rents in their rent stabilized units may result in profit, Plaintiffs fail to establish that the challenged provisions are the appropriate source to blame for the alleged taking.

## E.    Plaintiffs Fail to State An As-Applied *Penn Central* Claim

**Economic Impact.** Plaintiffs have not plead a sufficient economic impact to satisfy the first prong of *Penn Central*. 438 U.S. 104 (1978). Plaintiffs rely on generalizations about the RSL's effect on their property, claiming the four vacant apartments cannot "generate a future stream of rental income." Pls.' Opp. 31 (internal citation omitted). Plaintiffs must allege that the laws "effectively prevent[] [them] from making any economic use of [their] property." *Sherman v. Town of Chester*, 752 F.3d 554, 565 (2d Cir. 2014). Plaintiffs do not dispute that they are able to "rent apartments and collect the regulated rents," for the other units in their building; nor do Plaintiffs dispute that the buildings themselves retain significant value. *Fed. Home Loan Mortg.*

12

*Corp. v. N.Y. State Div. of Hous. & Cmty. Renewal*, 83 F.3d 45, 48 (2d Cir. 1996).  They do not allege the challenged RSL provisions rendered their business unprofitable, or eliminated the market for rent-stabilized buildings.  *Park Ave. Tower Assocs. v. New York*, 746 F.2d 135, 139-40 (2d Cir. 1984).  Thus, Plaintiffs cannot satisfy the first prong of the *Penn Central* analysis.

**Investment Backed Expectations**.  Plaintiffs do not plausibly allege that the challenged provisions interfered with their investment-backed expectations.  Plaintiffs could not have reasonably expected to rent their units for market rate upon vacancy because that has not been permitted under the RSL since 1974 when the legislature deemed such policy a failure.  Plaintiffs 135 W. 78th and PKM purchased their buildings in 2022 and 2025, respectively – years *after* the enactment of the 2019 HSTPA.  Accordingly, Plaintiffs bought their properties knowing full well they could not expect market rates at vacancy.

RPN purchased its building in 1991, when the only increases permitted at vacancy were set by the RGB, and before the legislature allowed for twenty percent vacancy bonuses in 1997.  Thus, Plaintiff RPN reaped the benefits of years' worth of vacancy bonuses (from 1997 – 2019) that were not authorized by the law when it purchased the property in 1991.  Plaintiff RPN, therefore, exceeded its investment-backed expectations.  Accordingly, none of these Plaintiffs have plausibly satisfied the second prong of *Penn Central*.

**Character of Government Action**.  Plaintiffs' claims are foreclosed by the Second Circuit's prior holdings, which found that the RSL's character does not constitute a taking.  *See e.g., CHIP*, 59 F.4th at 555-56; *74 Pinehurst*, 59 F.4th at 568.  Plaintiffs cannot circumvent these holdings by framing their challenge as merely involving *vacant* apartments that do not implicate the landlord-tenant relationship.  Pls.' Opp. 32-33.

13

The *G-Max* plaintiffs challenged – as Plaintiffs do here – the repeal of the vacancy bonus, and complained that, *inter alia,* the RSL prevents landlords from raising rents at vacancy. Therefore, the Court's decision in *BRI* is dispositive of Plaintiffs' nearly identical claims. *BRI*, 2024 U.S. App. LEXIS 5905, at *11. The challenged provisions cannot be considered in isolation and must instead be viewed as part of a "comprehensive regulatory regime" that the legislature determined is "necessary to prevent serious threats to the public health, safety, and general welfare." *CHIP*, 59 F.4th at 555 (internal citation omitted); *335-7*, 2023 U.S. App. LEXIS 4940 at * 11 ("The existence of a broader regulatory regime weighs against finding a regulatory taking."). The challenged provisions, which are intended to keep units stabilized even after a vacancy, work with the RSL's other provisions to advance the rational legislative objectives underlying the entire statutory scheme. Plaintiffs' as-applied *Penn Central* challenge fails.

## POINT III

### PLAINTIFFS FAIL TO STATE SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION CLAIMS.

**A.    Plaintiffs' Substantive Due Process Claim Fails**

Plaintiffs' theory underpinning their due process claim is simply wrong. Plaintiffs label the challenged RSL provisions as "price controls," and argue "that Defendants' rent-price ceilings on vacant units are set in a manner that is arbitrary, discriminatory, and demonstrably irrelevant." Pls.' Opp. 40. But the challenged RSL provisions are not price caps. *Compare* N.Y. Unconsol. Law § 8624(e); 9 N.Y.C.R.R. § 2522.5(a); and *id.* § 2522.5 *with Pennell v. City of San Jose*, 485 U.S. 1, 4-5 (1988) (concerning a rent control ordinance "determining the amount by which landlords subject to its provisions may increase the annual rent which they charge their tenants"). As noted, the challenged provisions prevent the RGB from setting different rent increases for renewal and vacancy leases. This is not a rent cap; the RSL does not set rents.

14

As Plaintiffs acknowledge, variations in stabilized rents are typically the result of decades of choices by private actors and legislative changes. Compl. ¶ 58; Pls.' Opp. 44. The varied rents are not arbitrary just because they are different. And further, the varied rents are not the result of the challenged provisions. Property owners like RPN have benefitted from years of landlord-friendly laws which have allowed legal rents in some units to rise above market-rate levels simply due to a tenant vacating the apartment at an advantageous time – even if the landlord chose to put no work into that apartment at vacancy. This action attempts to undermine the State Legislature's work to mitigate this very issue, and Plaintiffs should instead direct their advocacy to the Legislature itself. *CHIP*, 59 F. 4th at 547.

**B.      Plaintiffs' Equal Protection Claim Fails**

Plaintiffs' purported equal protection claim fails. The RSL distinguishes between whole buildings constructed prior to versus in or after 1974 – it does not treat vacant units within those buildings separately. Plaintiffs' strained argument in this respect is better construed as an argument against the rationality of the RSL itself, which Plaintiffs allege not to challenge, and which has been upheld as having a rational basis consistently by the Second Circuit. *E.g.*, *CHIP*, 59 F.4th at 557.

In addition, Plaintiffs' argument that there is no current rationale for the RSL is unavailing. The RSL's application to the City is considered every three years by the City Council. Plaintiffs do not challenge any determination by the Council that the conditions in the City justify the continuance of rent stabilization. *See generally*, Compl. and Pls.' Opp.

15

**CONCLUSION**

For the reasons set forth above and in City Defendants' moving brief, Plaintiffs'

Complaint should be dismissed.

Dated:        New York, New York
              May 22, 2026


                                  **STEVEN BANKS**
                                  Corporation Counsel of the City of New York
                                  *Attorney for City Defendants*
                                  100 Church Street
                                  New York, New York 10007
                                  (212) 356-2190


                          By:    */s/Rachel K. Moston*
                                  */s/ Leah A. Reiss*

                                  Rachel K. Moston
                                  Leah A. Reiss
                                  Assistant Corporation Counsels

16

## WORD COUNT CERTIFICATION

According to Microsoft Word, the portions of this memorandum of law that must be included in a word count, pursuant to Local Civil Rule 7.1 and the Part's Individual Practices in Civil Cases, contain **4,800 words** (including footnotes), exclusive of cover page, table of contents, table of authorities, signature block, and this certification, in accordance with this Court's Order, dated May 21, 2026 (ECF Doc. No. 103).

Dated:      New York, New York
            May 22, 2026

                            **STEVEN BANKS**
                            Corporation Counsel of the City of New York
                            Attorney for City Defendants
                            100 Church Street
                            New York, New York 10007
                            (212) 356-2190


                    By:     */s/ Rachel K. Moston*
                            */s/ Leah A. Reiss*
                            Rachel K. Moston
                            Leah A. Reiss
                            Assistant Corporation Counsels

17