UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SMALL PROPERTY OWNERS OF NEW YORK, INC.; RPN MANAGEMENT CO., INC.; PKM HOME LLC; and 135 W 78TH, LLC,

                Plaintiffs,

-against-

THE CITY OF NEW YORK; THE NEW YORK CITY RENT GUIDELINES BOARD; RUTHANNE VISNAUSKAS, in her official capacity as Commissioner of the New York State Division of Housing and Community Renewal; THE STATE OF NEW YORK; DOUG APPLE, in his official capacity as chair and member of the New York City Rent Guidelines Board; ARPIT GUPTA, ALEX SCHWARTZ, REED JORDAN, ALEXANDER ARMLOVICH, ROBERT EHRLICH, CHRISTINA SMYTH, GENESIS AQUINO, and ADÁN SOLTREN, in their official capacities as members of the New York City Rent Guidelines Board,

                Defendants.

No. 25 Civ. 9425 (JPC) (SDA)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*
28 Liberty Street
New York, New York 10005
(212) 416-8651/8625

MICHAEL A. BERG
SHI-SHI WANG
Assistant Attorneys General

**Table of Contents**

TABLE OF AUTHORITIES ...................................................................................................... i

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.      THE COMPLAINT FAILS TO ALLEGE A REGULATORY TAKING ...................... 2

        A.      Precedent Establishes That the Relevant Unit of Property Is the Building ........ 2

        B.      The Complaint Does Not Allege a Categorical Taking ..................................... 5

        C.      The Complaint Does Not Allege a Taking Under *Penn Central* ...................... 6

II.     THE DUE PROCESS CLAIM IS REDUNDANT AND MERITLESS ......................... 9

III.    THE CASE LAW BARS PLAINTIFFS' EQUAL PROTECTION CLAIM ................ 10

IV.     PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE .................................................. 11

        A.      Plaintiffs Concede Their Official Capacity Claims Are Barred ...................... 11

        B.      SPONY Lacks Standing .................................................................................. 11

        C.      The Plaintiff Landlords' Claims Are Unripe ................................................... 12

V.      PLAINTIFFS' CLAIMS ARE TIME-BARRED, IN PART ....................................... 13

CONCLUSION ....................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**                                                                        **Page(s)**

*335-7 LLC v. City of New York,*
    No. 21 Civ. 823, 2023 WL 2291511 (2d Cir. Mar. 1, 2023) .........................................2, 6, 13

*74 Pinehurst LLC v. New York,*
    59 F.4th 557 (2d Cir. 2023) ....................................................................................2, 4, 7, 8

*Anaheim Gardens, L.P. v. United States,*
    953 F.3d 1344 (Fed. Cir. 2020)...................................................................................................8

*Beatie v. City of N.Y.,*
    123 F.3d 707 (2d Cir. 1997)......................................................................................................10

*Becker v. City of Hillsboro,*
    125 F.4th 844 (8th Cir. 2025) ....................................................................................................4

*Blakelick Props., LLC v. Vill. of Glen Ellyn,*
    No. 25 Civ. 04569, 2025 WL 3763905 (N.D. Ill. 2025)............................................................6

*Bronx 444 E. 187 St., L.P. v. Perea,*
    131 N.Y.S.3d 533, 2020 WL 5949936 (N.Y. Civ. Ct. Oct. 1, 2020).........................................4

*Bldg. & Realty Inst. of Westchester & Putnam Cties., Inc. v. New York,*
    No. 19 Civ. 11285 (KMK), 2021 WL 4198332 (S.D.N.Y. Sept. 14, 2021)..................6, 11, 12

*Bldg. & Realty Inst. of Westchester & Putnam Cties., Inc. v. New York,*
    No. 21-2448, 2024 WL 1061142 (2d Cir. Mar. 12, 2024) .......................................................10

*Cedar Point Nursery v. Hassid,*
    594 U.S. 139 (2021)....................................................................................................................7

*Citizens for Resp. & Ethics in Washington v. Trump,*
    971 F.3d 102 (2d Cir. 2020).......................................................................................................12

*Cmty. Hous. Improvement Program v. City of New York,*
    492 F.Supp. 3d 33 (E.D.N.Y. 2020) ...........................................................................................2

*Cmty. Hous. Improvement Program v. City of New York,*
    59 F.4th 540 (2d Cir. 2023) .....................................................................................................8, 9

*Corner Post, Inc. v. Bd. of Gov'rs of Fed. Res. Sys.,*
    603 U.S. 799 (2024)..................................................................................................................15

*Devines v. Maier*,
   665 F.2d 138 (7th Cir. 1981) ...................................................................................................3

*Dias v. City & Cnty. of Denver*,
   567 F.3d 1169 (10th Cir. 2009) ............................................................................................11

*DM Arbor Court v. Houston*,
   150 F.4th 418 (5th Cir. 2025) .................................................................................................5

*Elmsford Apt. Assocs., LLC v. Cuomo*,
   469 F. Supp. 3d 148 (S.D.N.Y. 2020)................................................................................... 5-6

*Elsmere Park Club Ltd. v. Town of Elsmere*,
   771 F. Supp. 646 (D. Del. 1991)........................................................................................... 2-3

*Great Atl. & Pac. Tea Co. v. State*,
   22 N.Y.2d 75 (1968) ................................................................................................................3

*Greene v. Town of Blooming Grove*,
   No. 87 Civ. 0069, 1988 WL 126877 (S.D.N.Y. Nov. 21, 1988) ...................................... 14-15

*Greystone Hotel Co. v. City of N.Y.*,
   13 F. Supp. 2d 524 (S.D.N.Y. 1998)......................................................................................10

*Heights Apts., LLC v. Walz*,
   30 F.3d 720 (8th Cir. 2022) ....................................................................................................8

*Hodel v. Irving*,
   481 U.S. 704 (1987)................................................................................................................7

*Horne v. Dep't of Agric.*,
   576 U.S. 350 (2015)................................................................................................................7

*Kalaj v. Kay*,
   No. 21 Civ. 4395 (EK), 2023 WL 4564795 (E.D.N.Y. July 17, 2023) ...................................12

*Kane v. Mount Pleasant Cent. Sch. Dist.*,
   No. 20 Civ. 7936 (CS), 2021 WL 5112981 (S.D.N.Y. Nov. 3, 2021)....................................13

*Kaufmann's Carousel, Inc. v. City of Syracuse Indus. Dev. Agency*,
   301 A.D.2d 292 (4th Dep't 2002)............................................................................................3

*Keshbro, Inc. v. City of Miami*,
   801 So.2d 864 (Fla. 2001).......................................................................................................6

*Knight v. Columbus, Ga.*,
   19 F.3d 579 (11th Cir. 1994) ...................................................................................14

*Koehler v. MTA*,
   214 F. Supp. 3d 171 (E.D.N.Y. 2016) .......................................................................2

*Koontz v. St. Johns River Water Mgmt. Dist.*,
   570 U.S. 595 (2013)...................................................................................................7

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982)...................................................................................................7

*Lost Tree Vill. Corp. v. United States*,
   787 F.3d 1111 (Fed. Cir. 2015)..................................................................................6

*Lucas v. S.C. Costal Council*,
   505 U.S. 1003 (1992)............................................................................................ 5-6

*Murr v. Wisconsin*,
   582 U.S. 383 (2017)............................................................................................. 2-4

*Murthy v. Missouri*,
   603 U.S. 43 (2024)...................................................................................................12

*Noem v. Vasquez Perdomo*,
   146 S. Ct. 1 (2025).............................................................................................. 11-12

*Om 309-311 6th St., LLC v. Union City*,
   No. 21 Civ. 12051, 2022 WL 855769 (D.N.J. Mar. 23, 2022)..................................2

*Pakdel v. City and County of San Francisco*,
   594 U.S. 474 (2021)..................................................................................................13

*Park Ave. Tower Assocs. v. City of N.Y.*,
   746 F.2d 135 (2d Cir. 1984)................................................................................. 7-8

*Rumsfeld v. Forum for Acad. & Inst. Rts., Inc.*,
   547 U.S. 47 (2006)....................................................................................................12

*S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*,
   539 F. Supp. 2d 547 (D. Conn. 2008)......................................................................14

*Sahni v. Staff Attorneys Ass'n*,
   No. 14 Civ. 9873, 2016 WL 1241524 (S.D.N.Y. Mar. 23, 2016) ...........................12

*Seife v. U.S. Dep't of Health & Hum. Servs.*,
    440 F. Supp. 3d 254 (S.D.N.Y. 2020)................................................................12

*Seneca Nation v. Hochul*,
    58 F.4th 664 (2d Cir. 2023) .............................................................................14

*Sheetz v. Cnty. of El Dorado*,
    601 U.S. 267 (2024)..........................................................................................7

*Stahl York Ave. Co. v. City of New York*,
    162 A.D.3d 103 (1st Dep't 2018) ......................................................................3

*Suitum v. Tahoe Reg'l Plan. Agency*,
    520 U.S. 725 (1997)........................................................................................12

*Tyler v. Hennepin Cnty.*,
    598 U.S. 631 (2023)..........................................................................................7

*United States v. Petty Motor Co.*,
    327 U.S. 372 (1946).........................................................................................3

*United States v. Tejeda*,
    824 F. Supp. 2d 473 (S.D.N.Y. 2010)..............................................................2

*Villager Pond, Inc. v. Town of Darien*,
    56 F.3d 375 (2d Cir. 1995)...............................................................................9

*W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*,
    31 F. App'x 19 (2d Cir. 2002) .......................................................................11

*Wampus Mills, LLC v. Town of N. Castle*,
    No. 25 Civ. 1582, 2026 WL 836714 (S.D.N.Y. Mar. 26, 2026) ......................... 6-7

*Winston v. City of Syracuse*,
    887 F.3d 553 (2d Cir. 2018).............................................................................11

## Federal Constitutional Provisions

U.S. Const., Art. III....................................................................................................11

U.S. Const., Am. XI....................................................................................................11

iv

**State Statutes**

1974 N.Y. Laws. ch. 576 (*codified at* N.Y. Unconsol. Law § 8622) ..............................................14

**Legislative Materials**

Hearing on S. 6458 (June 14, 2019), N.Y. State Assembly, Regular Sess., p. 76 ........................10

The State and Commissioner Visnauskas respectfully submit this reply memorandum of law in further support of their motion to dismiss, filed March 18, 2026 (ECF No. 72).[1]

## PRELIMINARY STATEMENT

Plaintiffs disavow any challenge to the 2019 RSL amendments. Instead, their brief makes clear that they seek the right to increase stabilized rents to market rates whenever a tenant moves out, uprooting a central feature of rent stabilization in New York State since 1974. The inevitable result would be to dramatically increase rents across New York City and other municipalities that have adopted rent regulation, putting formerly affordable rent-stabilized apartments out of reach for all but the most affluent tenants. Doing so, moreover, would substitute Plaintiffs' notions of public policy for legislative choices that the Second Circuit has repeatedly upheld.

Plaintiffs' extravagant attempt at economic and social engineering is legally unfounded. Plaintiffs cannot overcome the controlling case law holding that the relevant units of property are their buildings, not individual vacant apartments. Plaintiffs' categorical takings claim fails because they do not claim the RSL strips their buildings of all economic value. Their contention that the RSL eradicates the value of a small number of apartments in their buildings is both irrelevant and unsupported. Plaintiffs also fail to plead a non-categorical taking under the *Penn Central* standard. Among other reasons, Plaintiffs could not reasonably have expected to have the right to raise rents on new tenants to market rates when the statute authorizing such increases was repealed in 1974, decades before they bought their buildings. As demonstrated below, Plaintiffs' due process and equal protection claims are also subject to dismissal.

---

[1] Capitalized terms and abbreviations, including citations to the RSL Cases, are defined in State Defendants' Memorandum of Law, filed Mar. 18, 2026 (ECF No. 73) ("State Mem."). Plaintiffs' Response in Opposition to Defendants' Motions to Dismiss, filed May 1, 2026 (ECF No. 88), is cited as "Pl. Opp."

## ARGUMENT

### I.     THE COMPLAINT FAILS TO ALLEGE A REGULATORY TAKING

#### A.     Precedent Establishes That the Relevant Unit of Property Is the Building

In evaluating a regulatory takings claim, the relevant unit is the property as a whole, not the portion affected by the challenged regulation. *Murr v. Wisconsin*, 582 U.S. 383, 395 (2017).

In the RSL cases, the Second Circuit clearly held that landlords alleging a regulatory taking must show "the specific economic impact of the [RSL] *on their buildings.*" *335-7 LLC*, 2023 WL 2291511, at *3 (emphasis added).[2] In *Pinehurst*, the plaintiffs argued that the relevant unit of property was "each rent-stabilized apartment (or those units in the aggregate), not the full building (including any non-RSL units)." *See Pinehurst,* No. 19 Civ. 6447, ECF No. 65 at 6. At a minimum, the plaintiffs there argued that determining the relevant unit of property was a fact-intensive inquiry, precluding dismissal. *Id.* The court rejected that argument, holding that the RSL's impact "obviously needs to be calculated on an owner-by-owner basis, and those calculations will vary significantly depending on when a property was purchased, what fraction of its units are rent-stabilized, what improvements the landlord has made, and many other metrics." *CHIP*, 493 F. Supp. 3d at 46. The Second Circuit affirmed. *Pinehurst*, 59 F.4th 557.

Plaintiffs seek to distinguish the other cases cited by State Defendants on this point, Pl. Opp. 24, but those cases specifically hold that the relevant unit of property is the entire building. *See Om 309-311 6th St., LLC v. Union City*, No. 21 Civ. 12051, 2022 WL 855769, at *14 (D.N.J. Mar. 23, 2022) (holding that even if revenue generated by affected units "was reduced to nothing," that represented "only 10 percent of the building's total rental income"); *Elsmere Park*

---

[2] Plaintiffs' attempts to downplay the Second Circuit's decisions in *335-7 LLC*, *G-Max*, and *BRI* as "unpublished cases" are meritless. Pl. Opp. 14, 15 n.12. The circuit's summary orders provide "valuable appellate guidance," *United States v. Tejeda*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010), which district courts are not "free to disregard." *Koehler v. MTA*, 214 F. Supp. 3d 171, 175 (E.D.N.Y. 2016).

*Club Ltd. v. Town of Elsmere*, 771 F. Supp. 646, 652-53 (D. Del. 1991) (holding that prohibiting residential use of 39 basement apartments did not support regulatory taking claim because 156 above-ground apartments could still be rented).

Contrary to Plaintiffs' Opposition, all three *Murr* factors weigh in favor of finding that Plaintiffs' buildings are the relevant units of property.

***First***, State Defendants established that state and local law treat each building as a unit of property that can be purchased, sold, and mortgaged. State Mem. 16-18. Plaintiffs make no attempt to rebut that showing, but concede that "the law recognizes a property interest in the building." Pl. Opp. 36. And although Plaintiffs cite cases recognizing a leasehold interest in individual apartments, those cases are irrelevant because the leasehold interests belong to the tenants. *See United States v. Petty Motor Co.,* 327 U.S. 372, 378 (1946) (recognizing tenant's leasehold interest); *Kaufmann's Carousel, Inc. v. City of Syracuse Indus. Dev. Agency,* 301 A.D.2d 292, 301 (4th Dep't 2002) (same); *Great Atl. & Pac. Tea Co. v. State,* 22 N.Y.2d 75, 89 (1968) (distinguishing tenant's leasehold interest from the landlord's easement).

*Devines v. Maier,* 665 F.2d 138, 142 (7th Cir. 1981), does not support Plaintiffs' position. There, the court held that a city housing code that destroyed the tenants' leasehold interest was not a regulatory taking of the landlord's property because the landlord had "significant residual property rights" in the building. Plaintiffs try to distinguish *Stahl York Ave. Co. v. City of New York,* 162 A.D.3d 103, 115-116 (1st Dep't 2018), on the ground that there was no "allegation regarding particular leaseholds." Pl. Opp. 25. But in applying *Murr, Stahl* specifically rejected the owner's takings claim, holding they were "free to rent" out 190 apartments in their two buildings. *Stahl*, 162 A.D.3d at 115.

Plaintiffs are wrong to assert that each leasehold in a multi-family building is conveyed

3

separately under state law. Pl. Opp. 34. The single case they cite, an eviction proceeding, undermines their argument because the new owner purchased the entire 28-unit building, not the apartment at issue. *See Bronx 444 E. 187 St., L.P. v. Perea*, 131 N.Y.S.3d 533, 2020 WL 5949936, at *3 (Civ. Ct. Bx. Co. Oct. 1, 2020).

With respect to the second *Murr* factor, the "physical characteristics" of the building also support defining the parcel as the building. As State Defendants demonstrated, State Mem. 17, and Plaintiffs do not rebut, the claim that each apartment is a separate parcel of property because they are separated by "locked external doors" was rejected by the district court and Second Circuit in *Pinehurst*. *See supra* at 2. Plaintiffs cite no contrary cases under the RSL, and their reliance on *Becker v. City of Hillsboro*, 125 F.4th 844 (8th Cir. 2025), is inexplicable. Pl. Opp. 22-23. The Eighth Circuit treated the affected 150-acre lot as a single "contiguous" unit of property, even though it was divided by a road. *Id*. By that logic, Plaintiffs' buildings – undivided structures that are not bisected by a road or otherwise – must be considered single, indivisible properties.

Finally, Plaintiffs claim the RSL's application to a vacant apartment does not increase the value of the entire building. Pl. Opp. 23. That argument misreads the third *Murr* factor, which ***does not require*** the regulated portion of the parcel to ***increase*** the value of the whole parcel. It merely provides that when a zoning or land-use regulation affecting a portion of the property increases the value of the remainder, that weighs in favor of finding the property is an indivisible parcel. *Murr,* 582 U.S. at 399. But that has no application, and Plaintiffs cite no case, applying that principle to economic regulation of the landlord-tenant relationship. Moreover, State Defendants demonstrated that vacant apartments retain economic value under the RSL, State Mem. 21, and Plaintiffs claim their buildings are profitable. Pl. Opp. 50. This reinforces that the

4

denominator is the entire building.

In sum, Plaintiffs have not overcome the legal and logical principle that their properties, for purposes of the takings analysis, are their buildings rather than individual apartments.

**B.      The Complaint Does Not Allege a Categorical Taking**

Plaintiffs do not contend the RSL renders their **buildings** "worthless or economically idle." *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 164-65 (S.D.N.Y. 2020) (quoting *Lucas v. S.C. Costal Council*, 505 U.S. 1003, 1019 (1992)). Instead, Plaintiffs base their categorical takings claim solely on the statute's alleged impacts on a few vacant apartments. *See* Compl. ¶ 264; Pl. Opp. 27. That claim fails because the relevant unit of property is the building as a whole. *See* Point I.A, *supra*. As such, the *per se* taking claim should be summarily dismissed.

Plaintiffs' argument also fails on its own terms, as they do not allege the "extraordinary circumstance" in which their vacant apartments have "*no* productive or economically beneficial use." *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 164. Plaintiffs' contrary argument is misguided. It rests on the notion that renting each apartment would not generate "a reasonable profit." Compl. ¶ 263; Pl. Opp. 27. But Plaintiffs do not address the cases holding that property owners have no Constitutional right to any particular return on their investment. State Mem. 20-21. Nor do they address the fact that, as the Complaint alleges, their vacant apartments retain some value as revenue-generating rental units. *Id.* 21 (citing Compl. ¶¶ 146, 151, 187, 219).

The out-of-circuit cases Plaintiffs cite in support of their *Lucas* claim are not controlling and are easily distinguishable. Plaintiffs rely heavily on *DM Arbor Court v. Houston*, 150 F.4th 418 (5th Cir. 2025), in which a divided panel found a *per se* taking where a city ordinance barred the rehabilitation of flood-damaged basement apartments for residential use. But the damage

forced all of the residents to move out, and the entire housing complex "sat idle." *Id.* at 422. By contrast, Plaintiffs' claims focus on only four of their building's 40 apartments. Pl. Opp. 3-5. In another case, the court found a *per se* taking because the denial of a permit to fill wetlands precluded "any *economic use*" of the property. *Lost Tree Vill. Corp. v. United States*, 787 F.3d 1111, 1116 (Fed. Cir. 2015). Here, by contrast, the vacant apartments may be rented to generate revenue, even if not as profitably as Plaintiffs would like. Plaintiffs' other cases are also inapposite. *See Blakelick Props., LLC v. Vill. of Glen Ellyn*, 2025 WL 3763905 (N.D. Ill. 2025) (finding likelihood of success on takings claim where ordinance would ban short-term rental of plaintiff's investment property and there was no other viable use); *Keshbro, Inc. v. City of Miami*, 801 So.2d 864 (Fla. 2001) (finding *Lucas* taking where local nuisance abatement boards ordered complete shutdown of motel and apartment complex).

Contrary to Plaintiffs' argument, the Second Circuit has squarely affirmed that the RSL, as amended in 2019, "does not strip landlords of all economic enjoyment of their rent-stabilized properties." *BRI*, 2021 WL 4198332, at *22 (quoting *335-7 LLC*, 2021 WL 860153, at *11), *aff'd*, 2024 WL 1061142. Accordingly, Plaintiffs' *Lucas* claims should be dismissed.

### C.      The Complaint Does Not Allege a Taking Under *Penn Central*

Plaintiffs' argument that the Complaint states a facial *Penn Central* claim fails for three reasons. Pl. Opp. 33-39. ***First***, Plaintiffs cannot overcome the body of precedent holding that "a widely applicable rent regulation such as the RSL is not susceptible to facial constitutional analysis under the Takings Clause." State Mem. 22 (citing cases). *Accord Wampus Mills, LLC v. Town of N. Castle*, No. 25 Civ. 1582 (JGLC), 2026 WL 836714, at *9 (S.D.N.Y. Mar. 26, 2026); *Elmsford Apt. Assocs.*, 469 F. Supp. 3d at 165. That is because *Penn Central* "instructs courts to

6

engage in a flexible, *ad hoc*, factual inquir[y]," which presents a "high bar" for "facial challenges to regulations of … the landlord-tenant relationship." *Wampus Mills*, 2026 WL 836714, at \*9.

**Second**, Plaintiffs make no effort to show that it is possible to facially analyze the RSL's alleged economic impacts, or whether it interferes with landlords' reasonable investment-backed expectations. Instead, they focus solely on the third factor, the character of the government action. Pl. Opp. 34. Yet, the Second Circuit and other courts have repeatedly held that "rent stabilization is a permissible governmental program adjusting economic relations between owners and tenants." State Mem. 23-24 (citing cases).

**Third**, Plaintiffs rely on inapposite cases that do not involve regulatory takings. Pl. Opp. 34-40 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (physical taking); *Horne v. Dep't of Agric.*, 576 U.S. 350 (2015) (same); *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021) (same); *Tyler v. Hennepin Cnty.*, 598 U.S. 631, 639 (2023) ("direct[ ] appropriate[ion]" of private property); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013) (land use exaction); *Sheetz v. Cnty. of El Dorado*, 601 U.S. 267 (2024) (same)).[3]

Plaintiffs' attempt to salvage their as-applied *Penn Central* claim fares no better. State Mem. 23-28. Their attempt to show a near-total economic loss is misguided, not only because Plaintiffs erroneously treat each vacant apartment as the relevant unit of property, but also because they claim a loss of profit rather than a loss of value. Pl. Opp. 31. The Second Circuit has repeatedly "rejected the notion that loss of profit—much less loss of a reasonable return— alone could constitute a taking." *Pinehurst*, 59 F.4th at 566, *quoted in* State Mem. 21 (additional citations omitted). *Accord Park Ave. Tower Assocs. v. City of N.Y.*, 746 F.2d 135, 138 (2d Cir.

---

[3] One case cited by Plaintiffs applied *Penn Central* to hold that a taking occurred. Pl. Opp. 34 (citing *Hodel v. Irving*, 481 U.S. 704, 716 (1987)). But *Hodel* is distinguishable, as the regulation there resulted in the "total abrogation" of Native Americans' right to pass on certain property interests to their heirs. *Id.*

7

1984) (*Penn Central* does not hold that a taking occurs when a regulation "prevents an investor from receiving a reasonable return"). These principles and cases – not the limited holdings and out-of-circuit cases cited by Plaintiffs – control.[4]

Plaintiffs do not meaningfully address the Complaint's failure to plead that the elimination of vacancy increases interferes with their reasonable investment-backed expectations. *Compare* State Mem. 26-27 *with* Pl. Opp. 32. State Defendants established that the landlord plaintiffs could not have bought their buildings in reliance on the availability of a 20% vacancy bonus, which was not the law at the time of their purchases. State Mem. 26-27. That logic applies even more forcefully now that Plaintiffs have clarified that they seek to challenge the 1974 repeal of vacancy deregulation. Pl. Opp. 33. Plaintiffs could not reasonably have relied on a provision that was repealed decades ago.

Plaintiffs' assertion that the character of the RSL supports their takings claim is foreclosed by Second Circuit precedent. State Mem. at 23-25 (citing, *inter alia*, *Pinehurst*, 59 F.4th at 568). Finally, the Second Circuit has not adopted "reciprocity of advantage" as a relevant factor. *See CHIP*, 59 F.4th at 556 (rejecting this factor as deriving from a dissent in *Penn Central*). But even if this consideration were relevant, it would not assist Plaintiffs. "As the legislature has found, the RSL provides reciprocity of advantage: the RSL results in significant state- and citywide benefits—including to landlords—by preventing tenant dislocation and preserving neighborhood stability. Although what specific value a particular landlord receives

---

[4] One such case acknowledged that eliminating a future income stream might affect an apartment building's value. *Anaheim Gardens, L.P. v. United States*, 953 F.3d 1344 (Fed. Cir. 2020). But even under that rule, and incorrectly assuming the apartment is the relevant property unit, the claims here would fail because the RSL does not strip vacant apartments of all economic value. To the extent the other case cited by Plaintiffs considered a loss of income without regard to its impact on the property's value, it is inconsistent with Second Circuit law. *Compare Heights Apts., LLC v. Walz*, 30 F.3d 720, 734 (8th Cir. 2022), with *Pinehurst*, 59 F.4th at 566.

from these benefits may be hard to quantify, that difficulty does not render the RSL a taking." *Id.* Thus, the Complaint fails to state an as-applied regulatory takings claim.

## II.    THE DUE PROCESS CLAIM IS REDUNDANT AND MERITLESS

It is undisputed that a substantive due process claim must be dismissed when it merely repackages a claim arising under the Takings Clause or another "explicit textual source of constitutional protection." *CHIP*, 59 F.4th at 555, *quoted in* State Mem. 28. *See also* Pl. Opp. 42. The Second Circuit affirmed the dismissal of the due process claim in *CHIP* on that basis. *CHIP*, 59 F.4th at 555. Here, Plaintiffs' attempts to salvage their due process claim by portraying it as distinct from their regulatory takings claim, Pl. Opp. 43, are unavailing.

First, Plaintiffs try to distinguish *CHIP* on the theory that the plaintiffs there advanced the same public policy arguments in support of both claims. Pl. Opp. 42. But Plaintiffs here commit the same fatal error, arguing in support of their regulatory takings claim that: (1) "rent caps on vacant units are not helping any tenant"; (2) an apartment's rent is not tied to the "tenant's ability to pay"; (3) there is no "nexus to the government's purported interest … in ensuring its residents have access to housing"; and (4) lifting the rent caps would "ease the housing crisis." Pl. Opp. 16, 32-33; Compl. ¶¶ 2, 68-76, 273, 282. These same policy considerations underlie their due process claim, as they complain that the regulated rent under the RSL reflects the unit's unique rental history, is not calibrated to "the new tenant's ability to pay," and does not ensure the owners make "a reasonable profit." Pl. Opp. 40-41. Here, as in *CHIP*, Plaintiffs cannot have the Due Process Clause "do the work of the Takings Clause." *CHIP*, 59 F.4th at 556.

Second, Plaintiffs' reliance on a single Second Circuit case, *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 379 (2d Cir. 1995), is misplaced. In *Villager Pond*, the defendant did not argue that the due process claim was duplicative of the takings claim, and the latter was

9

dismissed as unripe. *Id*. at 380.

Plaintiffs' attempt to depict the RSL's rent limits as arbitrary, Pl. Opp. 40-41, is belied by their own allegations. Plaintiffs do not dispute that the statute prevents them from raising rents dramatically, *e.g.,* from $1,200 to $5,100. State Mem. 30 (citing Compl. ¶¶ 219-20). Plaintiffs thus tacitly concede that the RSL's so-called "rent caps" are rationally related to the Legislature's goal of preventing "the loss of vital and irreplaceable affordable housing for working persons and families." *Id.* Courts have long affirmed New York's legitimate interest, expressed through the RSL, in "preventing unjust and oppressive rents and profiteering." *Greystone Hotel Co. v. City of N.Y.*, 13 F. Supp. 2d 524, 528 (S.D.N.Y. 1998).

Finally, Plaintiffs argue that the rationality of the RSL should be considered on a factual record after discovery. Pl. Opp. 46. But those provisions have already been considered on a factual record – before the Legislature as policy considerations, including the fact that tenant harassment needed to be addressed by the 2019 amendments to the RSL, State Mem. 30, notwithstanding that separate state and local laws already prohibited tenant harassment.[5] *Cf.* Pl. Opp. 45. Plaintiffs' contrary arguments "amount to policy and efficacy disagreements with the legislature." *BRI*, 2024 WL 1061142, at \*5. Plaintiffs fail to explain why their conclusory allegations that rent caps are not helping anyone are sufficient to survive a motion to dismiss given the highly deferential rational basis standard. *Beatie v. City of N.Y.*, 123 F.3d 707, 712 (2d Cir. 1997).

## III.    THE CASE LAW BARS PLAINTIFFS' EQUAL PROTECTION CLAIM

Second Circuit precedent forecloses Plaintiffs' Equal Protection challenge. State Mem.

---

[5] The Legislature repealed vacancy increases after hearing testimony that they encouraged harassment of tenants to create these same vacancies. Hearing on S. 6458 (June 14, 2019), N.Y. State Assembly, Regular Sess., p. 76 (Statement of Assemblymember Diana Richardson), available here.

31-32. In *W. 95 Hous. Corp. v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 31 F. App'x 19, 21 (2d Cir. 2002), the court rejected an equal protection claim premised on the same theory advanced by Plaintiffs – that the RSL's distinct treatment of buildings constructed prior to 1974 was irrational. The Second Circuit held that the law's distinction between "old and new buildings strikes a rational balance between the legitimate state interests of promoting housing construction and preventing hardship on tenants in older buildings." *Id. See also BRI,* 2021 WL 4198332 at *31 (dismissing equal protection claim).

Plaintiffs do not try to rebut these precedents, instead citing irrelevant cases outside of the RSL context, such as the Tenth Circuit's review of a void-for-vagueness challenge to an ordinance banning possession of pit bulls. Pl. Opp. 47 (citing *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1184 (10th Cir. 2009)). Another case inexplicably cited by Plaintiffs, *id.* at 48, further undermines their equal protection claims, holding that a State "has no obligation to produce evidence to sustain the rationality of a statutory classification." *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018).

## IV.    PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE

### A.    Plaintiffs Concede Their Official Capacity Claims Are Barred

Plaintiffs concede the Eleventh Amendment bars this action against the State and all claims for damages against Commissioner Visnauskas. Pl. Opp. 61. To that extent, the Complaint must be dismissed.

### B.    SPONY Lacks Standing

Plaintiffs argue that so long as one plaintiff has Article III standing, it is "unnecessary" to decide whether the others do. Pl. Opp. 58. Plaintiffs are wrong. The Supreme Court's "standing requirement ensures that each plaintiff has a personal stake in the outcome." *Noem v. Vasquez*

11

*Perdomo*, 146 S. Ct. 1, 13 (2025). "Standing must be assessed as to each plaintiff and each plaintiff must demonstrate standing separately for each form of relief sought." *Seife v. U.S. Dep't of Health & Hum. Servs.*, 440 F. Supp. 3d 254, 272 (S.D.N.Y. 2020). *Accord Murthy v. Missouri*, 603 U.S. 43, 61 (2024); *Citizens for Resp. & Ethics in Washington v. Trump*, 971 F.3d 102, 118, n.33 (2d Cir. 2020); *Kalaj v. Kay*, No. 21 Civ. 4395 (EK) (JRC), 2023 WL 4564795, at *6 (E.D.N.Y. July 17, 2023) (holding that "to establish constitutional standing, each plaintiff must allege 'a distinct and palpable injury to himself'").[6] Thus, in *BRI*, Judge Karas held that two plaintiffs had standing but dismissed three other plaintiffs' claims for lack of standing. *BRI,* 2021 WL 4198332, at *11.

Plaintiffs acknowledge SPONY's as-applied takings claims "depend on specific owners' circumstances," Pl. Opp. 59, thus conceding that SPONY lacks standing to bring those claims. Thus, SPONY's takings claims should be dismissed for lack of subject matter jurisdiction.

### C.    The Plaintiff Landlords' Claims Are Unripe

Plaintiffs concede they have not exhausted their administrative remedies, but claim DHCR's process is illusory because "no owner has successfully obtained a hardship increase in years." Pl. Opp. 52. That is demonstrably untrue, as evidenced by DHCR's granting a hardship increase of $13,086.64 ($90.88 per room) to Plaintiff 135 W. 78th, LLC on May 8, 2026.[7] Contrary to Plaintiffs' argument, DHCR exercised its discretion to grant administrative relief, mitigating Plaintiffs' chief alleged injury: the limitations on the rent they can charge new tenants. *Cf. Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997) ("Because the agency has no

---

[6] Plaintiffs misconstrue *Rumsfeld v. Forum for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006). *Rumsfeld* held that only one plaintiff with standing is needed to establish a case or controversy. *Id.* It did not silently overrule decades of case law holding that each plaintiff must independently establish standing.

[7] "Courts in this District have routinely taken judicial notice of state administrative records." *Sahni v. Staff Attorneys Ass'n*, No. 14 Civ. 9873, 2016 WL 1241524, at *5 (S.D.N.Y. Mar. 23, 2016), *recons. in part on other grounds*, 2016 WL 3766214 (S.D.N.Y. May 13, 2016) (taking judicial notice of NLRB administrative record).

discretion to exercise over [plaintiff's] right to use her land, no occasion exists for applying" exhaustion requirement).

Plaintiffs RPN's and PKM's admitted failure to apply for hardship increases renders their claims unripe. Moreover, 135 W. 78th, LLC's claims are unripe because, to the extent it is dissatisfied with its hardship exemption, it has the right to seek administrative review by DHCR. R.S.C. § 2529.2. As the Supreme Court stated in a case cited by Plaintiffs, a "failure to properly pursue administrative procedures may render a claim unripe if avenues still remain for the government to clarify or change its decision." *Pakdel v. City and County of San Francisco*, 594 U.S. 474, 480 (2021). As noted, DHCR granted relief to 135 W. 78th LLC. RPN and PKM's conclusory allegation that they do not financially qualify for a hardship increase, Pl. Opp. 50, does not excuse them from engaging in the process. On more extreme facts – where the landlord had sold its building and could not apply for a hardship waiver – the Second Circuit found its claims unripe because "we cannot know what the building's sale price would have been if [the landlord] had applied for a hardship exemption and therefore cannot determine with certainty the economic impact of the regulation." *335-7 LLC,* 2023 WL 2291511, at *3. In sum, the Plaintiff landlords' as-applied claims are not justiciable.

## V.      PLAINTIFFS' CLAIMS ARE TIME-BARRED, IN PART

Plaintiffs do not oppose the dismissal of RPN's claim concerning 81 Cabrini, Unit 35, as time-barred. Thus, that claim must be dismissed. *See Kane v. Mount Pleasant Cent. Sch. Dist.*, 2021 WL 5112981, at *8 (S.D.N.Y. Nov. 3, 2021) (dismissing claim as time-barred because plaintiff abandoned contrary arguments).

Further, Plaintiffs do not address the three appellate cases cited by State Defendants holding that facial takings claims accrue when the challenged statute takes effect. State Mem. 12-

13

13. Instead, in arguing that their claims are timely, Plaintiffs misconstrue the case law and their own allegations.

*First*, Plaintiffs contend the limitations period is refreshed roughly every three years when the City Council declares a housing emergency. Pl. Opp. 52-53. But the Complaint does not challenge the Council's emergency declarations. Instead, it challenges the RSL's application to vacant apartments – a provision that has been in effect without interruption since 1974. *See* L. 1974, ch. 576 (*codified in* N.Y. Unconsol. Laws § 8622). *See also* Pl. Opp. 16, n.13. Thus, the City Council's most recent emergency declaration in March 2024 is not at issue and cannot serve as the accrual date.

*Second*, Plaintiffs cite *Seneca Nation v. Hochul*, 58 F.4th 664, 671 (2d Cir. 2023), to claim the RSL imposes a continuing harm that may be challenged at any time. Pl. Opp. 53-54. But *Seneca Nation* did not allege a taking of any kind. Rather, it involved an easement that was invalid from its inception in 1954. The court held that for purposes of sovereign immunity, the complaint alleged an ongoing violation that could be raised in federal court under the *Ex parte Young* doctrine. *Seneca Nation*, 58 F.4th at 670-71. Here, by contrast, there is no easement and no alleged occupation of Plaintiffs' property. Plaintiffs' facial challenge is governed by the Takings Clause cases cited by State Defendants – not by *Seneca Nation* and the other inapposite cases that Plaintiffs rely on. *See Knight v. Columbus, Ga.*, 19 F.3d 579, 580 (11th Cir. 1994) (finding continuing violation where plaintiffs alleged ongoing wage and overtime violations under Fair Labor Standards Act); *S. Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*, 539 F. Supp. 2d 547, 556 (D. Conn. 2008) (rejecting potential limitations defense where complaint alleged "continuous practice and policy of discrimination"); *Greene v. Town of Blooming Grove*,

14

1988 WL 126877, at *12, n.2 (S.D.N.Y. Nov. 21, 1988) (rejecting continuing violation theory), *aff'd in part, rev'd in part*, 879 F.2d 1061 (2d Cir. 1989).

**Third**, Plaintiffs claim there is no distinction between facial and as-applied challenges for limitations purposes. Pl. Opp. 55. But that ignores the cases cited by State Defendants. State Mem. 13. By contrast, Plaintiffs cite cases that do not allege takings and do not dictate a contrary rule. *See, e.g., Corner Post, Inc. v. Bd. of Gov'rs of Fed. Res. Sys.*, 603 U.S. 799, 809 (2024) (holding that federal Administrative Procedure Act claim accrues when plaintiff "has the right to file suit and obtain relief"). Accordingly, Plaintiffs' facial challenge is untimely.

## CONCLUSION

For the foregoing reasons and those set forth in State Defendants' opening memorandum of law, the Court should dismiss the action against State Defendants in its entirety, with prejudice, and grant such other and further relief as it deems proper.

Dated: New York, New York
       May 22, 2026

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*

By: *Michael A. Berg*
Michael A. Berg
Shi-Shi Wang
Assistant Attorneys General
28 Liberty Street
New York, New York 10005
(212) 416-8651/8625
michael.berg@ag.ny.gov
shi-shi.wang@ag.ny.gov

15

**CERTIFICATION PURSUANT TO CIVIL RULE 7.1(c)**
**OF THE LOCAL RULES OF THE UNITED STATES**
**DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

The undersigned certifies that, using the Microsoft Word feature called "Word Count" and excluding the cover page, caption and signature block, the Reply Memorandum of Law in Support of State Defendants' Motion to Dismiss the Complaint, dated May 22, 2026, contains 4,787 words, fewer than the 4,800-word limit set by the Court's order dated May 20, 2026 (ECF No. 101).

Dated:  New York, New York
        May 22, 2026

LETITIA JAMES
Attorney General
State of New York

By:     *Michael A. Berg*

        Michael A. Berg
        Assistant Attorney General
        28 Liberty Street
        New York, New York 10005
        (212) 416-8651
        michael.berg@ag.ny.gov

16