UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SMALL PROPERTY OWNERS OF NEW YORK,
INC.; RPN MANAGEMENT CO., INC.; PKM
HOME LLC; and 135 W 78TH, LLC,

                    Plaintiffs,

       -against-

THE CITY OF NEW YORK; THE NEW YORK
CITY RENT GUIDELINES BOARD; RUTHANNE
VISNAUSKAS, in her official capacity as
Commissioner of the New York State Division of
Housing and Community Renewal; THE STATE OF
NEW YORK; DOUG APPLE, in his official capacity
as chair and member of the New York City Rent
Guidelines Board; ARPIT GUPTA, ALEX
SCHWARTZ, REED JORDAN, ALEXANDER
ARMLOVICH, ROBERT EHRLICH, CHRISTINA
SMYTH, GENESIS AQUINO, and ADÁN
SOLTREN, in their official capacities as members of
the New York City Rent Guidelines Board,

                    Defendants.

No. 25 Civ. 9425 (JPC) (SDA)

## STATE DEFENDANTS' MEMORANDUM OF
## LAW IN RESPONSE TO AMICUS CURIAE BRIEFS

LETITIA JAMES
Attorney General
State of New York
*Attorney for State Defendants*
28 Liberty Street
New York, New York 10005
(212) 416-8651/8625

MICHAEL A. BERG
SHI-SHI WANG
Assistant Attorneys General

The State and Commissioner Visnauskas respectfully submit this memorandum of law in response to the arguments of the U.S. Chamber of Commerce et al. (the "Chamber") and the National Association of Realtors et al. (the "Realtors") (collectively, "Amici") in their amicus curiae briefs. *See* ECF No. 85-2 ("Realtors Br.") and ECF No. 95-1 ("Chamber Br.").[1]

### PRELIMINARY STATEMENT

The amicus briefs do not offer any distinct information or perspective. Instead, they replicate Plaintiffs' legal contentions and raise public policy arguments that the New York State Legislature rejected in adopting the Rent Stabilization Laws, and that the courts have repeatedly upheld as valid. Accordingly, no weight should be given to the amicus briefs, and State Defendants' motion to dismiss should be granted.

### ARGUMENT

I.    **The Chamber and Realtors Restate Plaintiffs' Arguments And Make Additional Claims That Are Irrelevant**

The amicus briefs highlight the arguments that Plaintiffs have already submitted to the Court. *Compare* Pl. Opp. at 27-40 *with* Realtors Br. at 6-11, Chamber Br. at 12-14 (defense of Plaintiffs' asserted *Lucas* and *Penn Central* regulatory takings claims). The Chamber's assertion that the RSL imposes "draconian and arbitrary limits" on rents echoes Plaintiffs' opposition brief. *Compare* Pl. Opp. at 1, 3, 16, 40-49 *with* Chamber Br. at 2, 7, 8, 13. And, like Plaintiffs, the Realtors incorrectly refer to the RSL as imposing a rent "cap." *See* Realtors Br. at 3-5, 15. However, the last time the Legislature authorized the imposition of actual rent ceilings

---

[1]  Unless otherwise stated, capitalized terms and abbreviations, including citations to the RSL Cases, are defined in State Defendants' Memorandum of Law in support of their Motion to Dismiss, filed Mar. 18, 2026 (ECF No. 73) ("State Mem."). Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss, filed May 1, 2026 (ECF No. 88), is cited as "Pl. Opp." State Defendants' Reply Memorandum of Law in support of their Motion to Dismiss, filed May 22, 2026 (ECF No. 106), is cited as "State Reply."

throughout the State was in 1946. *See* Ch. 274, 1946 N.Y. Laws § 723.[2] Rent increases under the current RSL are not a "caps" or "ceilings," but allow for rent increases as approved annually by the Rent Guidelines Board ("RGB") and otherwise authorized by law. 9 N.Y.C.R.R. § 2522.8.

Amici also cite the same inapposite cases that Plaintiffs relied on, which involved physical takings and land-use exactions rather than regulatory takings, including *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021) (physical taking), *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (same); *Horne v. Dep't of Agric.,* 576 U.S. 350 (2015) (same). *See* Pl. Opp. at 34-40, Realtors Br. at 15; Chamber Br. at 13-14. The Realtors' citation to *DM Arbor Court v. Houston,* 150 F.4th 418 (5th Cir. 2025), in support of Plaintiffs' *Lucas* claim (Realtors Br. at 10-11) is not controlling and easily distinguishable. *See* State Reply at 5-6.

Like Plaintiffs, Amici argue the RSL effects a regulatory taking because it restricts landlords' profits. *Compare* Pl. Opp. at 31 *with* Chamber Br. at 13-14, Realtors Br. at 8. Defendants have refuted that argument, demonstrating that the relevant inquiry is the government regulation's impact on the value of the property – not its profitability. State Mem. at 20-21, 25-26. It is well established that landlords do not have a "constitutional right to what [they] could have received in an unregulated market." *Greystone Hotel Co. v. City of New York,* 13 F. Supp. 2d 524, 528 (S.D.N.Y. 1998); *see also Harmon v. Markus*, No. 08 Civ. 5511 (BSJ), 2010 WL 11530596, at *1 (S.D.N.Y. Mar. 1, 2010), *aff'd*, 412 F. App'x 420 (2d Cir. 2011). Plaintiffs' asserted inability to rent four units profitably "does not in and of itself amount to a taking." *Hammer v. Town of Bedford*, No. 25 Civ. 2618 (CS), 2026 WL 100793, at *7 (S.D.N.Y. Jan. 13, 2026).

---

[2]  Earlier forms of rent regulation were enacted by New York City in the 1920s in response to an acute housing shortage following World War I. *See* Report of New York State Temporary Commission on Rental Housing I-42 to I-46 (Mar. 1980); New York City Rent Guidelines Board, History of the Board and Rent Regulation System (Jan. 2020), available here.

The Realtors' claim that property owners do not earn a reasonable return on properties subject to the RSL (Realtors Br. at 8) is also contradicted by publicly available information released by the RGB. In its 2025 Income and Expense Study, the RGB found that between 2022 and 2023, landlords' net operating income ("NOI") – *i.e.,* revenue remaining after operating costs are paid – increased 12.1% for buildings containing rent-stabilized units.[3] The RGB also reported that rent-stabilized apartments generated an average of $626 per unit in NOI. *Id.*

The Realtors also claim State Defendants have "no foothold in the law," and that there is "no precedential Second Circuit opinion [that] resolves an as-applied *Lucas* challenge to rent stabilization." Realtors Br. at 10, 15. But the Second Circuit recently noted that a *Lucas per se* takings challenge to the RSL was "completely devoid of merit":

> A *per se* categorical taking occurs when the "property owner ... suffer[s] a physical 'invasion' of his property" or where "regulation denies all economically beneficial or productive use of land." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 120 L. Ed.2d 798 (1992). The district court correctly found that Appellants "do not allege facts to support that they have been deprived of *all* economical[ly] viable use of their property" and dismissed this claim.

*BRI,* No. 21-2448, 2024 WL 1061142, at *3 (2d Cir. Mar. 12, 2024); *see also BRI*, No. 21-2448, Appellant's Brief, Dkt. No. 61, at 55-59 (citing as-applied and facial *Lucas* claims). As such, the Second Circuit decision in *BRI* is "valuable appellate guidance," which district courts are "not at liberty to disregard or contradict." *BRI*, No. 19-cv-11285 (KMK), 2021 WL 4198332, at *19 n.22 (S.D.N.Y. Sept. 14, 2021).

The Chamber's brief also includes a paean to the free market, and a claim that "[p]rice controls distort" the market to the detriment of all. Chamber Br. at 4-5. But in the area of economic regulation, it is uncontroversial that governments may step in to mitigate the harm

---

[3] N.Y. City Rent Guidelines Bd., *2025 Income and Expense Study*, at 3 (Mar. 27, 2025) available here.

resulting from skewed and inequitable markets. *See 74 Pinehurst,* 59 F.4th 557, 563 (2d Cir. 2023) (holding that "States 'have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails'") (quoting *Yee v. City of Escondido,* 503 U.S. 519, 528-29 (1992)); *see also BRI*, 2024 WL 1061142, at *2 (2d Cir. Mar. 12, 2024) (same).

Finally, the Realtors complain that the RSL was supposed to be temporary. Realtors Br. at 3. That is irrelevant, as Plaintiffs do not base any legal argument on this observation. *See generally* Compl. Moreover, the RSL makes clear that systemwide deregulation is contingent on an abatement of the ongoing housing emergency, where "the transition from regulation to a normal market of free bargaining between landlord and tenant … must be administered with due regard for such emergency." RSL § 26-501; *see also* N.Y. Unconsol. Laws § 8602 (same).  In addition, rent stabilization remains contingent on a municipality's periodic declaration of a housing emergency. *See* N.Y. Unconsol. Law § 8623(a).

## II.      Amici's Proffered Economic and Public-Policy Arguments Are Irrelevant

The Chamber relies on cherry-picked cases and unpublished "working papers" that discuss the restaurant industry and cattle grazing on federal land. Chamber Br. at 5, 13. To the extent they address rental housing at all, many of the cited sources discuss decades-old systems of rent control in other cities and states, rather than New York's more flexible and nuanced system of rent stabilization.[4] *See* Chamber Br. at 9 (citing articles and papers concerning rent controls in Cambridge, Massachusetts, San Francisco, and nationwide).

---

[4] "Rent control limits the rent that landlords can charge to tenants who (1) have lived in an apartment since 1971, (2) within a building pre-dating February 1, 1947." *335-7 LLC,* 524 F. Supp. 3d 316, 321 (citing N.Y. Unconsol. Law § 8601 *et seq*.; N.Y. Unconsol. Law § 26-401 *et seq*.; 9 N.Y.C.R.R.  § 2100.1 *et seq*.). By contrast, the RSL covers "rental housing accommodations …that were not already governed by rent control." *Id.* "The New York Court of Appeals has repeatedly acknowledged that rent stabilization places 'a less onerous burden on the property owner' than rent control." *Id.* (citing *Braschi v. Stahl Assocs. Co*., 74 N.Y.2d 201, 210 (1989) (Rent control and rent stabilization are different and "cannot simply be imported into the other.")).

Many other studies cited by Amici are outdated. *See* Realtors Br. at 15, 17-20 (studies published in 1985, 1990, 1993, 1994, 1997, & 2003); Chamber Br. at 5-7, 10-11 (studies published in 1981, 1988, 1989, 1993, 2000, & 2001). As such, Amici rely on research concerning materially distinct regulatory regimes and based on decades-old publications. The Chamber's citation to Anthony Downs, *Residential Rent Controls: An Evaluation* (1988) does not support their central thesis that rent control decreases housing supply, as the article found that "repeated studies of temperate rent controls in the United States provide no persuasive evidence that such controls significantly reduce new construction here." Chamber Br. at 7.

Moreover, the claims in the cited publications are sharply contested, and thus invite ancillary litigation concerning the underlying economics and social science. *See* Oksana Mironova, *5 Myths About Rent Regulation, Cmty. Serv. Soc'y* (Jan. 15, 2019), available here (rent regulated apartments currently house more low-income New Yorkers than all public and subsidized housing combined); *An Introduction to the NYC Rent Guidelines Board and the Rent Stabilization System,* Chart 1, p. 21, available here (New York City's two greatest housing booms occurred during periods when strict rent regulations were in effect for pre-existing apartments – in the 1920s and from 1947 through the early 1960s – in contrast to Amicis' argument that rent regulations depress new construction); Scott Beyer, *The Verdict Is In: Land Use Regulations Increase Housing Costs*, Forbes, Sept. 30, 2016, available here (land use restrictions, zoning in particular, cause housing scarcity and high costs); Timothy Collins, "*Fair Rents" or "Forced Subsidies" Under Rent Regulation: Finding a Regulatory Taking Where Legal Fictions Collide,* 59 Albany L. Rev. 1293 (1996).

The issue on the pending motion to dismiss is not whether the RSL is the most efficient means of achieving its policy goals. That is quintessentially a legislative determination. *See BRI*,

5

2021 WL 4198332, at * 26 (quoting *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997) (A law is not unconstitutional "simply because it may not succeed in bringing about the result it seeks to accomplish" or because "the problem could have been better addressed some other way," or because "the statute's classification lacks razor-sharp precision.")). The research cited by Amici is largely irrelevant to analyzing the effectiveness of the RSL and has no bearing at all on its constitutionality.

### III. The Legislature Specifically Rejected Testimony That Repealing The 20 Percent Vacancy Bonus In 2019 Was Bad Policy

The Realtors complain that "[i]n recent years, New York has saddled owners with even more onerous burdens, making it harder for them to recover properties, decontrol units, and recoup improvements." Realtors Br. at 3. The Second Circuit has recognized that in the range of permissible legislative authority, the RSL has been revised repeatedly, sometimes favorably to landlords, and sometimes to the benefit of tenants. The court noted:

> These varying changes mean that, on occasion, a savvy investor might receive a windfall because subsequent regulations reduced restrictions on rent-stabilized units. Other investors might suffer losses because regulations become tighter…All of this means that, for decades New York landlords have taken a calculated risk when they entered the rental market. In such circumstances, the fact that this risk then results in a loss does not constitute a taking.

*74 Pinehurst,* 59 F.4th at 567. In any event, the Realtors' characterization of the 2019 amendments to the RSL is irrelevant, as Plaintiffs do not challenge the 2019 amendments but only the Legislature's elimination of vacancy deregulation in 1974. *See* State Reply at 1.

For that reason, Amici's arguments concerning the repeal of the 20% vacancy increase in 2019 are irrelevant. Their arguments on that score are also meritless. Amici argue that repeal of vacancy increases allegedly caused landlords to warehouse either "50,000" (Chamber Br. at 10) or between "20,000 to 60,000" (Realtors Br. at 17) rent stabilized units in New York City. Both

the actual number and the cause of the warehousing is a contested factual issue, and "an Amicus who argues facts should rarely be welcomed." *SEC v. Ripple Labs, Inc.,* No. 20 Civ. 10832 (AT), 2021 WL 4555352, at *5 (S.D.N.Y. Oct. 4, 2021) (quoting *Strasser v. Doorley*, 432 F.2d 567, 669 (1st Cir. 1970)); *see e.g.,* Office of the New York City Comptroller, *Accurately Assessing and Effectively Addressing Vacancies in NYC's Rent Stabilized Housing Stock*, March 2024 ("There are likely fewer than 2,000 vacant apartments that rent for less than $1,500 each month and have been held off the market due to an owners' inability to make repairs."), available here; Clio Chang, *Are The Landlords Bluffing?*, New York Magazine, July 14, 2023, available here. Plaintiffs also acknowledge that the City's 2023 vacancy rate is 1.41%. Pl. Opp. at 7, n.1.

In any case, the Legislature heard and rejected testimony claiming that eliminating vacancy increases would allegedly hurt tenants because some landlords would "abandon" their properties if they are not able to obtain vacancy increases.[5] *See CHIP,* 492 F. Supp. 3d 33, 51 (E.D.N.Y. 2020) (affirming constitutionality of the 2019 repeal of the "vacancy and longevity increases introduced in 1997"). To the extent Amici seek to restore prior provisions of the RSL, the proper remedy is the political process, not this lawsuit. Amici's contrary arguments "amount to policy and efficacy disagreements with the legislature," *BRI*, 2024 WL 1061142 at *5.

## IV.  Amici Ignore New York's "Experiment With Free-Market Controls" With The Passage And Eventual Repeal Of The Vacancy Decontrol Act of 1971

Amici claim that eliminating rent stabilization will generate new construction and increase the housing supply. *See* Realtors Br. at 16; Chamber Br. at 11. But those arguments ignore the actual history of the RSL and how vacancy deregulation played out *in practice* in New

---

[5] The Legislature repealed vacancy bonuses even after hearing testimony that repeal might decrease housing supply and quality. Hearing on S. 6458, N.Y. State Assembly, Regular Sess., p. 31-32 (Statement of Assemblymember Michael J. Fitzpatrick: "I'm just very concerned that we are going to make a bad situation even worse in an effort to protect tenants, some of whom don't deserve that protection… [W]e could see a return to some of the bad old days where people abandon their properties. This will not help tenants.") (June 14, 2019), available here.

York – specifically the passage of the Vacancy Decontrol Act of 1971. That "experiment with free-market controls" led to a three-year period when rents continued to increase and new housing "did not materialize." *KSLM-Columbus Apartments, Inc. v. N.Y. State Div. of Hous. & Cmty. Renewal*, 6 A.D.3d 28, 32, 772 N.Y.S.2d 665 (1st Dep't 2004) *modified on other grounds*, 5 N.Y.3d 303 (2005); *La Guardia v. Cavanaugh,* 53 N.Y.2d 67, 74, 423 N.E.2d 9 (1981), *superseded by statute as stated in Aurora Associates LLC v. Locatelli,* 38 N.Y.3d 112, 149-150 (2022). As a result, from 1971 to 1974, "more than 400,000 regulated units were lost, rents in deregulated units rose more than 50%, major capital improvements decreased 50%, new construction did not increase, and eviction proceedings rose significantly." *See* State Mem. at 19, n. 8, citing Temporary State Comm'n on Living Costs and the Economy, Report on Hous. and Rents § A, at 3, 14–15, 21; § E.I, at 7 (Jan. 1974).

As such, no weight should be given to the amicus briefs.

## CONCLUSION

For the foregoing reasons, and those set forth in State Defendants' memorandum of law and reply, the Court should dismiss the Complaint and give no weight to the briefs filed by Amici in support of Plaintiffs.

Dated: New York, New York  
      June 29, 2026

LETITIA JAMES  
Attorney General  
State of New York  
*Attorney for State Defendants*

By: *Shi-Shi Wang*  
    Shi-Shi Wang  
    Michael A. Berg  
    Assistant Attorneys General  
    28 Liberty Street  
    New York, New York 10005  
    shi-shi.wang@ag.ny.gov  
    michael.berg@ag.ny.gov

8

**CERTIFICATION PURSUANT TO CIVIL RULE 7.1(c) OF THE
LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE
SOUTHERN DISTRICT OF NEW YORK**


The undersigned certifies that, using the Microsoft Word feature called "Word Count"

and excluding the cover page, caption and signature block, the State Defendants' Memorandum

of Law in Response to Amicus Curiae Briefs, dated June 29, 2026 contains 2,700 words, fewer

than the 8,750 word limit.

Dated:  New York, New York                            LETITIA JAMES
          June 29, 2026                                   Attorney General
                                         State of New York

                            By:     *Shi-Shi Wang*
                                     Shi-Shi Wang
                                     Assistant Attorney General
                                     28 Liberty Street
                                     New York, New York 10005
                                     (212) 416-8625
                                     shi-shi.wang@ag.ny.gov

9